# EXHIBIT A

JURY

# U.S. District Court
## Northern District of Texas (Dallas)
## CIVIL DOCKET FOR CASE #: 3:24−cv−00954−D

Eisen et al v. AT&T, INC.
Assigned to: Senior Judge Sidney A Fitzwater
Demand: $5,000,000,000
Cause: 28:1332 Diversity−Breach of Contract

Date Filed: 04/18/2024
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other Contract
Jurisdiction: Diversity

**Plaintiff**

**Phil Eisen**

represented by **Shawn J Rabin**
Susman Godfrey LLP
One Manhattan West
Ste 50th Floor
New York, NY 10001
212−336−8330
Fax: 212−336−8340
Email: srabin@susmangodfrey.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Randall McGee**

represented by **Shawn J Rabin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**AT&T, INC.**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/18/2024 | 1 | COMPLAINT WITH JURY DEMAND against AT&T, INC. filed by Phil Eisen, Randall McGee. (Filing fee $405; Receipt number ATXNDC−14553197) Plaintiff will submit summons(es) for issuance. In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information − Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 Cover Sheet) (Rabin, Shawn) (Entered: 04/18/2024) |
| 04/18/2024 | 2 | Request for Clerk to issue Summons filed by Phil Eisen, Randall McGee. (Rabin, Shawn) (Entered: 04/18/2024) |
| 04/18/2024 | 3 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Phil Eisen, Randall McGee. (Clerk QC note: No affiliate entered in ECF). (Rabin, Shawn) (Entered: 04/18/2024) |

KRYSTA KAUBLE PACHMAN (*pro hac vice* to be filed)
kpachman@susmangodfrey.com
MICHAEL GERVAIS (*pro hac vice* to be filed)
mgervais@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

SHAWN J. RABIN (Texas Bar No. 24041738)
srabin@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, New York 10001
Phone: (212) 336-8830
Fax: (212) 336-8340

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| RANDALL McGEE and PHIL EISEN, on behalf of themselves and all others similarly situated, | Case No: |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | **CLASS ACTION** |
| AT&T, INC. | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiffs Randall McGee and Phil Eisen ("Plaintiffs"), by and through their attorneys, complain and allege as follows:

**INTRODUCTION**

1.      This action arises out of AT&T's failure to secure its customers' sensitive personal information. These individuals' private details, including names, social security numbers, and more, have now been made available for sale to criminals on the dark web for years. AT&T's failure to take reasonable steps to secure this personally identifiable information ("PII")—along with its delay of almost three years before notifying the victims—will result in identity theft, out-of-pocket loss, and the understandable distress that a person's private information is now in the hands of criminal hackers.

2.      Defendant AT&T is a multinational telecommunications company that provides a wide range of services including landline telephone, mobile telephone, broadband internet, and television services. AT&T promises its customers in a Privacy Notice that it will "work hard to safeguard your information using technology controls and organizational controls," that AT&T "protect[s] our computer storage and network equipment," and that AT&T "limit[s] access to personal information to the people who need access for their jobs."[1]

3.      As early as 2021, however, threat actors listed AT&T customers' data for sale on the dark web, though AT&T repeatedly denied that its systems had been breached.  AT&T now acknowledges that at least 51 million—and potentially over 73 million—current and former customers were impacted, and that the exposed information includes full names, email addresses, mailing addresses, phone numbers, social security numbers, dates of birth, AT&T account numbers, and AT&T passcodes.

4.      AT&T has since provided notices to its customers, acknowledging that based on its investigation to date, the data appears to be from June 2019 or earlier.  But AT&T has not disclosed how the data was stolen or why it took almost three years to confirm the data in question belonged to its customers so it could provide notice.

---

[1] https://about.att.com/privacy/privacy-notice.html#data-retention (last visited April 17, 2024).

CLASS ACTION COMPLAINT

5.      As a result of AT&T's failure to honor its contractual commitment to consumers, Plaintiffs and the Class face a heightened, imminent risk of harm in the future.  Plaintiffs and the Class must now incur the expense and inconvenience of monitoring their financial accounts and credit histories to guard against the increased risk of identity theft, and will incur out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures in order to detect, protect, and repair the data breach's impact on their lives.

6.      This is a class action brought on behalf of a nationwide Class of persons whose information was accessed as a result of AT&T's failure to adequately protect individuals' PII and failure to effectively monitor its platform for security vulnerabilities.  Plaintiffs bring causes of action for breach of contract and negligence.  Plaintiffs also bring this action on behalf of a subclass of consumers residing in California for violation of California's Consumer Privacy Act, Cal. Civ. Code § 1798.150, violation of California's Customer Records Act, Cal. Civil Code §§ 1798.80, *et seq*., and violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.

7.      Plaintiffs seek damages stemming from at least the following:

  a.      Loss of value of personal information;

  b.      Out-of-pocket expenses;

  c.      Benefit of the bargain loss; and

  d.      Punitive damages.

## PARTIES

8.      Plaintiff Randall McGee resides in Los Angeles, California.  On March 30, 2024, he was notified by AT&T that his personal information was compromised in the AT&T data breach.

9.      Plaintiff Phil Eisen resides in Los Angeles, California.  On March 30, 2024, he was notified by AT&T that his personal information was compromised in the AT&T data breach.

10.     Defendant AT&T, Inc. is headquartered at 208 South Akard Street, Dallas, Texas 75202, and may be served via their registered agent CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201.

CLASS ACTION COMPLAINT

1

**JURISDICTION AND VENUE**

2      11.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§

3  1332(d) because this is a class action wherein the amount in controversy exceeds $5,000,000, there

4  are more than 100 members in the proposed Class, and at least one member of the Class is a citizen

5  of a state different from defendant AT&T.

6      12.     This Court has personal jurisdiction over AT&T because AT&T is headquartered in

7  Texas and has purposefully availed itself of the rights and benefits of Texas, including providing

8  services throughout the United States, including in this District; conducting substantial business in

9  this District; and having a registered agent to accept service of process in this District.

10      13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a

11  substantial part of the events giving rise to the claim occurred in, were directed to, or emanated

12  from this District.  Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because

13  AT&T is subject to the Court's personal jurisdiction in this District.

14

**FACTUAL ALLEGATIONS**

15      **A.    AT&T's Business**

16      14.     AT&T is one of the largest telecommunications companies in the world, operating

17  in wireless services, wireline services, media and entertainment, business solutions and advertising.

18  AT&T's wireless network reaches more than 210 million people with its nationwide mid-band 5G

19  network to offer, according to it, faster speeds and an enhanced experience on the nation's most

20  reliable 5G network.

21      15.     AT&T collects PII from its customers. It notifies its customers, through an online

22  Privacy Notice available on its website, that "[t]o better run our business, we collect information

23  about you, your equipment and how you use products and services."[2] This information includes

24  contact and billing information, equipment information including phone numbers, location

25  information, web browsing and app information, biometric information such as fingerprints, voice

26  prints, and face scans, and third-party information like credit reports. AT&T acknowledges that

27

28

---

[2]  https://about.att.com/privacy/privacy-notice.html#collect-information (last visited April 17, 2024).

"[a]ll these types of information are considered Personal Information when they can reasonably be linked to you as an identifiable person or household."[3]

16.     AT&T publicly states in its 2023 Form 10-K that it maintains "a network and information security program that is reasonably designed to protect our information, and that of our customers, from unauthorized risks to their confidentiality, integrity, or availability."

17.     In its Privacy Notice, AT&T promises customers that it "work[s] hard to safeguard your information using technology controls and organizational controls," "protect[s] our computer storage and network equipment," "require[s] employees to authenticate themselves to access sensitive data," and "limit[s] access to personal information to the people who need access for their jobs."[4]

## B.   The Data Breach

18.     News of the data breach at issue (the "Data Breach") first surfaced in August 2021. A hacking group called ShinyHunters posted data dating back to 2019 on the dark web, comprising 7.6 million current AT&T customers and 65.4 million former account holders, listed for sale at $1 million. At the time, AT&T denied that its customers' data had been compromised.[5]

19.     Three years later, AT&T began notifying customers on March 30, 2024, of the Data Breach.  The notice letter said:

> We take cybersecurity very seriously and privacy is a fundamental commitment at AT&T. We have discovered that your AT&T account passcode has been compromised, therefore we have proactively reset your passcode.  Our internal teams are working with external cybersecurity experts to analyze the situation. It appears the data is from more than 4 years ago and does not contain personal financial information or call history.
>
> **What information was involved?**  The information varied by customer and account, but may have included full name, email address, mailing address, phone number, social security number, date of birth, AT&T account number and passcode. If your sensitive personal information was compromised, we will provide complimentary identity theft and credit monitoring services.
>
> **What is AT&T doing?** We've taken precautionary measures and reset your passcode, which is an extra layer of protection for your account. When you sign in to your online account or call customer care, we'll provide details to help you personalize your passcode.

---

[3] *Id.*
[4] https://about.att.com/privacy/privacy-notice.html#data-retention (last visited April 17, 2024).
[5]     https://www.bleepingcomputer.com/news/security/atandt-denies-data-breach-after-hacker-auctions-70-million-user-database/ (last visited April 17, 2024).

**What can you do?** In addition to resetting your AT&T passcode, we encourage customers to remain vigilant by monitoring account activity and credit reports. You can set up free fraud alerts from nationwide credit bureaus — Equifax, Experian, and TransUnion. You can also request and review your free credit report at any time via Freecreditreport.com.

**More Information** Visit www.att.com/accountsafety for more information and updates.

We apologize this has happened and are committed to keeping your account secure.

20.    AT&T has not disclosed any information about the vulnerability that led to the breach.  Upon information and belief, AT&T did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was collecting and retaining. Indeed, one security researcher cracked the encryption to the leaked users' passcodes because AT&T encrypted them with insufficient randomness in a manner that was easy for hackers to decrypt.[6]

21.    AT&T released a statement following the data breach that described the incident this way:[7]

AT&T* has determined that AT&T data-specific fields were contained in a data set released on the dark web approximately two weeks ago. While AT&T has made this determination, it is not yet known whether the data in those fields originated from AT&T or one of its vendors. With respect to the balance of the data set, which includes personal information such as social security numbers, the source of the data is still being assessed.

AT&T has launched a robust investigation supported by internal and external cybersecurity experts. Based on our preliminary analysis, the data set appears to be from 2019 or earlier, impacting approximately 7.6 million current AT&T account holders and approximately 65.4 million former account holders.

Currently, AT&T does not have evidence of unauthorized access to its systems resulting in exfiltration of the data set. The company is communicating proactively with those impacted and will be offering credit monitoring at our expense where applicable. We encourage current and former customers with questions to visit www.att.com/accountsafety for more information.

As of today, this incident has not had a material impact on AT&T's operations.

---

[6] https://techcrunch.com/2024/03/30/att-reset-account-passcodes-customer-data/ (last visited April 17, 2024).
[7]    https://about.att.com/story/2024/addressing-data-set-released-on-dark-web.html   (last   visited April 17, 2024).

CLASS ACTION COMPLAINT

### C.     Consequences of the AT&T Data Breach

22.     The potential consequences of the Data Breach are substantial.  Plaintiffs and Class members face a heightened risk that identity thieves will open financial accounts in their names, open credit cards in their names, use their information to obtain government benefits, file fraudulent tax returns to obtain tax refunds, obtain driver's licenses or identification cards in their names, gain employment in their names, obtain medical services in their names, or give false information to police during an arrest.  Hackers also commonly sell personal information to other criminals to enable them to misuse the information.

23.     Private information is valuable property. Its value is axiomatic, considering the market value and profitability of "Big Data" corporations in America. Illustratively, Alphabet Inc., the parent company of Google, reported in its 2020 Annual Report a total annual revenue of $182.5 billion and net income of $40.2 billion. $160.7 billion of this revenue derived from Alphabet's Google business, which is driven almost exclusively by leveraging the private information it collects about the users of its various free products and services.

24.     Criminal law also recognizes the value of PII and the serious nature of its theft by imposing prison sentences on cyber thieves, who can earn significant revenue through stealing PII. Once a cybercriminal has unlawfully acquired personal data, the criminal can demand a ransom or blackmail payment for its destruction, use the information to commit fraud or identity theft, or sell the PII to another cybercriminal on a thriving black market. Cybercriminals use "ransomware" to make money and harm victims. Ransomware is a widely known and foreseeable malware threat in which a cybercriminal encrypts a victim's computer such that the computer's owner can no longer access any files or use the computer in any way. The cybercriminal then demands a payment for the decryption key. Ransomware is typically propagated through phishing, spear phishing, or visiting a malicious or compromised website that contains a virus or other malware.

25.     Once stolen, PII can be used in a number of different ways. One of the most common is to offer it for sale on the "dark web," a heavily encrypted part of the Internet that makes it difficult for authorities to detect the location or owners of a website. The dark web is not indexed by normal search engines such as Google and is only accessible using a Tor browser (or similar tool), which

aims to conceal users' identities and online activity. The dark web is notorious for hosting marketplaces selling illegal items such as weapons, drugs, and PII. Websites appear and disappear quickly on the dark web, making it a dynamic environment.

26.     Recently, the Organization for Economic Cooperation and Development estimated the prices for various elements of personal data: $0.50 for an address, $2 for birthdate, $8 for a Social Security number, $3 for a driver's license number, and $35 for a military record.  The value of personal data continues to be high: a personal email can be worth $89, a complete health care record $250, and a hacked Facebook account can sell for $65 on the dark web.  Similarly, a 2019 report found that data generated from an adult is worth roughly $35 per month.

27.     The FTC recommends that identity theft victims take several steps to protect their personal information after a data breach, including contacting one of the credit bureaus to place a fraud alert (and to consider an extended fraud alert that lasts for seven years if identity theft occurs), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.

28.     Cybercriminals use stolen PII such as social security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud. Identity thieves can also use social security numbers to obtain a driver's license or other official identification card in the victim's name, but with the thief's picture; use the victim's name and social security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's social security number, rent a house or receive medical services in the victim's name, seek unemployment or other benefits, and may even give the victim's PII to police during an arrest resulting in an arrest warrant being issued in the victim's name. Obtaining a new social security number is difficult and rarely occurs.

29.     Furthermore, data breaches that expose any personal data directly and materially increase the chance that a potential victim is targeted by a spear phishing attack in the future. Spear phishing results in a high rate of identity theft, fraud, and extortion.

CLASS ACTION COMPLAINT

30.     Unfortunately for Plaintiffs and Class members, a person whose personal information has been compromised may not fully experience the effects of the data breach for years to come:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identify theft.  Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years.  As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[8]

31.     As a result of the Data Breach, Plaintiffs and Class members have and will continue to incur out-of-pocket costs and expenses for, among other things, purchasing credit monitoring services, credit freezes, credit reports, and/or other protective measures to deter and detect identity theft. Plaintiffs and Class members have and will continue to spend time, resources, and money to mitigate their damages from the Data Breach, and they remain at a heightened and imminent risk of fraud and identity theft. Plaintiffs and Class members must now and in the future closely monitor their bank accounts and credit card accounts to guard against the risk of identity theft.

32.     Protections that are necessary to users whose security was hacked include identity theft and credit monitoring, which tends to cost roughly $18 to $30 per month, and identity theft insurance, which ranges from $25 to $60 per year, if not more.

33.     In sum, the costs to date of AT&T's negligent handling of consumers' information are significant, ranging from intangible loss of privacy to tangible financial harm, both known and unknown.  Meanwhile, a user taking reasonable precautions to obtain identity theft and credit monitoring and identity theft insurance would have to spend between $241 and $420 per year.

34.     At all relevant times, AT&T knew, or reasonably should have known, of the importance of safeguarding customers' personal information and the reasonably foreseeable consequences that would occur if its data systems were breached, including, specifically, the significant costs that would be imposed on consumers as a result of a breach.

35.     The Data Breach was a direct and proximate result of AT&T's failure to properly safeguard and protect Plaintiffs' and Class members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common

---

[8] https://www.gao.gov/new.items/d07737.pdf (last visited April 17, 2024).

1  law, including AT&T's failure to establish and implement appropriate technical safeguards to

2  ensure the security and confidentiality of Plaintiffs' and the Class members' PII to protect against

3  reasonably foreseeable threats to its security or integrity.

4        36.    AT&T's wrongful actions and inaction directly and proximately caused the theft

5  and dissemination to an unknown third party of Plaintiffs' PII, causing them to suffer, and continue

6  to suffer, economic damages and other actual harm for which they are entitled to compensation,

7  including:

8           a.    theft of their PII;

9           b.    costs for credit monitoring services;

10           c.    the imminent and certainly impending injury flowing from potential fraud

11  and identity theft posed by their PII being placed in the hands of criminals and already

12  misused via the sale of Plaintiffs' and Class members' PII on the dark web;

13           d.    the improper disclosure of their data;

14           e.    loss of privacy;

15           f.    ascertainable losses in the form of out-of-pocket expenses and the value of

16  their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

17           g.    ascertainable losses in the form of deprivation of the value of their PII, for

18  which there is a well-established national and international market;

19           h.    the loss of productivity and value of their time spent to address, attempt to

20  ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach,

21  including finding fraudulent charges, cancelling and reissuing cards, purchasing credit

22  monitoring and identity theft protection services, imposition of withdrawal and purchase

23  limits on compromised accounts, changing the information used to verify their identity to

24  information not subject to this Data Breach, and the stress, nuisance and annoyance of

25  contending with all such issues resulting from the Data Breach.

26  **CLASS ACTION ALLEGATIONS**

27        37.    Plaintiffs bring this action on behalf of themselves and as a class action under Fed.

28  R. Civ. P. 23(b)(2) and (b)(3) on behalf of:

               CLASS ACTION COMPLAINT

All natural persons residing in the United States whose personal information was accessed as a result of the AT&T data breach (the "Class").

38.     Plaintiffs also bring this action on behalf of:

All natural persons residing in California whose personal information was accessed as a result of the AT&T data breach (the "California Subclass").

39.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiffs believe there are 75 million members of the Class.  The identities of absent members of the Class are ascertainable because they may be identified from records maintained by AT&T and may be notified of the pendency of this action by mail, using a form notice similar to that customarily used in consumer class actions.

40.     There are questions of law and fact common to the Class, including:

a.      Whether AT&T's response to the Data Breach fell below commercially reasonable standards with respect to the protection of that information;

b.      Whether AT&T implemented and maintained reasonable security procedures and practices appropriate to storing Plaintiffs' and Class members' personal information;

c.      Whether AT&T acted negligently in connection with its monitoring and protection of Plaintiffs and Class members' personal information;

d.      Whether the data breach was made possible by AT&T's substandard data security measures and practices;

e.      Whether AT&T adequately addressed and fixed the vulnerability that permitted the Data Breach to occur;

f.      Whether Plaintiffs and other Class members are entitled to credit monitoring and other monetary relief;

g.      Whether AT&T violated California consumer privacy and unfair competition laws; and

h.      The appropriate Class-wide measure of damages.

CLASS ACTION COMPLAINT

41.     At the time of the Data Breach, Plaintiffs and Class members had their personal information stored on AT&T's servers.  Plaintiffs' claims are typical of the claims of the Class, and Plaintiffs will fairly and adequately protect the interests of that Class.

42.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

43.     Plaintiffs are represented by counsel who are competent and experienced in the prosecution of class action litigation.

44.     The prosecution of separate actions by individual members of the Class would also create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for AT&T.

45.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Individual claims are likely too small to prosecute economically on an individual basis.  Prosecution as a class action will eliminate the possibility of repetitious litigation.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.  This class action presents no difficulties in management that would preclude maintenance as a class action.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Breach of Contract**

**(On Behalf of the Nationwide Class)**

46.     Plaintiffs, on behalf of themselves and the Class, incorporate and re-allege the preceding paragraphs of the complaint.

47.     AT&T's Privacy Notice is an agreement between AT&T and its customers who provided their PII to AT&T, including Plaintiffs and Class members.

48.     AT&T's Privacy Notice states, among other things, that it applies to "AT&T products and services including internet, wireless, voice and AT&T apps" and the Privacy Notice

"explains how we use your information and keep it safe."[9] According to AT&T, it collects "personal information" that "can reasonably be linked to you as an identifiable person or household." The Privacy Notice states that AT&T "work[s] hard to safeguard your information using technology controls and organizational controls," that AT&T "protect[s] our computer storage and network equipment," and AT&T "limit[s] access to personal information to the people who need access for their jobs."[10] AT&T further promised that it would only share certain data under specific enumerated circumstances, which includes "with your consent" or with AT&T companies and its affiliates for specified purposes such as identity verification, providing a service, and for advertising and marketing. None of the enumerated circumstances involve sharing class members' PII with a criminal hacker. In addition, AT&T states that "[i]f a breach occurs, we'll notify you as required by law."

49.    AT&T's Privacy Notice also provides for data-retention policies.  It states:

> We keep your information as long as we need it for business, tax or legal purposes. We set our retention periods based on things like what type of personal information it is, how long it's needed to operate the business or provide our products and services, and whether it's subject to contractual or legal obligations. These obligations might be ongoing litigation, mandatory data retention laws or government orders to preserve data for an investigation. After that, we destroy it by making it unreadable or indecipherable.[11]

50.    Plaintiffs and Class members provided their PII to AT&T when they, among other things, used AT&T's services and purchased products from AT&T. Consequently, Plaintiffs and Class members who transacted with AT&T manifested their willingness to enter into a bargain with AT&T and intention to assent to the terms of the Privacy Notice by providing their PII to AT&T.

51.    Conversely, AT&T, in collecting Plaintiffs' and Class members' PII, manifested its intent to adhere to its obligations under the Privacy Notice, including "work[ing] hard to safeguard your information using technology controls and organizational controls."

52.    Plaintiffs and Class members on the one hand and AT&T on the other formed contracts when Plaintiffs and Class members provided PII to AT&T subject to its Privacy Notice.

---

[9] https://about.att.com/privacy/privacy-notice.html (last visited April 17, 2024).
[10] *Id.*
[11] https://about.att.com/privacy/privacy-notice.html#data-retention (last visited April 17, 2024).

CLASS ACTION COMPLAINT

53.     Plaintiffs and Class members fully performed their obligations under the contracts with AT&T.

54.     AT&T breached its agreement with Plaintiffs and Class members by failing to protect their PII.  Specifically, AT&T (1) failed to take reasonable steps to use safe and secure systems to protect that information; (2) disclosed that information to unauthorized third parties; and (3) failed to promptly alert or give notice of the breach as required by law.

55.     AT&T further breached its agreement with Plaintiffs and Class members who are former AT&T customers by failing to comply with its promised data-retention policies. AT&T failed to destroy the data as promised, compromising the sensitive PII of Plaintiffs and Class members.

56.     As a direct and proximate result AT&T's breaches of contract, Plaintiffs and Class members sustained actual losses and damages as described in detail above, and are also entitled to recover nominal damages.

## SECOND CLAIM FOR RELIEF

### Negligence

### (On Behalf of the Nationwide Class)

57.     Plaintiffs, on behalf of themselves and the Class, incorporate and re-allege the preceding paragraphs of the complaint.

58.     AT&T owed a duty to Plaintiffs and the Class members to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting and protecting their PII.  This duty included designing, maintaining, monitoring and testing AT&T's security systems and protocols to ensure that Class members' PII was protected; implementing processes that would detect a breach of its security system in a timely manner; timely acting upon warnings and alerts, including those generated by its own security systems, regarding intrusions to its networks; and maintaining data security measures consistent with industry standards. AT&T's duty rose independently of any contract.

CLASS ACTION COMPLAINT

59.     In providing their PII, Plaintiffs and Class members had a reasonable expectation that this information would be securely maintained and not easily accessible to, or exfiltrated by cybercriminals.

60.     AT&T had a common law duty to prevent foreseeable harm to others.  Plaintiffs and Class members were the foreseeable and probable victims of any inadequate security practices. It was foreseeable that Plaintiffs and Class Members would be harmed by the failure to protect their PII because hackers are known to routinely attempt to steal such information and use it for nefarious purposes.

61.     AT&T also had a duty to use reasonable security measures required under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect consumers' PII.

62.     AT&T had a special relationship with Plaintiffs and Class members because it was entrusted with their personal information, which provided an independent duty of care.  AT&T had a duty to use reasonable security measures because it undertook to collect, store, and use consumers' PII. AT&T was solely responsible for and in the position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiffs and Class members from a resulting data breach.

63.     AT&T also had a duty to safeguard the PII of Plaintiffs and Class members and to promptly notify them of a breach because of state laws and statutes that require AT&T to reasonably safeguard sensitive personal information, as alleged herein.

64.     Timely notification of the breach was required so that, among other things, Plaintiffs and Class members could take measures to freeze or lock their credit profiles, avoid unauthorized charges to their credit or debit card accounts, cancel or change usernames and passwords on compromised accounts, monitor their account information and credit reports for fraudulent activity, contact their banks or other financial institutions that issue their credit or debit cards, obtain credit monitoring services, and take other steps to try to prevent identify theft.

CLASS ACTION COMPLAINT

65. Class members whose information was stored on AT&T's servers have an interest in the protection of their PII.

66. AT&T breached its duty to exercise reasonable care in protecting Plaintiffs' and Class members' PII by:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiffs and Class members' PII, including failing to use sufficient encryption;

b. Failing to adequately monitor the security of its networks and systems, including a failure to identify that the breached data set belonged to AT&T in 2021;

c. Allowing unauthorized access to and exfiltration of Plaintiffs and Class members' PII; and

d. Failing to provide timely notice by delaying for almost three years since the breach began, that Plaintiffs and Class members' PII had been compromised so those at risk could take timely and appropriate steps to mitigate the potential for identity theft and other damages.

67. Plaintiffs and Class members were the foreseeable victims of AT&T's inadequate and ineffectual cybersecurity. The natural and probable consequence of AT&T failing to adequately secure its information networks was Plaintiffs' and Class members' PII being hacked.

68. AT&T knew or should have known that Plaintiffs' and Class members' PII was an attractive target for cyber thieves, particularly in light of data breaches experienced by other entities around the United States. Moreover, the harm to Plaintiffs and Class members from exposure of their highly confidential personal facts was reasonably foreseeable to AT&T.

69. It was foreseeable to AT&T that their failure to use reasonable measures to protect Plaintiffs and Class members' PII, including when it warned its systems and networks were vulnerable to cyberattack, would result in injury to Plaintiffs and Class members. Further, the breach of security was reasonably foreseeable given the known high frequency of ransomware attacks and data breaches.

CLASS ACTION COMPLAINT

70.     It was also foreseeable to AT&T that its failure to timely notify customers of the breach by delaying almost three years would result in Plaintiffs and Class members not being afforded the ability to timely safeguard their identities.

71.     There is a close connection between AT&T's failure to employ reasonable security protections for the PII and the injuries suffered by Plaintiffs and Class members. When individuals' sensitive personal information is stolen, they face a heightened risk of identity theft and may need to: (1) purchase identity protection, monitoring, and recovery services; (2) flag asset, credit, and tax accounts for fraud, including by reporting the theft of their Social Security numbers to financial institutions, credit agencies, and the IRS; (3) purchase or otherwise obtain credit reports; (4) monitor credit, financial, utility, explanation of benefits, and other account statements on a monthly basis for unrecognized credit inquiries and charges; (5) place and renew credit fraud alerts on a quarterly basis; (6) contest fraudulent charges and other forms of identity theft; (7) repair damage to credit and financial accounts; and (8) take other steps to protect themselves and attempt to avoid or recover from identity theft and fraud.

72.     The policy of preventing future harm disfavors application of the economic loss rule, particularly given the sensitivity of the PII entrusted to AT&T. AT&T had an independent duty in tort to protect this information and thereby avoid reasonably foreseeable harm to Plaintiffs and Class members.

73.     AT&T's negligence was gross, willful, wanton, and reprehensible and warrants the imposition of punitive damages given the clear foreseeability of a hacking incident, the extreme sensitivity of the private information under AT&T's care, and its failure to notify of the victims for almost three years following when news of the Data Breach first surfaced.

74.     Plaintiffs and the Class have suffered injury in fact and a loss of money or property in the following ways:

a.     They have had their present and future property interest in their personally information diminished;

b.     They have been deprived of control over their personal information;

CLASS ACTION COMPLAINT

c.   They may be required to incur the expense of credit report freezes, credit and identity theft monitoring, and identity theft insurance; and

d.   They are at imminent risk of future harm from identity theft.

75.   The damages to Plaintiffs and Class members were a proximate, reasonably foreseeable result of AT&T's breach of its duties to safeguard the consumers' PII it was entrusted to keep.

76.   Plaintiffs and Class members are entitled to damages in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**

**Violation of the California Consumer Privacy Act**

**Cal. Civil Code §§ 1798.100 *et seq.***

**(On Behalf of the California Subclass)**

77.   Plaintiffs, on behalf of themselves and the California Subclass, incorporate and re-allege the preceding paragraphs of the complaint.

78.   Section 1798.150(a)(1) of the CCPA provides, "[a]ny consumer whose nonencrypted or nonredacted personal information, as defined [by California Civil Code section 1798.81.5(d)(1)(A)] is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

79.   Plaintiffs and California Subclass members are consumers and California residents as defined by California Civil Code section 1798.140(i).

80.   AT&T is a "business" as defined by California Civil Code section 1798.140(d) because it is a "sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners, that collects consumers' personal information, or on the behalf of which such information is collected and that alone, or jointly with others, determines the purposes and means

of the processing of consumers' personal information, that does business in the State of California." In addition, AT&T has annual gross revenues in excess of $25 million, receives the personal information of 100,000 or more consumers or households, and/or derives 50 percent of their annual revenue from selling or sharing consumers' personal information. AT&T is therefore subject to the CCPA.

81.     AT&T collects personal information from, among other sources, consumers who request information from them, consumers who use their services, including users of their mobile applications, and consumers who submit customer support requests. This PII includes information defined as "sensitive" under the CCPA.

82.     AT&T violated Section 1798.150 of the California Consumer Privacy Act by failing to prevent plaintiff and the California Subclass members' nonencrypted and nonredacted personal information from unauthorized access and exfiltration, theft, or disclosure as a result of AT&T's violation of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information. The Data Breach described herein exposed, without limitation, full names, email addresses, mailing addresses, phone numbers, Social Security numbers, dates of birth, AT&T account numbers, and AT&T passcodes, as well as other personal information provided to AT&T.

83.     AT&T knew or should have known that its data security practices were inadequate to secure California Subclass members' PII and that its inadequate data security practices gave rise to the risk of a data breach.

84.     AT&T failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the personal information it collected and stored.

85.     Plaintiff seeks injunctive relief in the form of an order requiring AT&T to employ adequate security practices consistent with law and industry standards to protect the California Subclass members' personal information, requiring AT&T to complete its investigation, and to issue an amended statement giving a detailed explanation that confirms, with reasonable certainty, what categories of data were stolen and accessed without the California Subclass members' authorization, along with an explanation of how the data breach occurred.

86.    Plaintiff presently seeks only injunctive relief and any other relief the Court may deem proper pursuant to this section.  Prior to initiating a claim for statutory damages, Plaintiffs served a written notice on April 17, 2024 identifying AT&T's violations of Cal. Civil Code § 1798.150(a) and demanding the Data Breach be cured.  If within 30 days AT&T has not cured, Plaintiffs will amend this Complaint to seek statutory damages pursuant to Cal. Civil Code § 1798.150(a)(1)(A).

<u>**FOURTH CLAIM FOR RELIEF**</u>

**Violation of California's Customer Records Act**

**Cal. Civil Code §§ 1798.80, *et seq*.**

**(On Behalf of the California Subclass)**

87.    Plaintiffs, on behalf of themselves and the California Subclass, incorporate and re-allege the preceding paragraphs of the complaint.

88.    "[T]o ensure that Personal Information about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains Personal Information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the Personal Information from unauthorized access, destruction, use, modification, or disclosure."

89.    Plaintiffs and California Subclass members are "customers" within the meaning of California Civil Code section 1798.80(c), as they provided personal information to AT&T for the purpose of obtaining services from AT&T.

90.    AT&T is a business within the meaning of Cal. Civ. Code § 1798.81.5 that owns, maintains, and licenses personal information about Plaintiffs and California Subclass members.

91.    Businesses that own or license computerized data that includes personal information, including Social Security numbers, are required to notify California residents when their personal information has been acquired (or is reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82. Among other requirements, the security breach

notification must include "the types of Personal Information that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82.489.

92.     AT&T is a business that owns or licenses computerized data that includes personal information as defined by Cal. Civ. Code § 1798.82.490. Plaintiff and California Subclass members' personal information (e.g., Social Security numbers) includes personal information as covered by Cal. Civ. Code § 1798.82.

93.     The Data Breach constitutes a breach of security within the meaning of section 1798.82. PII stolen in the Data Breach, such as full names, email addresses, mailing addresses, phone numbers, Social Security numbers, dates of birth, AT&T account numbers, and AT&T passcodes, as well as other information, constitutes "personal information" within the meaning of section 1798.80(e).

94.     Because AT&T knew that Plaintiffs' and California Subclass members' personal information was acquired by unauthorized persons during the AT&T data breach, AT&T had an obligation to disclose the AT&T data breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82. By failing to disclose the AT&T data breach in a timely and accurate manner, AT&T violated Cal. Civ. Code § 1798.82. As a direct and proximate result of AT&T's violations of the Cal. Civ. Code §§ 1798.81.5 and 1798.82, Plaintiffs and California Subclass members suffered damages, as described above.

95.     Plaintiffs and California Subclass members seek relief under Cal. Civ. Code § 1798.84, including actual damages and injunctive relief.

## FIFTH CLAIM FOR RELIEF

### Violation of California's Unfair Competition Law ("UCL"),

### Cal. Bus. & Prof. Code §§ 17200, *et seq*.

### (On Behalf of the California Subclass)

96.     Plaintiffs, on behalf of themselves and the California Subclass, incorporate and re-allege the preceding paragraphs of the complaint.

97.     AT&T has engaged in unlawful, unfair and deceptive practices, including:

CLASS ACTION COMPLAINT

a.     Failing to implement and maintain reasonable security and privacy measures to protect plaintiff and California Subclass members' personal information, which was a direct and proximate cause of the AT&T data breach;

b.     Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures, which was a direct and proximate cause of the AT&T data breach;

c.     Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California Subclass members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the AT&T data breach;

d.     Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and California Subclass members' personal information, including by implementing and maintaining reasonable data security measures;

e.     Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California Subclass members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

f.     Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and California Subclass members' personal information; and

g.     Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of plaintiff and California Subclass members' personal information, including duties imposed by the FTC Act.

98.     Plaintiffs and the California Subclass members have suffered injury in fact and a loss of money or property in the following ways:

a.     They have had their present and future property interest in their PII diminished;

CLASS ACTION COMPLAINT

b.      They have been deprived of the exclusive use of their PII;

c.      They may be required to incur expenses in connection with obtaining credit report freezes, credit and identity theft monitoring, and identity theft insurance; and

d.      They are at imminent risk of future harm from identity theft.

99.      AT&T's actions were unlawful in that they violated the FTC Act, 15 U.S.C. § 45(n) (allowing the FTC to declare unlawful an act or practice that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition").

100.      AT&T's actions were also fraudulent in that they represented a standard of care that it knew or should have known to be false.

101.      Had AT&T disclosed to Plaintiffs and California Subclass members that its data systems were not secure and, thus, vulnerable to attack, AT&T would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, AT&T was trusted with sensitive and valuable personal information of millions of consumers, including Plaintiffs and California Subclass members.  AT&T accepted the responsibility of maintaining consumer data while keeping the inadequate state of its security controls secret from the public.

102.      AT&T had a duty to disclose the above-described facts due to the circumstances of this case, the sensitivity of the personal information in its possession, and the generally accepted professional standards in the telecommunications industry. Such a duty is also implied by law due to the nature of the relationship between consumers—including Plaintiffs and the California Subclass—and AT&T, because consumers are unable to fully protect their interests with regard to the personal information in AT&T's possession, and place trust and confidence in AT&T. AT&T's duty to disclose also arose from its:

a.      Possession of exclusive knowledge regarding the security of consumers' data stored in its systems;

b.      Active concealment of the state of its security; and/or

1        c.      Incomplete representations about the security and integrity of its computer and data systems, while purposefully withholding material facts from Plaintiffs and Class members that contradicted these representations.

103.    As a direct and proximate result of AT&T's unfair and deceptive acts or practices, Plaintiffs and California Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their personal information.

104.    Plaintiffs and California Subclass members are entitled to restitution in the form of the diminished value of the personal information that was entrusted to AT&T.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray as follows:

A.      Certifying this case as a class action, appointing Plaintiffs as Class representatives, and appointing interim class counsel to represent the Class;

B.      Entering judgment for Plaintiffs and the Class;

C.      Awarding Plaintiffs and Class members actual damages, compensatory damages, punitive damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

D.      Ordering appropriate injunctive relief;

E.      Awarding pre- and post-judgment interest according to law;

F.      Awarding reasonable attorneys' fees and costs as permitted by law;

G.      Granting such further and other relief as may be just and proper.

///

///

///

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: April 18, 2024

SHAWN J. RABIN
KRYSTA KAUBLE PACHMAN
MICHAEL GERVAIS

SUSMAN GODFREY L.L.P.


By:   */s/ Shawn J. Rabin*
        Shawn J. Rabin
        Attorneys for Plaintiffs

CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all matters so triable.

Dated: April 18, 2024

SHAWN J. RABIN
KRYSTA KAUBLE PACHMAN
MICHAEL GERVAIS

SUSMAN GODFREY L.L.P.

By:   */s/ Shawn J. Rabin*
      Shawn J. Rabin
      Attorneys for Plaintiffs

CLASS ACTION COMPLAINT