BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: AT&T INC. CUSTOMER DATA SECURITY BREACH LITIGATION | MDL Docket No. 3114 |

**INTERESTED PARTY RESPONSE OF PLAINTIFFS JOSEPH CASEY AND RAQUEL AGEE IN SUPPORT OF PLAINTIFF ALEX PETROSKI'S MOTION FOR TRANSFER AND CENTRALIZATION OF RELATED ACTIONS TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED PRE-TRIAL PROCEEDINGS**

In accordance with Rule 6.2 of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation and pursuant to 28 U.S.C. § 1407, Plaintiffs Joseph Casey ("Casey") and Raquel Agee ("Agee") (collectively "Casey Respondents") respectfully submit this interested party response in support of Plaintiff Alec Petroski's Motion for Transfer and Centralization of Actions pursuant to 28 U.S.C. § 1407 for Consolidated Pre-Trial Proceedings ("Motion"), *see* Doc. 1. For the reasons set forth below, the Casey Respondents wholeheartedly support transfer and centralization of the Related Actions to the United States District Court for the Northern District of Texas, which is an excellent, highly appropriate, and convenient transferee district for this nationwide litigation involving many tens of millions of class members versus a single defendant headquartered in Dallas, Texas.

I.     INTRODUCTION

This is a "data breach" class action against AT&T for its failure to properly and adequately safeguard the personally identifying information ("PII") of many tens of millions of current and former AT&T customers. Defendant AT&T, a telecommunications provider

1

headquartered in Dallas, Texas, provides consumer and business cellular, internet, and other telecommunications services throughout the United States. AT&T is the largest telecommunications company in the United States, with a market share of approximately 46% of wireless subscriptions.

As a requirement of providing services, AT&T collects critical PII from consumers, including, but not limited to, their names, email addresses, mailing addresses, birth dates, and Social Security Numbers. On or about March 30, 2024, AT&T posted a notice on its website stating that "a number of AT&T passcodes have been compromised" (the "Data Breach").[1] AT&T confirmed that a "data set" consisting of data relating to 7.6 million current AT&T customers and approximately 65.4 million former account holders had been released on the dark web.[2,3,4] AT&T further acknowledged that this "data set" included critical PII such as names, Social Security numbers, email addresses, mailing addresses, phone numbers, and birth dates. News reports further indicate that this "data set" appears to relate to a data breach that occurred in 2021, but was never acknowledged or remedied in any way by AT&T until recently.[5]

Plaintiffs seek to hold Defendant responsible for its failure to protect and keep secure the PII of Plaintiffs and similarly situated Class Members, and for its failure to (a) identify the Data Breach, (b) identify its extent, and (c) promptly notify consumers. Discovery conducted in the various Related Actions will be substantially similar and involve the same documents and witnesses with respect to AT&T. Questions of law and fact arise from a common factual core in the cases, all of which assert similar legal theories, albeit perhaps with different state consumer statutes and plaintiff specific factual allegations. Moreover, the issue of damages

---

[1] *See* https://www.att.com/support/article/my-account/000101995?bypasscache=1, last visited April 24, 2024.
[2] https://about.att.com/story/2024/addressing-data-set-released-on-dark-web.html, last visited April 24, 2024.
[3] *See* https://fortune.com/2024/03/31/att-data-breach-over-70-million-dark-web/, last visited April 24, 2024.
[4] https://www.npr.org/2024/03/30/1241863710/att-data-breach-dark-web, last visited April 24, 2024.
[5] https://techcrunch.com/2024/03/22/att-customers-data-leak-online/?guccounter=1 , last visited April 24, 2024.

suffered by the putative class of potentially tens of millions or more persons who have been victims of the Data Breach is a common factual issue present in all of the related actions.

A Section 1407 transfer and consolidation is prudent under the circumstances. Indeed, the purpose of centralizing these cases is to promote the just and efficient litigation of the Related Actions, avoid inconsistent rulings on key and fundamental issues, and prevent duplicative discovery or other inefficiencies that would threaten to drain judicial resources. The Panel has typically consolidated data breach cases, as more fully noted below.

Federal judges are well equipped to manage centralization in cases where there are substantial complexities. It is often a truism that the more complicated and voluminous situations confirm the strength of centralization, where skilled judges can work with experienced counsel to move otherwise seemingly complex cases to an efficient and just resolution. And, as shown below, the Northern District of Texas would provide the most appropriate forum for centralization of these Related Actions.

## II.     LEGAL STANDARD AND ARGUMENT

### A.     TRANSFER OF THE ACTIONS TO ONE COURT FOR CONSOLIDATION IS APPROPRIATE UNDER 28 U.S.C. § 1407

Transfer is appropriate when actions pending in different judicial districts involve similar questions of fact such that consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. In relevant part, Section 1407 provides as follows:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

The purpose of multidistrict litigation is to "eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968); *In re*

*Ethicon Physiomesh Flexible Composite Hernia Mesh Prod. Liab. Litig.*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017) (transfer to a single district for pretrial proceedings "conserve[s] the resources of the parties, their counsel, and the judiciary."); In re *Capital One Customer Data Sec. Breach*, 396 F. Supp. 3d 1364, 1365 (same). Consolidation is especially important in multidistrict litigations where "the potential for conflicting, disorderly, chaotic" action is greatest. *See Plumbing Fixture Cases*, 298 F. Supp. at 493; *see also In re Fosamax Prods. Liab. Litig.*, 444 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006).

As stated in *In re Katz Interactive Call Processing Pat. Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007):

> Transfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer. Centralization will permit all actions to proceed before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to duplicative discovery demands.

This Panel has consistently consolidated data breach cases like these Related Actions on the basis of the inherent efficiencies in dealing with common facts arising in such cases.[6] Transfer and

---

[6] *See, e.g., In re Am. Med.*, 410 F. Supp. 3d at 1353; *In re KeyBank*, 2023 WL 1811824, at *1; *In re Samsung Customer Data Sec. Breach Litig.*, 2023 WL 1811247, at *1 (J.P.M.L. Feb. 1, 2023); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 544 F. Supp. 3d 1371, 1372 (J.P.M.L. 2021); *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1363 (J.P.M.L. 2020); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) ("The factual overlap among these actions is substantial, as they all arise from the same data breach, and they all allege that Marriott failed to put in to place reasonable data protections. . . ."); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1353 (J.P.M.L. 2018) ("Common factual questions are presented with respect to Uber's practices in safeguarding its users' personal information, the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 223 F. Supp. 3d 1353, 1354 (J.P.M.L. 2016) ("Common factual questions are presented with respect to Yahoo's practices in safeguarding its users' personal information, the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages."); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016) ("Here, all actions stem from the same data breach, and we are persuaded that discovery concerning the breach, how and when it was identified, what security measures 21st Century had in place for securing patient data, and what steps it took after discovery

consolidation shall serve the convenience of the parties and witnesses, promote efficiency, eliminate duplicative discovery, reduce litigation costs, and conserve resources and time of parties and the courts.

### B. THE NORTHERN DISTRICT OF TEXAS IS THE APPROPIATE FORUM FOR TRANSFER AND COORDINATION OR CONSOLIDATION

The Northern District of Texas is a highly convenient and ideal transferee forum for this litigation. No less than 40 Related Actions have been filed in different district courts as of April 24, 2024, and the vast majority, no less than 31 cases, are pending in the Northern District of Texas and are consolidated before Judge Ada Brown as of April 23, 2024.

Dallas, Texas is a sophisticated, large metropolitan area with two significant airfields – Dallas-Fort Worth International Airport and Love Field – that can easily service all counsel, witnesses, and parties to the litigation, and provide for ease of travel and convenience to and from the courthouse. Additionally, the Dallas metro area, including the area within close proximity to the courthouse, offers numerous options for lodging and dining, further ensuring that the Northern District of Texas provides a convenient forum for all. Dallas, Texas is also a far more centralized location for this litigation against a Texas-based defendant than Georgia, or California. It is an appropriate transferee forum as it has the strongest "nexis" to the litigation. The litigation's "center of gravity" is where Defendant AT&T is headquartered, and where most of the key witnesses and evidence are located. Here, that certainly is the Northern District of Texas.[7]

---

of the breach will be common among the . . . actions and is likely to be complex and time-consuming.").

[7] *See, e.g., In re Delphi Corp.*, 403 F. Supp. 2d at 1360 (district where documents and witnesses likely to be found and where defendant was headquartered had "significant nexus to the litigation"); *In re Nine W.*, 464 F. Supp. 3d at 1385 (same).

1. **Defendant AT&T's Substantial Presence in the Northern District of Texas Strongly Supports Transfer and Centralization**

A singularly important factor in deciding where to send centralized cases in the MDL is the presence of key documents and witnesses where the defendant is headquartered. AT&T is headquartered in Dallas, Texas. And documents and witnesses are most present there.[8] The Panel has relied on factors such as defendant's headquarters where common witnesses and other evidence will likely be found as a basis to centralize cases and transfer them to the District wherein the defendant is headquartered. For example, in *In re Radioshack Corp. "Erisa" Litig.*, 528 F. Supp. 2d 1348 (JPML 2007) the Panel clearly noted that it was "persuaded that the Northern District of Texas … is an appropriate transferee forum … Radioshack is headquartered within this district and documents and witnesses will likely be found there;" *see also In re Iron Oak Techs. LLC*, *Pat. Litig.*, 325 F. Supp. 3d 1371 (J.P.M.L. 2018) ("[W]e conclude that the Northern District of Texas as an appropriate transferee district for this litigation. Patent holder Iron Oak Technologies, LLC, and its two principals, who are the inventors of the patents in issue, are located in this district"); *In re Blackband, Inc. Consumer Data Security Breach Litigation*, 509 F. Supp. 3d 1362, 1364 (JPML 2020) ("*Blackband* has its headquarters in South Carolina. Thus, common witnesses and other evidence likely will be located in this District"). This is particularly true in cases involving allegations of a data breach. *See, e.g., In re Marriott Int'l, Inc.*, 363 F. Supp. 3d at 1374–75 (selecting district where defendant "is headquartered . . . and relevant documents and witnesses thus likely will be found there"); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 89 F. Supp. 3d 1322, 1326 (J.P.M.L. 2017) (same); *In re Yahoo! Inc.*, 223 F. Supp. 3d at 1354-55 (same); *In re 21st Century*, 214 F. Supp. 3d at 1358 (same); *In re Zappos.Com, Inc., Customer Data Security Breach Litig.*, Transfer Order, MDL No. 2357 (J.P.M.L. June 13, 2012), ECF No. 18, at 1-2 (same).

---

[8] One of the critical, inquiries of discovery and depositions relates to why AT&T management decided to delay notifying victims of the data breach for a substantial period of time. Relevant company witnesses will be present in the Northern District of Texas.

While AT&T operates throughout the United States, it is significant that it has its headquarters and principle place of business in Dallas, Texas. AT&T conducts significant business in Texas, which is the second largest state by population within the United States, and one of AT&T's largest markets, where a substantial portion of the class members reside. The State of Texas is an integral nexis of its operations. Consequently, common witnesses, relevant documents, and other evidence for discovery, especially those related to its cyber-security, are located in the Northern District of Texas, thus ensuring that centralizing all cases and transferring all related cases to the District shall conserve the parties' resources while streamlining discovery. Further, the Northern District of Texas is appropriate since, beyond AT&T being headquartered there, it will serve the convenience of the parties and prevent duplicative discovery. *See In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2873, 2023 WL 2875927, at *3 (J.P.M.L. April 10, 2023) ("transfer is appropriate if it furthers the expeditious resolution of the litigation taken as a whole, even if some parties to the action might experience inconvenience or delay").

2. **The District of Texas is Best Positioned to Ensure Expeditious Handling of this MDL**

The Panel often looks to a transferee forum "with a capacity and experience to steer [the] litigation on a prudent course." *In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361-62 (J.P.M.L. 2004). The Northern District of Texas has the resources, judicial expertise, and experience to efficiently manage this multi-district litigation to effectuate the purpose of Section 1407.

Not only are the great majority of the Related Actions filed in the Northern District Texas, but presently there is only one active MDL in the Northern District of Texas. *See* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_dockets_By_District-April-1-2024.pdf (last visited 4/23/2024). The Northern District of Texas has the capacity to handle this MDL. *See* https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf (last visited 4/23/2024). Accordingly, the Northern District of Texas is an appropriate choice for transfer and consolidation.

### 3. Judge Ada Brown is Well Suited for Assignment as the Judicial Officer Over This MDL

Respondents respectfully suggest that centralization before the Honorable Ada Brown would be most appropriate. Judge Brown was assigned to the first-filed action in the District and is currently presiding over all of the related actions filed in the Northern District of Texas, which are now consolidated.

Judge Brown has extensive experience as a jurist. Before assuming office as a Judge of the United States District Court for the Northern District of Texas on September 13, 2019, Judge Brown was an Associate Justice of the Fifth Court of Appeals of Texas from September 3, 2013 through September 13, 2019, and a Judge of the Dallas County District Court from 2005 through 2007. Prior to serving as a dedicated jurist, Judge Brown was a practicing lawyer and litigator in Dallas, Texas. Focusing on high stakes commercial litigation and complex patent infringement matters, Judge Brown tried cases that resulted in some of the largest jury verdicts in the Nation. There is no question that Judge Brown is an excellent jurist who is well-deserving and well-equipped to preside over this large data breach litigation.

However, if for any reason Judge Brown is not assigned, the Northern District of Texas is also blessed with an abundance of highly regarded, efficient, competent, and experienced Judges from which the Panel could choose to assign the cases in the event that it finds this District to be the most appropriate forum.

### III. CONCLUSION

For these reasons, the Casey Respondents respectfully request that the Panel grant consolidation under 28 U.S.C. § 1407, and transfer all the Related Actions to the Northern District of Texas, under the guidance of the Honorable Ada Brown.

Dated: April 24, 2024            Respectfully submitted,

/s/ Stephen R. Basser

**BARRACK, RODOS & BACINE**

Stephen R. Basser

Samuel M. Ward
sbasser@barrack.com
sward@barrack.com
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

**STECKLER WAYNE & LOVE PLLC**
Bruce W. Steckler
12720 Hillcrest Suite 1045
Dallas, Texas 75230
Telephone: (972) 387-4040
Cell: (214) 208-3327
bruce@stecklerlaw.com

**EMERSON FIRM**, **PLLC**
John G. Emerson
jemerson@emersonfirm.com
2500 Wilcrest Drive, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Facsimile: (501) 286-4659

*Attorneys for Plaintiffs, Joseph Casey and Raquel Agee*