BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: AT&T INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES | MDL Docket No. 3114 |

**MEMORANDUM OF PLAINTIFFS RANDALL MCGEE AND PHIL EISEN IN RESPONSE TO MOTION FOR TRANSFER AND CENTRALIZATION OF RELATED ACTIONS TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED PRETRIAL PROCEEDINGS**

Plaintiffs Randall McGee and Phil Eisen[1] submit this response to the motion filed by plaintiff Alex Petroski on April 2, 2024, seeking consolidation and transfer of all related actions to the United States District Court for the Northern District of Texas. McGee and Eisen agree with Petroski that these related actions should be consolidated and transferred to the United States District Court for the Northern District of Texas for the reasons set forth below.

## INTRODUCTION

McGee and Eisen seek to consolidate numerous class action lawsuits against AT&T, Inc. ("AT&T") arising from the March 2024 AT&T data breach. The first reports of this data breach surfaced in August 2021, when the personal information of roughly 73 million AT&T users appeared for sale on the dark web. AT&T denied it had been hacked at the time, and did not notify its customers of the breach until March 2024. The ramifications of this security breach are severe,

---

[1] Randall McGee and Phil Eisen are the named plaintiffs in the putative class action *Eisen et al v. AT&T, Inc.*, pending before the United States District Court for the Northern District of Texas, Dallas Division, No. 3:24-cv-00954.

1

given that the information is already on the dark web. Thieves have easy access to this personal information to commit identity theft, among many other harms.

The plaintiffs all allege violations of various state data breach statutes and common law principles, and all of the actions generally seek certification of a similar class of persons. Specifically, the plaintiffs in these actions allege that AT&T failed to maintain an adequate data security system, failed to protect consumers' private information, failed to timely notify consumers of the breach, and failed to monitor its own data security systems, which allowed hackers to access AT&T's databases of consumers' private information.

The primary goal of transfer under 28 U.S.C. § 1407 is to promote the "convenience of parties and witnesses and . . . promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). To promote this statutory mandate, the numerous cases pending throughout the country should be transferred to one forum, and that forum should be the Northern District of Texas. In making its decision, the Panel should consider the following facts: (a) AT&T is headquartered in Dallas, Texas; (b) far more of these related cases have been filed in the Northern District of Texas than in any other jurisdiction; (c) the Northern District of Texas has a favorable docket condition for this litigation and has the experience and resources to handle this complex litigation; and (d) the Northern District of Texas is readily accessible to all parties.

## ARGUMENT

### I.     THE CASES SHOULD BE CONSOLIDATED

Forty related cases arising out of the data breach have been filed so far against AT&T. These cases, as well as any "tag-along" cases, should be consolidated and litigated in a single forum under § 1407. They involve the same allegations and legal standards, and they are numerous. Unless these cases are consolidated, the parties will incur excessive costs due to duplicative

discovery and will face the risk of inconsistent rulings on a variety of matters. Consolidation will conserve judicial resources, avoid inconsistent rulings, promote convenience for the parties and witnesses, and minimize duplication of motion practice and discovery.

### A. The litigation involves common questions of fact.

Pursuant to 28 U.S.C. § 1407(a), the related cases are "civil actions involving one or more common questions of fact," including:

- Whether AT&T's response to the data breach fell below commercially reasonable standards;

- Whether AT&T implemented and maintained reasonable security procedures and practices appropriate to storing plaintiffs' and class members' personal information;

- Whether AT&T acted negligently in connection with its monitoring and protection of plaintiffs' and class members' personal information;

- Whether the data breach was made possible by AT&T's substandard data security measures and practices;

- Whether AT&T delayed giving notice of the data breach to class members;

- Whether plaintiffs and other class members are entitled to credit monitoring and other monetary relief; and

- The appropriate class-wide measure of damages.

Having these issues considered by a single court will prevent inconsistent results and "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Because of the common issues present in most data breach class actions, the Panel routinely consolidates these kinds of cases. *See, e.g.*, *In re Samsung Customer Data Security Breach Litig.*, 2023 WL 1811247 (J.P.M.L. 2023); *In re Equifax Inc., Consumer Data Sec. Breach Litig.*, MDL No. 2800, Doc. No. 550 (J.P.M.L. Dec. 6, 2017) (centralization was appropriate due to shared factual issues around data breach).

B.  **The parties face duplicative discovery absent transfer and consolidation.**

The parties necessarily face duplicative discovery if the cases are not consolidated and transferred, because the allegations of all the cases are essentially the same. Transfer and consolidation would "ensure that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *Resource Exploration Inc. Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980). All plaintiffs will be seeking the same documentation from AT&T and will likely request to depose the same witnesses. In response, AT&T will raise the same class certification objections and discovery objections, seek the same protective orders, and assert the same privileges in each case. Consolidating and transferring the cases will coordinate efforts and save resources.

C.  **Transfer and consolidation will prevent inconsistent pretrial rulings.**

The Panel also considers the possibility of inconsistent rulings on pretrial issues. *See In re Enron Securities Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification). Here, the risk of inconsistent pretrial rulings is significant because of the similar allegations in the complaints. AT&T is likely to present the same pretrial motions, assert the same discovery objections and privileges, and raise the same defenses in each action. Inconsistent rulings on dispositive motions like a motion to dismiss would pose a serious problem because the purported class is currently, and likely will remain, generally the same in each action. It would therefore be in the best interests of all involved—the parties, the witnesses and the courts—to transfer and centralize these actions.

### D. There is sufficient numerosity to support transfer and centralization.

There are currently forty cases pending, and plaintiffs believe that more will follow. Even when far fewer cases are at issue, the Panel routinely orders transfer and consolidation. *See In re Wireless Telephone Replacement Protection Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (three cases); *In re Philadelphia Life Ins. Co. Sales Practices Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (two cases); *In re Amoxicillin Patent & Antitrust Litig.*, 449 F. Supp. 601, 603 (J.P.M.L. 1978) (three cases).

## II. THE CONSOLIDATED CASES SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF TEXAS

McGee and Eisen agree with the other plaintiffs advocating for transfer to the Northern District of Texas, and the relevant factors show that the Northern District of Texas is the most appropriate transferee district. *See* Manual for Complex Litigation § 20.131 (4th ed. 2009) ("The Panel uses no single factor to select the transferee district, but the Panel does consider where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges.").

***First***, AT&T is headquartered in Dallas and regularly conducts business in the Northern District of Texas. AT&T includes a forum-selection clause in its Consumer Services Agreement, requiring consumers to file in the Northern District of Texas. Many of the defendant's witnesses and relevant documents will likely be present in the District, making consolidation in the Northern District of Texas more convenient for all parties and witnesses. For that reason, the Panel regularly transfers cases to the district where the defendant is located. *See, e.g., In re Yahoo! Inc. Consumer Data Breach Sec. Litig.*, MDL No. 2752, Doc. No. 62 (J.P.M.L. Dec. 7, 2016) (Yahoo's home district was an appropriate forum because Yahoo's corporate headquarters were located in the

district and relevant documents and witnesses were likely to be located there); *In re: Libor-Based Financial Instruments Antitrust Litig.*, MDL No. 2262, Doc. No. 128 (J.P.M.L. Aug. 12, 2011) (transferring cases to forum where two out of the three defendants were headquartered).

**Second**, the Northern District of Texas has more AT&T-related cases pending than any other jurisdiction. This concentration of cases further supports transfer to Northern District of Texas. *See* Manual for Complex Litig. at § 20.131. Of the forty actions filed to date, 31 were filed in the Northern District of Texas, three were filed in the Northern District of Georgia, two were filed in the Northern District of Illinois, and one was filed in each of the Eastern District of California, Western District of Missouri, Western District of Oklahoma, and Eastern District of Texas.

**Third**, the Northern District of Texas has a favorable docket condition for this litigation. In the Northern District of Texas, the median case takes 26.9 months from filing to trial, faster than most other districts in the country.[2] In addition, the Northern District of Texas has the experience and resources to handle this complex litigation.

**Fourth**, the Northern District of Texas is a convenient forum and readily accessible to all parties. Dallas is a large centrally-located metropolis with easy access to an international airport that services direct flights to locations across the nation.

## CONCLUSION

For the reasons described above, Plaintiffs McGee and Eisen support consolidation of the matters before the Panel and transfer to the Northern District of Texas.

---

[2] *See* United States Courts website, Statistics & Reports, "Table T-3—U.S. District Courts–Trials Federal Judicial Caseload Statistics (March 31, 2023)," available at https://www.uscourts.gov/statistics/table/t-3/federal-judicial-caseload-statistics/2023/03/31 (last visited, April 22, 2024).

6

Dated: April 25, 2024

Respectfully submitted,

*/s/ Krysta Kauble Pachman*
KRYSTA KAUBLE PACHMAN
kpachman@susmangodfrey.com
MICHAEL GERVAIS
mgervais@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

SHAWN J. RABIN
srabin@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, New York 10001
Phone: (212) 336-8830
Fax: (212) 336-8340

*Attorneys for Plaintiffs McGee and Eisen*