BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE:<br><br>In re: AT&T Inc. Customer Data Security Breach Litigation | MDL Docket No. 3114 |

RESPONSE OF PLAINTIFFS DAPHNE CARRASCO AND MARY SANFORD
TO MOTION FOR TRANSFER AND COORDINATION OR
CONSOLIDATION UNDER 28 U.S.C. § 1407

Pursuant to Rule 6.1(c) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation (the "Panel") and the Panel's April 13, 2024 Order, Plaintiffs Daphne Carrasco and Mary Sanford (collectively, "Responding Plaintiffs"), submit this response to the motion for centralization and transfer filed on April 3, 2024.

## INTRODUCTION

Movant-Plaintiff in *Petroski v. AT&T Inc.*, No. 3:24-cv-00757 has filed a motion seeking a transfer for coordination or consolidation, pursuant to 28 U.S.C. § 1407 of numerous cases filed against AT&T in relation to the AT&T Data Breach. Plaintiff Daphne Carrasco in *Carrasco v. AT&T Inc.*, No. 4:24-c-v00305-SDJ, and Plaintiff Mary Sanford in *Sanford v. AT&T Inc.,* No. 2:24-cv-00261-JRG-RSP agree with Movant-Plaintiff Petroski that consolidation or coordination is warranted for the reasons set forth in Movant-Plaintiff Petroski's Motion and for the reasons set forth herein. Plaintiffs Carrasco and Sanford respectfully request the Panel issue an Order transferring the actions listed in the Schedule of Actions ("Exhibit A") and subsequently filed related actions to the United States District Court for the Eastern District of Texas for coordinated or consolidated pretrial proceedings.

These cases are natural candidates for centralization. Each of the over 30 class actions

recently brought against AT&T share a common set of factual allegations, namely failure to take reasonable, timely, and appropriate measures to protect against the foreseeable risk of unauthorized disclosure of personally identifiable information ("PII") belonging to 73 million present and former AT&T customers, subsequently leading to the exposure of this information on the dark web.[1]

AT&T is one of the largest telecommunications companies in the United States, providing nationwide wireless voice, messaging, and data services. AT&T created, collected, and maintained its customers' PII in providing its services. On or about March 30, 2024, AT&T publicly announced that the details of 73 million former and current AT&T customer accounts, including its customers' PII and AT&T account numbers and passcodes, were leaked online (the "Data Breach."). AT&T was obligated to secure the PII from unauthorized disclosures by contract, industry standards, common law, and its representations to its customers. The injuries sustained by Plaintiffs and class members all stem from AT&T's failure to fulfill its legal responsibilities. AT&T customers entrusted their PII to AT&T under the expectation that AT&T and any associated business partners to whom AT&T might disclose this PII would adhere to their obligations to maintain the confidentiality and security of such information, safeguarding it against unauthorized disclosures.

The Panel has consistently centralized similar large-scale data breach cases and should do the same here. In deciding where to centralize these cases, the Panel should be conscious of the extensive magnitude of this litigation and opt for a jurisdiction equipped with both the availability and capability to manage proceedings involving tens of millions of potential class members.

---

[1] *AT&T says personal data from 73 million current and former account holders leaked onto dark web*, CNN (March 30, 2024) https://www.cnn.com/2024/03/30/tech/att-data-leak/index.html (last visited March 31, 2024).

Consequently, the Panel should prioritize selecting a forum characterized by a light, manageable civil docket presided over by a transferee judge possessing the requisite expertise, proficiency, and capacity to oversee such complex matters effectively.

Responding Plaintiffs believe the Eastern District of Texas (where Responding Plaintiffs have filed cases) is a suitable forum for this litigation. The Eastern District of Texas will provide a forum that will minimize the cost and inconvenience to all parties by ensuring a judicious and efficient adjudication process, mitigating potential delays, and facilitating prompt resolution or trial.

## **ARGUMENT**

### I. THIS LITIGATION SHOULD BE CENTRALIZED

The Panel may centralize and transfer civil actions involving one or more common questions of fact if it determines that such a transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Section 1407 centralization "ensures that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Lehman Brothers*, 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009). "'The basic purpose of assigning (multiple litigations) to a single judge is to provide for uninterrupted judicial supervision and careful, consistent planning and conduct of pretrial and trial proceedings' that will eliminate or reduce conflict and duplication of effort." *In re Library Editions of Children's Books*, 297 F. Supp. 385, 386 (J.P.M.L. 1968) (quoting *Manual for Complex and Multidistrict Litigation* at 10 (1968)).

The Panel routinely centralizes data breach cases, recognizing that such cases are "expected to share common and complex factual questions" about the who, what, where, when, and why of how the breach occurred. *E.g., In re Fortra File Transfer Software Data Sec. Breach Litig.*, No.

3

MDL 3090, 2024 WL 436478, at *1 (J.P.M.L. Feb. 5, 2024); *In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*, No. MDL 3096, 2024 WL 436485, at *1 (J.P.M.L. Jan. 30, 2024); *In re MOVEit Customer Data Sec. Breach Litig.*, No. MDL 3083, 2023 WL 6456749, at *2 (J.P.M.L. Oct. 4, 2023); *In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, No. MDL 3073, 2023 WL 3829244, at *1 (J.P.M.L. June 2, 2023); *In re KeyBank Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1372, 1373 (J.P.M.L. 2023); *In re Samsung Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1368, 1369 (J.P.M.L. 2023). This case is no exception. Here, as in other data breach cases, "[c]entralization offers substantial opportunities to streamline pretrial proceedings; reduce duplicative discovery and conflicting pretrial obligations; prevent inconsistent rulings on common evidentiary challenges and summary judgment motions; and conserve the resources of the parties, their counsel, and the judiciary." *In re Fortra*, 2024 WL 436478, at *1.

All of the filed suits and resulting injuries derive from AT&T's failure to adequately safeguard their customers' PII despite having notice of insufficient data security since as early as 2021 when a known threat actor offered up the records for sale on a hacking forum.[2] Each of the complaints revolves around common factual inquiries, which include but are not limited to: (1) whether AT&T was negligent in maintaining, protecting, and securing PII; (2) whether AT&T was negligent in failing to monitor and audit the data security systems adequately; (3) whether AT&T failed to take reasonable and prudent security measures; (4) whether AT&T's security measures to protect its systems were reasonable in light of known legal requirements; (5) whether AT&T's data security systems before and during the Data Breach were consistent with industry standards;

---

[2] *Tech and Cybersecurity: A Closer Look at This Week's News. 24/03/2024* (March 24, 2024), https://www.jimgogarty.com/tech-and-cybersecurity-a-closer-look-at-this-weeks-news-24-03-2024/#:~:text=The%20details%20of%20the%20leaked,another%20threat%20actor%2C%20Major%20Nelson (last visited April 3, 2024).

4

(6) whether AT&T violated state consumer protection and state information privacy laws in connection with the Data Breach; (7) whether AT&T engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiff's and Class Members' and (8) whether AT&T violated federal statutes including, but not limited to, FTCA.

The convenience of the parties and prevention of duplicative discovery also favor transfer. *See* 28 U.S.C. § 1407. Presently, all of the cases in the Schedule of Actions are in their infancy, having been filed within the last few weeks. It is also likely that more cases will be filed in various federal courts. If these cases continue to proceed separately, there will be duplicative motion practice and duplicative discovery because of the many overlapping issues of fact and law. Multiple cases could involve the repetitive depositions of AT&T representatives as well as the production of the same records and responses to interrogatories and document requests in jurisdictions around the country. Consolidation or coordination is necessary to avoid duplicative discovery and preserve the resources of both parties. *See, e.g., In re: Pilot Flying J Fuel Rebate Contract Litig.,* 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014) ("Centralization will avoid repetitive depositions of Pilot's officers and employees and duplicative document discovery regarding the alleged scheme.")

## II. THE EASTERN DISTRICT OF TEXAS IS THE MOST APPROPRIATE FORUM FOR CENTRALIZATION

In determining an appropriate transferee forum, the Panel balances several factors, including the experience, skill, and caseloads of the available judges; the number of cases pending the jurisdiction; the median times from filing to disposition and from issue to trial for civil actions; the convenience of the parties; location of the witnesses and evidence; and the minimization of cost and inconvenience to the parties. *See, e.g., In re Regents of University of California,* 964 F.2d

1128, 1136 (Fed. Cir. 1992); *In re Preferential Drugs Prods. Pricing Antitrust Litig.*, 429 F.Supp.1027, 1029 (J.P.M.L. 1977).

Responding Plaintiffs believe that the Eastern District of Texas is a convenient and efficient forum for this litigation, given its well-managed docket and available resources. The Panel has long recognized that cost and inconvenience weigh in favor of choosing a forum where there is a "lighter civil action docket" than other districts and "therefore, is in the best position to expeditiously process [the] particular litigation." *In re E. Airlines, Inc. Flight Attendant Weight Program Litig.*, 391 F. Supp. 763, 764 (J.P.M.L. 1975). The Eastern District of Texas is the most suitable venue for this litigation owing to its demonstrable capacity for expeditiously processing cases, as it has the fewest pending civil actions among the four districts in AT&T's domicile state[3] along with only one pending MDL.[4] Furthermore, cost and inconvenience can be minimized in the Eastern District of Texas's efficient judicial system, evidenced by its low median times from filing to disposition and from issue to trial for civil actions, which are favorable compared to other districts.[5] This efficiency not only expedites the resolution of cases but also minimizes the burden on the parties involved, reducing litigation costs and ensuring timely access to justice.

The Panel has underscored the pivotal role of an experienced and capable judge in selecting a transferee forum. *In re Ampicillin Antitrust Litig.*, 315 F. Supp. 317, 319 (J.P.M.L. 1970) ("the availability of an experienced and capable judge … is one of the more important factors in selecting

---

[3] *See* U.S. District Courts—Civil Cases Filed, Terminated, and Pending, by Jurisdiction—During the 12-Month Period Ending December 31, 2023 available at https://www.uscourts.gov/statistics/table/c-1/statistical-tables-federal-judiciary/2023/12/31

[4] See Judicial Panel on Multidistrict Litigation, MDL Case Info, MDLs Pending by District, available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-1-2024.pdf.

[5] See U.S. District Courts—Median Time From Filing to Disposition of Civil Cases, by Action Taken—During the 12-Month Period Ending December 31, 2023 available at https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2023/12/31.

a transferee forum."). Plaintiff Sanford's case is currently pending in the Eastern District of Texas before Chief Judge Rodney Gilstrap. Chief Judge Gilstrap is a highly respected and experienced jurist who joined the federal bench in 2011 and has served as the Chief Judge of the Eastern District since 2018. Since his appointment in 2011, Chief Judge Gilstrap has overseen more than 11,000 dockets accessible on Westlaw. Furthermore, he has served by designation in the Ninth Circuit on 13 occasions and in the Federal Circuit on ten occasions. Prior to joining the bench, Chief Judge Gilstrap was engaged in the private practice for 30 years. He was elected three times as County Judge of Harrison County, Texas, during this time.[6] In 2018, he was selected as the "Jurist of the Year" by TEX-ABOTA (comprising all 16 chapters in Texas of the American Board of Trial Advocates).[7] Indeed, the Panel has previously lauded Chief Judge Gilstrap for his adeptness in steering litigation "on a prudent and expeditious course." *In re Taasera Licensing, LLC, Pat. Litig.*, 619 F. Supp. 3d 1352, 1353 (J.P.M.L. 2022). Chief Judge Gilstrap's median time to rule on motions to dismiss is 39 days, and just over three months for summary judgment rulings.[8] With extensive experience in adjudicating complex matters, including a substantial portfolio of patent cases, Chief Judge Gilstrap's expertise is evident. Furthermore, his expertise in administering class action litigation, as demonstrated in cases such as *Kelly v. Healthcare Servs. Grp., Inc.,* No. 2:13–cv–00441–JRG and *Wingo v. Martin Transp., Inc.,* No. 2:18-CV-00141-JRG underscores his suitability for presiding over the present action. There is no doubt that Chief Judge Gilstrap is a

---

[6] *See* Eastern District of Texas Bench Bar, Chief Judge Rodney Gilstrap, available at https://edtxbenchbar.com/panelist/rodney-gilstrap/
[7] *Id.*
[8] See, Westlaw, Litigation Analytics — Hon. Rodney Gilstrap, available at https://1.next.westlaw.com/Analytics

fair and capable jurist, and Responding Plaintiffs are confident he is well-suited to handle the litigation.

III. **IN THE ALTERNATIVE, THE MIDDLE DISTRICT OF TENNESSEE IS AN APPROPRIATE FORUM FOR CENTRALIZATION**

Alternatively, the Northern District of Texas could be considered as a venue for consolidating these cases. The Panel has often recognized that the location where a Defendant is headquartered is likely to be a convenient forum because witnesses and other evidence will likely be found there. *In re Samsung Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1368, 1369 (J.P.M.L. 2023). As the Movant-Plaintiff points out, the Northern District of Texas has a majority of the related actions pending. Because the Movant has ably laid out sound arguments for the Northern District of Texas, Responding Plaintiffs will not belabor them here.

## CONCLUSION

For the foregoing reasons, the Panel should (1) grant the motion for transfer and (2) centralize the Related Actions for coordinated pretrial proceedings in either the Eastern District of Texas or, in the alternative, the Northern District of Texas.

Dated: April 25, 2024

                    Respectfully submitted,
                    **SEEGER WEISS LLP**

By: _____
    Christopher L. Ayers*
Jennifer R. Scullion*
Justin M. Smigelsky*
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
Telephone: (973) 639-9100
Facsimile: (973) 639-9393
cayers@seegerweiss.com
jscullion@seegerweiss.com
jsmigelsky@seegerweiss.com

James E. Cecchi*
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com

and

Thomas W. Pirtle
Texas Bar No. 16038610
Buffy K. Martines
Texas Bar No. 24030311
5020 Montrose Boulevard 9th Floor
Houston, Texas 77006
Telephone:    713-292-2750
Facsimile:    713-292-2755
tomp@lpm-triallaw.com
buffym@lpm-triallaw.com
*Counsel for the Responding Plaintiffs*

## CERTIFICATE OF SERVICE

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that copies of the foregoing Response of Plaintiffs Daphne Carrasco and Mary Sanford to Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407 was served on April 25, 2024, served upon all counsel of record by CM/ECF.

Dated: April 25, 2024

Christopher L. Ayers
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
Telephone: (973) 639-9100
Facsimile: (973) 639-9393
cayers@seegerweiss.com
*Plaintiffs Daphne Kansas Carrasco and Mary Sanford*