**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: AT&T, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 3114 |

**Defendant AT&T Inc.'s Response in Support of
Transfer to and Centralization of Related Actions in the
Northern District of Texas (Dallas) for Consolidated Pretrial Proceedings**

## Introduction

AT&T recently determined that AT&T-specific data fields were contained in a data set released online. After AT&T announced this determination, plaintiffs across the country began filing class action lawsuits. The majority of the 46 actions filed to date were brought in the Northern District of Texas. But actions have also been filed in California, Georgia, Illinois, Missouri, and Oklahoma. Plaintiff Alex Petroski asks this Panel to transfer and consolidate all related actions to the Northern District of Texas (Dallas) because the actions share common questions of fact and transfer will promote "the just and efficient conduct of cases."[1] 28 U.S.C. § 1407(a). AT&T agrees.

## Background

On March 30, 2024, AT&T announced that AT&T-specific data fields were contained in a data set released online approximately two weeks before. AT&T shared its determination with regulators and the public, took precautionary measures, and began notifying customers.

As of April 24, 2024, at least 46 related putative class actions have been filed against AT&T in 8 federal district courts in 5 states in connection with the incident. The putative class plaintiffs in each action purport to represent all individuals

---

[1] This standard is different than the analysis required under Federal Rule of Civil Procedure 23. *See In re Trade Partners, Inc., Inv'rs Litig.*, 493 F. Supp. 2d 1381, 1382 (J.P.M.L. 2007). AT&T reserves all of its defenses to class certification, including the absence of common questions susceptible to common answers, *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), and the fact that common questions do not predominate over individualized ones, *see Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1436–37 (2013).

whose information was impacted by the incident and allege AT&T failed to safeguard personal information in violation of common law, contracts, and consumer protection statutes.

On April 2, 2024, plaintiff Alex Petroski moved the Panel to transfer to, and consolidate all related actions and tag-along actions in, the United States District Court for the Northern District of Texas (Dallas) under 28 U.S.C. § 1407. AT&T agrees with Petroski that all related actions arise out of and share factual questions concerning the same incident, and all plaintiffs bring the same or similar claims on behalf of overlapping nationwide or statewide putative classes. All related actions were filed within the last month, and AT&T has not yet responded. In fact, AT&T is in the process of seeking to suspend or stay proceedings in related actions pending this Panel's determination on consolidation.

On April 22, 2024, the cases filed in the Northern District of Texas were consolidated before the first-filed judge, the Honorable Ada Brown, who immediately stayed the consolidated action to allow time for this Panel's consideration of the consolidation request and the appropriate transferee court.

Consolidation of the related actions and anticipated tag-along actions is necessary to prevent inconsistent pretrial rulings and will promote the just and efficient control of these numerous actions. The Northern District of Texas (Dallas) is the appropriate transferee court because AT&T is headquartered there, relevant witnesses and documents likely will be found there, it is central and convenient, the court has the capacity to manage the litigation, and 32 of the 46 pending actions have already been filed there.

**ARGUMENT**

The Panel is empowered to transfer actions involving common factual questions to any district for coordinated or consolidated pretrial proceedings "for the convenience of the parties and witnesses" and to "promote the just and efficient control of such actions." 28 U.S.C. § 1407. The Panel generally orders transfer and consolidation to avoid conflicting rulings, reduce litigation costs, and conserve the time and effort of the parties, attorneys, witnesses, and courts. *See, e.g.*, *In re KeyBank Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1372, 1373 (J.P.M.L. 2023); *see also* Manual for Complex Litigation, Fourth § 20.131. These factors strongly support transfer and consolidation of related and tag-along actions and favor the Northern District of Texas (Dallas) as the appropriate transferee court.

**A.    Transfer of the related actions for consolidated proceedings will promote just and efficient control of the actions.**

The Panel routinely concludes that actions arising out of the same cybersecurity incident present common fact questions. *See, e.g.*, *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019); *KeyBank*, 2023 WL 1811824, at *1; *In re Samsung Customer Data Sec. Breach Litig.*, 2023 WL 1811247, at *1 (J.P.M.L. Feb. 1, 2023). Here, transfer and consolidation of related cases will "ensure that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will . . . substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *In re Res. Expl., Inc., Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L.

3

1980). Transfer and consolidation is particularly appropriate where, as here, the common disputes present fact issues that "may be quite technical and contentious" and transfer will "conserve the resources of the parties, their counsel, and the judiciary." *In re Supervalu, Inc., Customer Data Sec. Breach Litig.*, 67 F. Supp. 3d 1377, 1378 (J.P.M.L. 2014).

Transfer and consolidation under Section 1407 does not require "a complete identity of common factual issues or parties as a prerequisite"—instead, transfer and consolidation is appropriate where actions "arise from a common factual core" despite "the presence of additional facts or differing legal theories." *Am. Med.*, 410 F. Supp. 3d at 1353–54; *In re Home Depot, Inc. Customer Data Sec. Breach Litig.*, 65 F. Supp. 3d 1398, 1399 (J.P.M.L. 2014). The related complaints here present common factual questions concerning the same data security incident and AT&T's safeguarding of information. The complaints also seek certification of sweeping and overlapping putative classes of customers whose information was allegedly impacted by the security incident.

Transfer and consolidation also will avoid the risk of inconsistent pretrial rulings especially where, as here, none of the related actions has "progressed beyond the filing of the complaints." *In re: Elec. Books Antitrust Litig.*, 846 F. Supp. 2d 1378, 1379 (J.P.M.L. 2011). Inconsistent rulings on dispositive motions, *Daubert* motions, class certification, or other important issues would seriously threaten just and efficient control of the actions.

The Panel repeatedly has found that the risk of "inconsistent pretrial rulings on class certification and other issues" supports consolidation in

cybersecurity litigation. *See, e.g., Cmty. Health Sys., Inc. Customer Sec. Data Breach Litig.*, 84 F. Supp. 3d 1362 (J.P.M.L. 2015); *see also Supervalu*, 67 F. Supp. 3d at 1378; *Home Depot,* 65 F. Supp. 3d at 1399. Indeed, the "potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions to a single district for coordinated or consolidated pretrial proceedings which will include an early resolution of such potential conflicts." *In re: Plumbing Fixtures*, 308 F. Supp. 242, 244 (J.P.M.L. 1970).

Separately litigating each of the dozens of related actions, plus additional tag-along actions, offers no benefit, and will inevitably heighten the duplication, complexity, and burdens of these matters for all stakeholders. The Panel should order transfer and consolidation of related cases and tag-alongs here as it has in other matters involving multiple lawsuits arising from a single cybersecurity event.

    **B.**    **The Northern District of Texas (Dallas) is the appropriate transferee forum.**

The Northern District of Texas (Dallas) is the appropriate transferee forum based on factors traditionally considered by the Panel, including (a) connection to the litigation; (b) convenience of the parties; (c) location of the witnesses and evidence; (d) the number of cases pending in the jurisdiction, and (e) the experience, skill, and caseloads of the available judges. *See, e.g., Samsung*, 655 F. Supp. at 1369; *In re Baycol Prods. Liab. Litig.*, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001).

5

**First**, AT&T's headquarter offices are in the District. In other cybersecurity matters, the Panel consistently determined that the district where the defendant's headquarters are located had the strongest connection to the litigation and was the appropriate transferee forum. *See, e.g.*, *In re MOVEit Customer Data Sec. Breach Litig.*, 2023 WL 6456749, at *3 (J.P.M.L. Oct. 4, 2023); *In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374–75 (J.P.M.L. 2019); *Home Depot*, 65 F. Supp. 3d at 1400. This makes sense where, as here, many of the "relevant documents and witnesses are likely to be located" at a party's headquarters. *Supervalu*, 67 F. Supp. 3d at 1378. By contrast, plaintiffs and putative class members in these cases are spread throughout the country. Thus, there is no overarching connection between plaintiffs, or the classes they claim to represent, and any particular district. No other district is as strongly connected to the parties and the related actions as the Northern District of Texas (Dallas). And based on the 32 matters filed there, laintiffs appear to agree.

**Second**, Dallas is centrally located and convenient for the parties. AT&T is headquartered in Dallas. This district also has sufficient resources to host parties, attorneys, and witnesses who reside outside the Dallas metropolitan area, and can access the Dallas courthouse through two centrally located airports (Dallas Fort Worth International Airport and Dallas Love Field), as well as several bus stations and rail lines that service the area. The Panel frequently considers whether a transferee district is "easily accessible and relatively centrally located" when deciding where to consolidate litigation—the Northern District of Texas (Dallas) fits the bill. *In re Target Corp. Customer Data Sec. Breach Litig.*, 11 F. Supp. 3d 1338,

6

1339 (J.P.M.L. 2014); *see also In re Method of Processing Ethanol Byproducts and Related Subsystems*, 730 F. Supp. 2d 1379, 1380 (J.P.M.L. 2010).

**Third**, the Northern District of Texas (Dallas) has the capacity to administer this case. According to the December 2023 publication of the Federal Court Management Statistics, federal judges have on average 1,119 pending actions whereas the judges in the Northern District of Texas have 473 on average.[2]

Each of the factors typically considered by the Panel strongly support the Northern District of Texas (Dallas), and considering all of them together confirms that this District is the most appropriate transferee forum.

### C. Consolidation under Section 1404 is not a practical substitute for MDL consolidation here.

Transfer and consolidation under Section 1407 represents the only practical method of managing the litigation and avoiding inconsistent results. AT&T recognizes that "where a reasonable prospect exists that the resolution of a Section 1404 [change-of-venue] motion or motions could eliminate the multidistrict character of a litigation, transfer under Section 1404 is preferable to centralization." *In re: 3M Co. Lava Ultimate Prods. Liab. Litig.*, 222 F. Supp. 3d 1347, 1347–48 (J.P.M.L. 2016). But this is generally the case where there are only "a minimal number of actions." *Id.*; *see also In re: Transocean Ltd. Sec. Litig. (No. II)*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L .2010).

---

[2] U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics (Dec. 31, 2023), *available at* https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf.

Here, since the incident was announced, 46 related cases have been filed in 8 different districts with plaintiffs represented by over 40 law firms. The Panel has not required parties to resort to Section 1404 where the number of cases, law firms, plaintiffs, and districts involved are as great as they are here. For example, in *In re Roundup Products Liability Litigation*, the Panel concluded that "informal coordination among the involved courts and counsel [wa]s not practicable" because the matter involved 37 actions, pending in 21 districts, with over 10 law firms representing plaintiffs. 214 F. Supp. 3d 1346, 1348 (J.P.M.L. 2016). The Panel reasoned, as it should here, that "[e]ven if no additional actions [we]re filed, the present number of cases, districts, and involved counsel, as well as the complexity of the issues presented, warrant[ed] centralization." *Id.*; *see also In re Fortra File Transfer Software Data Sec. Breach Litig.*, 2024 WL 436478, at *2 (J.P.M.L. Feb. 5, 2024) (although parties had organized cases in a few districts, "we view centralization as creating more efficiencies and requiring the management efforts of many fewer judges to establish a pretrial structure, facilitate coordination across districts, and make procedural and substantive rulings"); *In re 23andMe, Inc., Customer Data Sec. Breach Litig.*, 2024 WL 1596923, at *2 (J.P.M.L. Apr. 11, 2024) (finding centralization appropriate even where related case procedures led to assignment of all matters to just three judges in three districts because "[a]ll actions are putative nationwide or statewide class actions involving overlapping classes, and over four dozen plaintiffs' firms are involved"); *In re Prepared Food Photos, Inc., Copyright Litig.*, 678 F. Supp. 3d 1391 (J.P.M.L. 2023) (informal coordination unworkable where matters against the defendant " will remain pending in four

8

districts before six judges" and "estimates of future case filings have ranged from 21 to 75 cases").

Transfer and consolidation under Section 1407 represents the only practical method of managing the litigation and avoiding inconsistent results.

## CONCLUSION

The related actions filed to date against AT&T share common questions of fact and consolidation and transfer of those actions will promote "the just and efficient conduct of cases." The Panel should, therefore, transfer and consolidate related actions and future tag-a-long actions under 28 U.S.C. § 1407.

Because Dallas has the strongest connection to the related actions, is centrally located, and has the capacity to administer the cases, the Northern District of Texas (Dallas) is the appropriate transferee court.

Dated: April 25, 2024

Respectfully submitted,

*/s/ Gilbert S. Keteltas*
Gilbert S. Keteltas
BAKER HOSTETLER LLP
1050 Connecticut Avenue, NW, Ste. 1100
Washington, D.C. 20036
Tel.: (202) 861.1530
Fax: (202) 861.1783
Email: gketeltas@bakerlaw.com

*Attorney for Defendant AT&T Inc.*