BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: AT&T INC. CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 3114 |

**INTERESTED PARTY RESPONSE OF PLAINTIFFS RYAN UNRUH AND CHRISTOPHER ISBELL IN SUPPORT OF MOTION FOR TRANSFER AND CENTRALIZATION BUT IN OPPOSITION TO THE NORTHERN DISTRICT OF TEXAS, AND IN FAVOR OF THE NORTHERN DISTRICT OF GEORGIA**

Pursuant to Rule 6.2(e) of the Rules of Procedure for the United States Judicial Panel of Multidistrict Litigation, Interested Parties Ryan Unruh and Christopher Isbell ("Interested Parties") submit this response to Plaintiff Alex Petroski's Motion for Transfer and Centralization of Related Actions to the Northern District of Texas ("Motion") (Dkt. No. 1). While the Interested Parties support centralization, the Northern District of Georgia is the most appropriate forum for the litigation.

To date, several actions have been filed in eight different federal courts against AT&T Mobility LLC and/or AT&T, Inc. following the massive data breach that compromised the personal information of more than 73 million individuals who contracted AT&T Mobility or AT&T for its services ("Related Actions"). The compromised data fields included a combination of customers' full name, email address, mailing address, phone number, social security number, date of birth, and AT&T account number and passcode. Movant Petroski properly characterizes the core claims in the Related Actions—that the Defendants "failed to prevent a cyberattack that resulted in the theft and dissemination of at least 73 million individuals' sensitive and personal information." Mot. at 2. Although AT&T has acknowledged that its information has surfaced on underground websites, the precise source of the data breach is still a mystery. According to AT&T,

"it is not yet known whether the data in those fields originated from AT&T or one of its vendors."[1] Likewise, AT&T has not disclosed the types of customers impacted by the data breach or their specific relationship with AT&T.

Given the lack of specific information from AT&T regarding this data breach, Movant's arguments supporting centralization in the Northern District of Texas are necessarily lacking. Rather than offering specifics as to why Dallas is likely to be the center of a substantial portion of events giving rise to Plaintiffs' claims, Movant points to only the generic fact that AT&T "has its principal place of business and headquarters in Texas" as support for the claim that "key witnesses and documents are likely to be found there." Mot. at 2. But the facts known at this stage of the litigation instead support the Northern District of Georgia as the location of the key witnesses and documents for this case. Thus, centralization is appropriate in the Northern District of Georgia over the Northern District of Texas for three main reasons.

*First*, AT&T wireless customers comprise most of AT&T's account holders and are therefore likely to comprise most of the 73 million victims of the data breach. AT&T's wireless service is provided by Defendant AT&T Mobility,[2] which maintains its corporate headquarters in the Northern District of Georgia.[3]

---

[1] *AT&T Addresses Recent Data Set Released on the Dark Web*, AT&T (Mar. 30, 2024), https://about.att.com/story/2024/addressing-data-set-released-on-dark-web.html.

[2] *AT&T Consumer Service Agreement*, AT&T, https://www.att.com/legal/terms.consumerServiceAgreement.html (last visited Apr. 25, 2024); AT&T Mobility "provides nationwide wireless services to consumers and wholesale and resale wireless subscribers . . . As of December 31, 2024, [AT&T] served 242 million Mobility subscribers[.]" *AT&T 2023 Annual Report*, AT&T, https://investors.att.com/~/media/Files/A/ATT-IR-V2/financial-reports/annual-reports/2023/2023-complete-annual-report.pdf (last visited Apr. 25, 2024).

[3] *AT&T Mobility LLC Business Search*, GA. SEC. OF STATE, https://ecorp.sos.ga.gov/BusinessSearch/BusinessInformation?businessId=50003&businessType=Foreign%20Limited%20Liability%20Company&fromSearch=True (last visited Apr. 25, 2024).

*Second*, records show that most of the likely key witnesses are in the Northern District of Georgia, not in Texas. For example, both AT&T's Chief Technology Officer ("CTO") and Chief Data Officer ("CDO") are in AT&T's offices in Georgia as are several additional senior cybersecurity personnel.

*Third*, the Northern District of Georgia has a wealth of experience efficiently and successfully overseeing MDLs, including large data breach MDLs, and the docket conditions are less congested than the Northern District of Texas.

Given these objective metrics, the Panel should centralize the Related Actions in the Northern District of Georgia.

## **BACKGROUND**

For nearly three years, information about data breaches affecting AT&T wireless customers has been disclosed by the company in drips and drabs. Nearly three years ago, AT&T learned that a well-known threat actor claimed to be selling a database containing the personal information of over 70 million AT&T customers. *Unruh et al. v. AT&T Mobility LLC et al.*, No. 1:24-cv-01414, Compl. at ¶ 1 (N.D. Ga. 2024) ("*Unruh* Compl."). In early 2023, AT&T informed millions of its wireless customers that a hacking incident against a marketing vendor disclosed Customer Proprietary Network Information for wireless accounts.[4] In February of this year, outages of its cell phone service were reported for tens of thousands of customers.[5] And, the

---

[4] Sead Fadilpasic, *AT&T alerts millions of customers following major data breach*, TechRadarPro (Mar. 10, 2023), https://www.techradar.com/news/atandt-alerts-millions-of-customers-that-it-suffered-a-data-breach; David Lumb, *AT&T Vendor Data Breach Exposed 9 Million Customer Accounts*, CNET (Mar. 9, 2023), https://www.cnet.com/tech/mobile/at-t-vendor-data-breach-exposed-9-million-customer-accounts/.

[5] *AT&T's network is having problems: What you should know while navigating a phone service outage*, Associated Press (Feb. 22, 2024), https://apnews.com/article/att-outage-cell-service-phone-1cd6f595356b385cc9a4495d1f06b983.

3

following month, AT&T admitted that about 73 million former and current AT&T customers' personal and sensitive information was released onto the Dark Web. *Unruh* Compl. ¶¶ 1-2. This most recent breach involved a combination of customers' "full name, email address, mailing address, phone number, social security number, date of birth, and AT&T account number and passcode" (collectively, "PII"). *Id*. Plaintiffs in the Related Actions allege that millions of AT&T customers now face a significant risk of identity theft and fraud, financial fraud, and other identity-related fraud now and into the indefinite future because Defendants failed to protect the PII it was entrusted to safeguard. *Id*. at ¶¶ 5, 136.

## ARGUMENT

Section 1407(a) serves the objective of every federal district court: "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. When multiple cases are pending in different judicial districts, the Panel may employ Section 1407 to centralize and transfer actions where: (1) the cases involve "one or more common questions of fact;" (2) such consolidation or coordination and transfer "will be for the convenience of parties and witnesses;" and (3) such consolidation or coordination and transfer "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Centralization is appropriate here given the Related Actions, which have nearly identical allegations and overlapping class definitions, will require the same discovery, witnesses, and resolution of the same legal and factual issues. Indeed,

this Panel has consistently centralized data breach cases under these circumstances.[6] Thus, Plaintiffs expect the Panel's analysis will focus on the transferee forum.

The Panel balances many factors in determining the most appropriate transferee forum, including: (1) where the "center of gravity" for a litigation resides and (2) if the district has the necessary judicial resources and expertise to manage the litigation efficiently and in a manner convenient for the parties and witnesses. *See, e.g., In re MOVEit Customer Data Sec. Breach Litig.*, No. MDL 3083, 2023 WL 6456749, at *3 (J.P.M.L. Oct. 4, 2023) (ordering transfer to the district where the owner of the vulnerable software was located, and where relevant witnesses and documents were likely to be found); *In re Nine W. LBO Sec. Litig.*, 464 F. Supp. 3d 1383, 1385 (J.P.M.L. Jun. 2, 2020) (finding transfer to a district that was "litigation's center of gravity" appropriate even though no actions were pending there); *In re Wells Fargo Auto Ins. Mktg. & Sales Pracs. Litig.*, 273 F. Supp. 3d 1383, 1384 (J.P.M.L. Oct. 5, 2017) ("[I]t is alleged that key entities and individuals with direct responsibility for the alleged conduct in this litigation are located in this district and, therefore, relevant documents and witnesses may be located there.").

As discussed below, the Northern District of Georgia is the most appropriate transferee forum because it (1) is the home to AT&T Mobility, which provides services to most of the data breach victims; (2) is likely the "center of gravity" for most of the evidence and witnesses relevant

---

[6] *See, e.g., In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, 2023 WL 3829244 (consolidating actions with "common questions of fact" regarding alleged inadequate data security practices resulting in a data breach of 37 million individuals); *In re Samsung Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1368 (J.P.M.L. 2023) (consolidating common questions of fact about "an alleged data security breach of Samsung's U.S. systems in or around July 2022 that allegedly compromised the personal information of millions of consumers using Samsung products and services."); *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1363–64 (J.P.M.L. 2020) (consolidating common questions of fact "concerning an alleged ransomware attack and data security breach of Blackbaud's systems from about February 2020 through May 2020 that allegedly compromised the personal information of millions of consumers doing business with entities served by Blackbaud's cloud software and services.").

5

to the Related Actions and (3) comprises an experienced and efficient panel of judges with deep experience in large consolidated data breach actions, which is readily accessible to all parties and witnesses.

### A. AT&T Mobility is Based in the Northern District of Georgia, and Likely Provided Services to Most of the Class.

Just last year, AT&T consolidated into two main office markets: Atlanta and Dallas.[7] In Atlanta, AT&T leases 2.7 million square feet of commercial real estate[8] and it is the home of Defendant AT&T Mobility, which has been headquartered there for nearly 20 years.[9] AT&T Mobility provides services to AT&T wireless customers, which comprise most of AT&T's customer base.[10] Because the information compromised in the data breach is the same information that AT&T requires wireless customers to provide before opening an account, and because AT&T acknowledges most of its customers come from its wireless unit, it is likely the data breach victims

---

[7] Eric Schilling & Savannah Sicurella, *How AT&T's office consolidation will affect Atlanta*, ATLANTA BUSINESS CHRONICLE (May 31, 2023), https://www.bizjournals.com/atlanta/news/2023/05/31/att-atlanta-office-consolidation.html.

[8] *Id.*

[9] In 2007, AT&T Mobility's principal office was "5565 Glenridge Connector NE. Atlanta, GA 30342." By at least 2010, AT&T Mobility's principal office was "1025 Lenox Park Blvd. Atlanta GA 30319" and has continued as such to today. *AT&T Mobility LLC Form 15*, SEC (Jan. 19, 2007), https://www.sec.gov/Archives/edgar/data/1130452/000095014407000373/g03421ae15v12b.htm; *AT&T Mobility Form W-9*, AT&T (Apr. 1, 2010), https://www.att.com/Common/files/pdf/w-9/mobility_apr_2010.pdf; *AT&T Mobility LLC Business Search*, GA. SEC. OF STATE, https://ecorp.sos.ga.gov/BusinessSearch/BusinessInformation?businessId=50003&businessType=Foreign%20Limited%20Liability%20Company&fromSearch=True (last visited Apr. 25, 2024).

[10] AT&T's 2023 Annual Report explains that AT&T has "two reportable [operating] segments: Communications and Latin America." The Communications segment comprises Mobility (providing wireless services to consumers); Business Wireline (providing IP-based services and equipment to businesses); and Consumer Wireline (providing broadband and VoIP services to consumers). The Report reveals that while AT&T had over 241 million Mobility subscribers, it only had 15.2 million domestic broadband connections, 4.1 million network access lines, and 2.5 million VoIP connections). *AT&T 2023 Annual Report*, AT&T, https://investors.att.com/~/media/Files/A/ATT-IR-V2/financial-reports/annual-reports/2023/2023-complete-annual-report.pdf (last visited Apr. 25, 2024).

consist largely of AT&T Mobility customers. Unruh Compl. ¶ 14. Thus, simply based on the corporate location of a primary Defendant, AT&T's offices in Atlanta are more likely to be a source of relevant information here than its offices in Dallas. *See In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*, No. MDL 3096, 2024 WL 436485, at *2 (U.S. Jud. Pan. Mult. Lit. Jan. 30, 2024) (consolidating data breach lawsuits to forum in which the defendant who had the most clients impacted by the data breach resided instead of the forum where the common defendant resided).

B. **The Northern District of Georgia Possesses Evidence and Witnesses Relevant to the Related Actions.**

More importantly, most of the witnesses likely to have relevant information in this case are based in Atlanta, not Dallas. First, AT&T's Chief Technology Officer, Jeremey Legg, is in Atlanta. Legg oversees the security of AT&T's IT & Cloud network. Legg's LinkedIn profile reveals that he started as an Executive Vice President of AT&T and CTO Technology Services in June 2020 and was elevated to serve as Chief Technology Officer in May 2022.[11]



AT&T's Leadership page explains that Legg, "oversees the technology organizations for Business, Consumer, Data & Analytics, IT & Cloud, Network Architecture & AT&T Labs,

---

[11] Jeremy Legg: Chief Technology Officer, Atlanta, Georgia, https://www.linkedin.com/in/jeremylegg/ (last visited Apr. 25, 2024).

Security and New Product Development."[12] AT&T elaborates on Legg's AT&T Technology Services team and data security:

> Jeremy's AT&T Technology Services (ATS) organization is helping AT&T modernize its legacy IT infrastructure and migrate as much of it as possible to the cloud while retiring outdated systems. In addition, Jeremy's team also includes network, business and consumer technology platforms as well as experts developing new products and services built on AT&T's leading-edge 5G and fiber connectivity.
>
> ATS also includes AT&T's chief data office and chief security office, as artificial intelligence and machine learning make customers and employees more efficient and innovative, while security is vital in a connected world of constantly evolving threats.[13]

Legg is likely a key witness in the case and will provide relevant insight about AT&T's "network security" and its importance, and AT&T's "challenges of addressing network protection."[14]

---

[12] *Corporate Governance – Leadership*, AT&T, https://investors.att.com/corporate-governance/leadership (last visited Apr. 23, 2024).

[13] *Id.*

[14] Jeremy Legg, *What is network security? A new model for protecting business*, AT&T, https://www.business.att.com/learn/articles/network-security-a-new-model-for-protecting-business.html (last visited Apr. 24, 2024). AT&T's securities filings confirm that Legg, as CTO, occupies a key role over "the Company's privacy and data security, including cybersecurity, risk exposures, policies and practices, and the steps management has taken to detect, monitor and control such risks and the potential impact of those exposures on [AT&T's] business, financial results, operations and reputation." *AT&T 2023 Annual Report*, AT&T, https://investors.att.com/~/media/Files/A/ATT-IR-V2/financial-reports/annual-reports/2023/2023-complete-annual-report.pdf (last visited Apr. 25, 2024). The only other non-legal position identified as involved in this role is AT&T's Chief Information Security Officer ("CISO"). *Id.* The current CISO is Rich Baich, who is based in Charlotte, NC and has held the position only since August 2023. *See* Rich Baich: Chief Information Security Officer, Charlotte, North Carolina, https://www.linkedin.com/in/richbaich/ (last visited Apr. 25, 2024). The former CISO, Bill O'Hern served in the role for over 20 years and was based in Middletown, New Jersey. *See* Bill O'Hern: SVP and Chief Security Officer, Middletown, New Jersey, https://www.linkedin.com/in/bill-ohern/ (last visited Apr. 25, 2024). The Northern District of Georgia is geographically closer and a more convenient forum for both witnesses.

Second, AT&T's Chief Data Officer Andy Markus is also part of AT&T's Atlanta office. According to Markus's LinkedIn profile, he has served this role since July 2020.[15] As the CDO, Markus uses consumer data to provide "creative and privacy-compliant solutions to real-world data issues."[16] Because "AT&T carries more than 534.7 petabyes of data across its global network every day[,]" Markus and his team "defined a common approach to how data is stored, managed, accessed, and shared across AT&T."[17] Markus will provide relevant information about AT&T's approach to safeguarding the consumer data that it stores, manages, accesses, and shares.



Third, at least a dozen additional senior AT&T cybersecurity employees are based in Atlanta including:

- Steve Paek, Expert Cybersecurity (Director Level): Vendor Security Assessment;
- Julie Kim, Lead Cybersecurity;
- Jason Lawrence, Associate Director – Cybersecurity;
- Joanne Gilber, Principal – Cybersecurity;

---

[15] Andy Markus: Chief Data Officer, Atlanta, Georgia, https://www.linkedin.com/in/andy-markus-422b137/ (last visited Apr. 25, 2024).

[16] *Andy Markus*, MOBILE FUTURE FORWARD (Jul. 27, 2023), https://www.mobilefutureforward.com/speaker/andy-markus/.

[17] Andy Markus, *Harnessing Data and AI for Business Value*, AT&T (Aug. 9, 2022), https://about.att.com/innovationblog/2022/data-ai-part-1.html.

9

- Tiwa Shittu, Network Security Engineer;

- Tingli Crowe, Senior Cybersecurity;

- Jordan Foster, Senior Cybersecurity – Security Platforms;

- Angel Rodriguez, Principal – Cybersecurity Security Manager;

- Anthony Smith, Principal Security Architect;

- Alfred Sackey-Mensah, Senior Cybersecurity Consultant;

- Shannon Tolar, Senior Cybersecurity – Chief Security Office; and

- Candy Pate, Specialist-Network Control, AT&T Network Operations.[18]

These are the boots-on-the-ground employees who will have relevant information about the functionality and security of AT&T's networks along with the data security of AT&T's vendors, which AT&T acknowledges is a potential source of the data breach. Thus, even if some

---

[18] *See* Steve Paek: Expert Cybersecurity (Director Level): Vendor Security Assessment, Atlanta, Georgia, https://www.linkedin.com/in/stevepaek/ (last visited Apr. 25, 2024); Julie Kim: Lead Cybersecurity, Atlanta, Georgia, https://www.linkedin.com/in/juliekim15/ (last visited Apr. 25, 2024); Jason Lawrence: Associate Director – Cybersecurity, Atlanta Metropolitan Area, https://www.linkedin.com/in/ethicalinfosec/ (last visited Apr. 25, 2024); Joanne Gilber: Principal – Cybersecurity, Atlanta, Georgia, https://www.linkedin.com/in/joanne-gilbert-39b3ab13/ (last visited Apr. 25, 2024); Tiwa Shittu: Network Security Engineer, Atlanta, Georgia, https://www.linkedin.com/in/tiwa-shittu-11aa811a8/ (last visited Apr. 25, 2024); Tingli Crowe: Senior Cybersecurity, Atlanta Metropolitan Area, https://www.linkedin.com/in/tingli-crowe-2960b739/ (last visited Apr. 25, 2024); Jordan Foster: Senior Cybersecurity – Security Platforms, Atlanta, Georgia, https://www.linkedin.com/in/jordanfoster1/ (last visited Apr. 25, 2024); Angel Rodriguez: Principal – Cybersecurity Security Manager, Atlanta, Georgia, https://www.linkedin.com/in/angel-h-rodriguez-cissp-cisa-cism-ccsk-mcse-mcsa-6660945/ (last visited Apr. 25, 2024); Anthony Smith: Principal Security Architect, Atlanta, Georgia, https://www.linkedin.com/in/anthony-smith-27218830/ (last visited Apr. 25, 2024); Alfred Sackey-Mensah: Senior Cybersecurity Consultant, Atlanta, Georgia, https://www.linkedin.com/in/alfred-sackey-mensah-a727a329/ (last visited Apr. 25, 2024); Shannon Tolar: Senior Cybersecurity-Chef Security Office, Suwanee, Georgia, https://www.linkedin.com/in/shannon-tolar-3202134 (last visited, Apr. 25, 2024); Candy Pate: Specialist-Network Control, AT&T Network Operations, Atlanta, Georgia, https://www.linkedin.com/in/candy-pate-884b952b (last visited, Apr. 25, 2024).

relevant witnesses reside in Dallas, it is clear from this objective evidence that AT&T's Atlanta office, not its Dallas headquarters, is the "center of gravity" of this data breach.

      **C.    The Northern District of Georgia has the Necessary Judicial Resources and Expertise to Manage this Nationwide Data Breach Litigation in an Efficient Manner.**

Besides relevant evidence pointing to Atlanta as the "center of gravity" for this litigation, the Northern District of Georgia is also home to jurists that have efficiently overseen many MDLs,[19] including data breach MDLs, and established nationwide precedent in data breach cases. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 366 F. Supp. 3d 1368, 1369-70 (J.P.M.L. Apr. 3, 2019) (assigning nationwide litigation to a transferee district known to have the necessary judicial resources and expertise to manage large product liability MDLs in a prudent manner). For example, Judge Thomas W. Trash, Jr. presided over several high-profile consolidated data breach cases, including MDL 2800 involving the Equifax data breach and MDL 2583 involving the Home Depot data breach.[20] Judge Steven D. Grimberg is also currently overseeing data breach class action litigation in the District.[21] And while not an MDL, Judge Victoria Calvert (the first-filed judge in the District here) is nearing the end of a class action data breach lawsuit that is set for a

---

[19] *In RE: ARC Airbag Inflators Products Liability Litigation* (1:22-md-03051); *In RE: Paragard IUD Products Liability Litigation* (1:20-md-02974); *In RE: Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation* (1:17-md-02782); *In RE: Atlas Roofing Corporation Chalet Shingle Products Liability Litigation* (1:13-md-02495); *In RE: Wright Medical Technology, Inc., Conserve Hip Implant Products Liability Litigation* (1:12-md-02329); *In RE: Camp Lejeune, North Carolina Water Contamination Litigation* (1:11-md-02218); *In RE: Delta/AirTran Baggage Fee Antitrust Litigation* (1:09-md-02089); *In RE: Androgel Antitrust Litigation (No. II)* (1:09-md-02084); *In RE: ConAgra Peanut Butter Products Liability Litigation* (1:07-md-01845).

[20] *IN RE: EQUIFAX, INC., Customer Data Security Breach Litigation* (1:17-md-02800); *In Re: The Home Depot, Inc., Customer Data Security Breach Litigation* (1:14-md-02583); and *Miller et al v. NextGen Healthcare, Inc.* (1:23-cv-02043).

[21] *In Re: Overby-Seawell Company Customer Data Security Breach Litigation* (1:23-md-03056).

final approval hearing later this year.[22] Thus, the Northern District of Georgia is well versed with the emerging area of data breach litigation and has proved capable of managing the largest data breach MDLs.

Docket conditions also favor the Northern District of Georgia. For example, from 2022 to 2023 the Northern District of Georgia saw a 14.3% decrease in pending cases. During that same period, the Northern District of Texas only saw a 6.6% decrease in pending cases.[23] Furthermore, the Northern District of Georgia has a strong track record of efficiently resolving cases. This past year, the Northern District of Texas had 10.6% of its cases pending for three years or more compared to the Northern District of Georgia's 7.1%.[24] Likewise, the Northern District of Georgia has a history of efficiently overseeing large data breach MDLs. In both, *In re: Equifax, Inc., Customer Data Sec. Breach Litig.* and *In re: Home Depot, Inc., Customer Data Sec. Breach Litig.*, the Northern District of Georgia prudently resolved the litigations within almost two years.[25]

With Northern District of Georgia's experience in resolving complex data security litigations, and subsequent case law precedent pertaining to such cases as a result, the district has

---

[22] *Covington v. Gifted Nurses, LLC* (1:22-cv-04000).

[23] Table C—U.S. District Courts–Civil Statistical Tables For The Federal Judiciary (December 31, 2023).

[24] Table C-6—U.S. District Courts–Civil Judicial Business (September 30, 2023).

[25] In December 2017, the Panel centralized *In re: Equifax, Inc. Customer Data Sec. Breach Litig.* in the Northern District of Georgia (J.P.M.L. Dec. 6, 2017), and by June 2020, the Northern District of Georgia entered the order granting preliminary approval of the Class Action Settlement (Preliminary Approval Order, *In re: Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga.) (ECF No. 1133)); In December 2014, the Panel centralized *In re: Home Depot, Inc., Customer Data Sec. Breach Litig.* in the Northern District of Georgia (J.P.M.L. Dec. 11, 2014), and by March 2017, the Northern District of Georgia entered the order granting preliminary approval of the Class Action Settlement (Preliminary Approval Order, *In re: Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT (N.D. Ga.) (ECF No. 328)).

proven over and over to have the capacity, resources, and expertise in managing nationwide data breach litigations efficiently and in a manner convenient for the parties and witnesses.

### D. The Northern District of Georgia is also Most Appropriate Because it is Centrally Located and Easily Accessible.

Ranked the busiest airport in the country, Atlanta is the country's "most accessible city" with the "world's most efficient airport."[26] Eighty percent of the country is within a 2-hour flight of Atlanta, and Atlanta's Hartsfield-Jackson Airport has more than 150 U.S. destinations with direct non-stops flights and 225+ non-stop destinations worldwide.[27] Even if a handful of relevant individuals are in Dallas, there are 15 non-stop flights every day from Dallas to Atlanta.[28] Once AT&T finally discloses the source of the breach—whether domestic or international—Atlanta is likely the most accessible city.

### CONCLUSION

For all these reasons, Interested Parties Ryan Unruh and Christopher Isbell oppose the consolidation of all Related Actions to the Northern District of Texas. Alternatively, Interested Parties Ryan Unruh and Christopher Isbell request the Panel consolidate the Related Action to the Northern District of Georgia.

---

[26] *Atlanta: Convenient Travel | Home to World's #1 Airport*, DISCOVER ATLANTA, https://discoveratlanta.com/meetings/why-atlanta/convenient-travel/#:~:text=Atlanta's%20Hartsfield%2DJackson%20Airport%20is,commuting%20to%20Atlanta%20a%20breeze. (last visited Apr. 23, 2024).

[27] *Id.*

[28] *Direct (non-stop) flights from Dallas to Atlanta*, FLIGHTSFROM.COM, https://www.flightsfrom.com/DFW-ATL (last visited Apr. 25, 2024).

Dated: April 25, 2024

Respectfully Submitted,

/s/ *Norman E. Siegel*
Norman E. Siegel
J. Austin Moore
Stefon J. David
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
siegel@stuevesiegel.com
moore@stuevesiegel.com
david@stuevesiegel.com

Amy Keller
Jessica Holmes
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel: 312-214-7900
akeller@dicellolevitt.com
jholmes@dicellolevitt.com

Roy Barnes
J. Cameron Tribble
Georgia Bar No. 754759
**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
Tel: 770-227-6375
roy@barneslawgroup.com
ctribble@barneslawgroup.com

Douglas J. McNamara
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Tel: 202-408-4651
dcmcnamara@cohenmilstein.com

*Counsel for Plaintiffs Ryan Unruh and Christopher Isbel*