**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION**

| In re: | MDL Docket No. 3114 |
|---|---|
| **AT&T INC. CUSTOMER DATA SECURITY BREACH LITIGATION** | |

**PLAINTIFF GERALD FOLEY'S**
**RESPONSE IN SUPPORT OF THE MOTION TO TRANSFER**

Plaintiff Gerald Foley's ("Plaintiff"), the Plaintiff in *Foley v. AT&T Inc.*, No. 24-819 (N.D..

Tex.), hereby submits this Response in Support of the Motion to Transfer, pursuant to 28 U.S.C.

§ 1407 and Panel Rule 6.1(d), through their undersigned counsel. *See* ECF No. 1. Plaintiff supports

consolidation and centralization of the Related Actions in the Northern District of Texas.

## BACKGROUND

Plaintiff's action, like all other actions in the Related Actions, stem from a data breach

reported by Defendant AT&T Inc. ("AT&T") beginning in March 2024, involving the theft of

personally identifiable information ("PII") of approximately 70 million individuals by

unauthorized cybercriminals who exploited vulnerabilities in AT&T's information network (the

"Data Breach").

Plaintiff Gerald Foley filed his action on April 4, 2024, in the Northern District of Texas.

The *Foley* Action is one of 12 cases (as of this writing) currently noticed as part of this MDL.

While the claims differ slightly from complaint to complaint, each Related Action alleges

materially identical facts, and seeks certification of overlapping classes of individuals whose PII

was compromised in the Data Breach.

## ARGUMENT

### I.        The Cases Should Be Centralized

The controlling statute, 28 U.S.C. § 1407(a), states, in relevant part, that "civil actions involving one or more common questions of fact . . . may be transferred to any district for coordinated or consolidated pretrial proceedings" and that "transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." As stated by the plaintiffs in the Motion to Transfer, the Related Actions all arise from the same factual core—the Data Breach and subsequent harm that occurred, impacting millions of individuals. ECF No. 1-1 at 4. Indeed, the Related Actions involve nearly identical facts, the same defendants, and similar or identical proposed classes. Absent centralization of the Related Actions, the parties will incur unnecessary costs and judicial inefficiencies due to duplicative motions practice and discovery from courts across the nation, and will face the risk of inconsistent rulings.

The Panel has routinely transferred and consolidated such data security MDLs, even where there are multiple defendants who do not fully overlap between all actions, as long as the related actions all stem from the same occurrence, as is the case here. *See In re MOVEit Customer Data Security Breach Litigation,* No. MDL 3083, 2023 WL 6456749 at *2 (J.P.M.L., Oct. 4, 2023) (In the context of data security litigation, "[a]ll actions can be expected to share factual questions arising from allegations [regarding] a vulnerability in Progress Software Company's MOVEit Transfer and MOVEit Cloud file transfer services. . . ."); *see, e.g., In re KeyBank Customer Data Sec. Breach Litig.,* 655 F. Supp. 3d 1372 (J.P.M.L. 2023); *In re Samsung Customer Data Sec. Breach Litig.,* 655 F. Supp. 3d 1368 (J.P.M.L. 2023); *In re T-Mobile Customer Data Sec. Breach Litig.,* 576 F. Supp. 3d 1373 (J.P.M.L. 2021); *In re Blackbaud, Inc.,*

*Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1363 (J.P.M.L. 2020); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350 (J.P.M.L. 2019); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351 (J.P.M.L. 2018).

Further, "the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation," traditionally guides the Panel in deciding both whether and where to transfer and centralize Related Actions in an MDL. *In re: Watson Fentanyl Patch Products Liability Litigation*, No. MDL 2372, 883 F.Supp.2d 1350, 1352 (J.P.M.L. 2012). While discovery in other jurisdictions may occur, the key locus of documents and witnesses will be Texas, where AT&T is located.

## II.     The Northern District of Texas is the Appropriate Venue

Should the Panel choose to centralize and consolidate the Related Actions before one judge, Plaintiff respectfully submits that the Northern District of Texas is the most appropriate venue. In selecting a transferee district, the Panel generally considers "where the largest number of cases is pending, where discovery has occurred, where cases have progressed the furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." Manual for Complex Litigation (Fourth) § 20.131 (2004). Each of these factors favors the Northern District of Texas.

The majority of the Related Actions are already pending in the Northern District of Texas. This fact strongly supports that the Northern District of Texas is the most appropriate transferee district. *In re PersonalWeb Techs., LLC*, No. MDL 2834, 340 F.Supp.3d 1373, 1374-75 (J.P.M.L. 2018) (transferring cases to district where "[t]he majority of the cases are pending"); *In re Zimmer Durom Hip Cup Prods. Liab. Litig.*, No. MDL 2158, 717 F.Supp.2d 1376, 1378 (J.P.M.L. 2010) (same). The only other action was filed in the Western District of Oklahoma, thus, those parties

would not be terribly inconvenienced to travel just over the state line to the Northern District of Texas.

Additionally, the indispensable Defendant, AT&T, is headquartered in the Northern District of Texas, indicating that key documents and witnesses are likely to be found in that District. The existence of key witnesses and documents in a given district is one of the most important factors in deciding where an MDL should be located. *See In re Hill's Pet Nutrition, Inc.*, No. MDL 2887, 2019 U.S. Dist. LEXIS 93990, at *2 (J.P.M.L. June 4, 2019) (transferring to district because "Hill's is headquartered in that district, and it represents that its key evidence and witnesses are located there"); *In re Santa Fe Natural Tobacco Co. Mktg. & Sales Practices Litig.,* No. MDL 2695, 178 F.Supp.3d 1377 (J.P.M.L. 2016) ("[K]ey witnesses reside there, including employees and decision makers tasked with the development and execution of product labeling, marketing and advertising."); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. MDL 2744, 214 F.Supp. 3d 1354, 1356 (J.P.M.L. 2016) ("[K]ey witnesses and documents are located there, including evidence from its … supplier … which has its U.S. regional headquarters in this district."); *In re Nissan N. Am., Inc.*, *Odometer Litig. (NO. II)*, No. MDL 1921, 542 F.Supp.2d 1367, 1369 (J.P.M.L. 2008) ("Because the Middle District of Tennessee is the location of … headquarters, several parties anticipate that relevant discovery will be found there.").

In addition, as discussed in the Motion to Transfer, the Northern District of Texas has more favorable docket conditions when compared to the national average, including having the capacity to handle an MDL (currently only overseeing one). ECF No. 1-1 at 7. As such, transferring the Related Actions to the Northern District of Texas is unlikely to impose a great burden on the Northern District of Texas judges.

**<u>CONCLUSION</u>**

For all the foregoing reasons, Plaintiff respectfully requests that the Panel grant the Motion to Transfer and centralize the Related Actions in the Northern District of Texas.

Dated: April 25, 2024                          Respectfully submitted,

*/s/ Charles D. Moore*
Charles D. Moore
**REESE LLP**
121 N. Washington Ave., 4th Floor
Minneapolis, MN 55401
T: (212) 643-0500
F: (212)-253-4272
cmoore@reesellp.com

*Counsel for Plaintiff Foley*