**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: AT&T, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 3114 |

**RESPONSE OF PLAINTIFF RYAN AQUINO IN OPPOSITION OF PLAINTIFF ALEX PETROSKI'S MOTION FOR TRANSFER AND CENTRALIZATION OF RELATED ACTIONS IN THE NORTHERN DISTRICT OF TEXAS AND IN SUPPORT OF CENTRALIZATION AND TRANSFER TO THE NORTHERN DISTRICT OF GEORGIA**

## I.     INTRODUCTION

Ryan Aquino ("**Plaintiff**"), is a plaintiff in the related case *Aquino v. AT&T, Inc.*, Case No. 3:24-cv-00802, respectfully submits this response in partial opposition of the motion filed by Plaintiff Alex Petroski,[1] to centralization of related action in the United States District Court for the Northern District of Texas, Dallas Division. Plaintiff Aquino supports consolidation and centralization of the related actions, but respectfully submits that this MDL should be centralized and consolidated in the Northern District of Georgia, where one of the AT&T defendants is headquartered, many key witnesses are likely to be located, and the docket conditions, location, as well as the district's familiarity with handling MDLs and data breach class actions favor centralization.

Plaintiff Aquino also supports Judge Calvert (assigned to the first filed *AT&T* case in the Northern District of Georgia), who is undoubtedly well-qualified to manage this MDL as she is well-versed in navigating data breach lawsuits, has the capacity to handle this complex action, and ability to steer this data breach litigation on an efficient and prudent course.

## II.     ARGUMENT

The Related Actions, and any tag-along actions that follow, are appropriate for transfer

---

[1] Alex Petroski a/k/a Alec Petroski is a plaintiff in the case *Petroski v. AT&T, Inc.*, Case No. 3:24-cv-00757.

pursuant to 28 U.S.C. § 1407(a) because they involve many common questions of fact, and transfer will benefit the parties and the entire court system. Further, given that numerous actions are already pending in the Northern District of Georgia, where AT&T Mobility resides, the transfer to that District is most appropriate.

## 1. Plaintiff Supports Consolidation and Transfer of the Related Actions under 28 U.S.C. § 1407.

"When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings," based upon a "determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Each of these requirements is satisfied here, and the Related Actions should therefore be consolidated in a multidistrict litigation.

### A. No Dispute Exists That the Actions Are Related and Involve Common Factual Allegations.

When related actions involve alleged "common questions of fact," this Panel has held that "[c]entralization under Section 1407 is . . . necessary in order to prevent duplication of discovery and eliminate the possibility of conflicting pretrial rulings concerning the common factual questions." *In re Oil Spill by "Amoco Cadiz" Off Coast of France on Mar. 16, 1978*, 471 F. Supp. 473, 478 (J.P.M.L. 1979); *see also In re 23andMe, Inc.,* No. MDL No. 3098, 2024 U.S. Dist. LEXIS 66972, at *2 (J.P.M.L. Apr. 11, 2024) (centralizing thirty-nine actions in three districts, with eight more possible tag-along actions, related to singular data breach, holding "[c]entralization will avoid the possibility of inconsistent pretrial rulings, particularly with respect to class certification."); *In re Fortra File Transfer Software Data Sec. Breach Litig.,* No. MDL No. 3090, 2024 U.S. Dist. LEXIS 20080, at *2 (J.P.M.L. Feb. 5, 2024) (centralizing data breach actions which shared "common and complex factual questions" relating to how the breach occurred, and the defendant's response to the breach).

Here, each of the Related Actions arise from the same data breach. AT&T is a provider of

telecommunications and technology services, such as broadband services, ethernet-based fiber services, and telephone voice communications. Aquino Compl., ¶ 1. Importantly, <u>AT&T Mobility, LLC, is a wholly owned subsidiary of AT&T, Inc.</u> and the largest wireless carrier in the United States—providing wireless services and equipment to AT&T's largest customer base of 241.5 million wireless subscribers.[2] AT&T Mobility is headquartered in Atlanta, Georgia.[3] AT&T (AT&T Inc. and AT&T Mobility LLC) acquired, collected, and stored Plaintiff's and millions of other consumers' personally identifiable information ("**PII**"), including full names and addresses, social security numbers, dates of birth, passcodes, and other sensitive data (collectively, "**Private Information**"). In August 2021, due to substantial vulnerabilities in its systems, AT&T enabled hackers to access and take the Private Information of at <u>least 73 million victims</u> (including Plaintiff here)—after all AT&T is no stranger to data breaches.[4] Given that the majority of AT&T

---

[2] "Of the three major wireless carriers in the United States - AT&T, Verizon, T-Mobile [] AT&T holds the largest share of the wireless subscription market." "Over the last decade, the wireless subscriber count has been steadily growing and it has more than tripled since 2007." Petroc Taylor, *AT&T number of mobility subscribers 2007-2022*, STATISTA (May 9, 2023), https://www.statista.com/statistics/220692/number-of-atundt-wireless-subscribers-since-2007/ (last accessed Apr. 25, 2024); *AT&T Inc. 2024 Form 8-K*, U.S. SECURITIES AND EXCHANGE COMMISSION, https://investors.att.com/~/media/Files/A/ATT-IR-V2/financial-reports/quarterly-earnings/2023/4q-2023/ATT_4Q_2023_8_K_Earnings_8_01.pdf (last accessed Apr. 25, 2024) ("In our Mobility business unit, during the fourth quarter of 2023, we reported a net gain of 5.9 million wireless subscribers. At December 31, 2023, wireless subscribers totaled 241.5 million…")

[3] *AT&T Mobility LLC Business Search*, GEORGIA SECRETARY OF STATE, https://ecorp.sos.ga.gov/BusinessSearch/BusinessInformation?businessId=50003&businessType=Foreign%20Limited%20Liability%20Company&fromSearch=True (last accessed Apr. 25, 2024) (Principal Office Address: 1025 Lenox Park Blvd NE, Atlanta, GA, 30319-5309, USA)

[4] In June 2001, AT&T wireless customer information appeared in online chat rooms; in June 2010 due to security flaws within AT&T website and mobile network, AT&T exposed 114k iPad user email addresses; in 2013 and 2014 AT&T call center employees exposed sensitive customer data to third parties (including social security numbers of about 280,000 customers); in June 2014, reports emerged of an AT&T wireless data breach relating to the activities of three third-party vendor employees; in October 2014, AT&T employee accessed and misused sensitive data of 1,600 AT&T customers; in July 2020 U.S. Department of Justice charged AT&T employees for a massive phone unlocking scheme exposing customers' information between 2012 and 2017; in 2021 a trove of customer data appears on the dark web, yet AT&T denied that the data was from AT&T systems; in August 2022 another set of AT&T customer data is discovered by a cybersecurity firm; in March 2023, AT&T notified about 9 million wireless customers of a data

subscribers are wireless customers (i.e., AT&T Mobility customers),[5] it is highly likely that the majority of the affected victims are AT&T Mobility's customers.

This breached data set has already been published on the dark web, subjecting millions of people to substantial harm. The Related Actions all allege substantially similar legal claims on behalf of the same nationwide class (as well as various state subclasses) of persons affected by the same set of facts, i.e., the data breach. For these reasons, there are common questions of fact.

**B.    Consolidation Would Serve the Convenience of the Parties and Witnesses and Promote the Just and Efficient Conduct of the Action.**

Consolidation will serve the convenience of the parties and witnesses by placing related actions before a single judge to oversee. *See In re Moveit Customer Data Sec. Breach Litig.*, No. MDL No. 3083, 2023 U.S. Dist. LEXIS 178596, at *7 (J.P.M.L. Oct. 4, 2023) ("we are of the opinion that the parties can obtain significant efficiencies by placing all actions concerning the vulnerabilities in the [] software before a single judge"). Further, because of the similar allegations against similar defendants involving the same data breach, the factual discovery and legal issues in the Related Actions will overlap. Discovery in each of the actions is likely to substantially overlap and will concern similar issues, including, among others, how AT&T's systems were breached, what security measures AT&T had in place to protect against a breach, and what information was compromised in the breach.

By consolidating these actions before one single judge, the process effectively sidesteps inefficiencies in conducting discovery and inconsistent pre-trial rulings, while promoting the

_____

breach related to a third-party vendor; in March 2023, AT&T admitted that a trove of data found on the dark web belongs to AT&T customers. *See* Catherine Reed, *AT&T Data Breaches: Full Timeline Through 2023,* FIREWALL TIMES (Oct. 5, 2023) (available at https://firewalltimes.com/att-data-breaches/); *see also* Kristopher J. Brooks, *What customers should know about AT&T's massive data breach,* CBS NEWS (updated on April 11, 2023) (available at https://www.cbsnews.com/news/att-data-breach-2024-cbs-news-explains/).
[5] *AT&T 2023 Annual Report*, AT&T, https://investors.att.com/~/media/Files/A/ATT-IR-V2/financialreports/annual-reports/2023/2023-complete-annual-report.pdf (last accessed Apr. 25, 2024) (241.5 million Mobility subscribers, only 15.2 million domestic broadband connections, 4.1 million network access lines, and 2.5 million VoIP connections).

conservation of legal and judicial resources. *Id*. at * 5 ("substantial opportunities to streamline pretrial proceedings; reduce duplicative discovery and conflicting pretrial obligations; prevent inconsistent rulings on common *Daubert* challenges and summary judgment motions; and conserve the resources of the parties, their counsel, and the judiciary"). This also includes reducing the cost of document review platforms and depositions for third-party witnesses as much as party witnesses. Consolidation of the cases will permit the parties to coordinate their efforts in a single proceeding, thereby promoting efficiency and preserving parties' and judicial resources.

Consolidation also decreases the likelihood of inconsistent ruling on pretrial issues because of the possible *res judicata* or collateral estoppel effects on other cases. *See In re Enron Sec. Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings); *see also In re Multidistrict Private Civ. Treble Damages Litig.*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968) (stating the purpose of multidistrict litigation is to "eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions").

For all the reasons above, the Panel should consolidate and centralize the Related Actions and any tag-along actions.

### 2.    The Northern District of Georgia is the Most Appropriate Forum.

"The Panel uses no single factor to select the transferee district, but the Panel does consider where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." Manual for Complex Litigation (Fourth) § 20.131 (2004) (footnote omitted); *see also In re Preferential Drug Prod. Pricing Antitrust Litig.*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977).

Here, the Northern District of Georgia is the most appropriate transferee district because it is where AT&T Mobility is headquartered, where the majority of witnesses are likely to be located, and from where AT&T has likely made various decisions concerning security of wireless systems and customers that ultimately enabled the hackers to access the Private Information at issue. *See*

5

*e.g., In re Samsung Customer Data Security Breach Litigation,* MDL 3055, 655 F. Supp. 3d 1368 (Feb. 1, 2023) (transferring the data breach cases to New Jersey, where Defendant was headquartered, where common witnesses and other evidence was likely to be found); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 2024 U.S. Dist. LEXIS 20080 (transferring to the Southern District of Florida, where the largest number of related actions were pending, to best serve the witnesses and the parties to the actions).

For example, AT&T Inc.'s Chief Technology Officer, Jeremy Legg, who manages AT&T's Technology Services organization, chief data office, and chief security office, is located in Atlanta, Georgia.[6] His responsibilities include organizing data architecture, software, and security at AT&T.[7] Director of Technology Security at AT&T, Inc., John Miller, is also located in Atlanta, Georgia, whose role is also to provide security services architecture, engineering, hosting based and network based security solutions.[8] Undoubtedly, these key witnesses played an important role in this data breach, and the decisions regarding data architecture, software, and security stemmed from Atlanta, Georgia. AT&T Mobility is headquartered in Atlanta, and thus, most of its employees are likely to be located at or near the Northern District of Georgia. AT&T Mobility's employees will also be key witnesses in this action concerning wireless databases, servers, and security—with knowledge of data security practices and safeguards in place to protect systems harboring the majority of the breached data. Therefore, the relevant databases, documents, witnesses, and other evidence are more likely to be found in Atlanta Georgia. *See In re Capital One Customer Data Sec. Breach Litig.,* 396 F. Supp. 3d 1364, 1365 (J.P.M.L. 2019) (transferring actions to the district where the relevant witnesses and evidence were located, as well as the key

---

[6] Leadership, AT&T, https://investors.att.com/corporate-governance/leadership (last accessed Apr. 25, 2024); Jeremy Legg, LINKEDIN, https://www.linkedin.com/in/jeremylegg/ (last accessed Apr. 25, 2024).

[7] *Id.*; Joao-Pierre S. Ruth, *AT&T Communications CTO Legg on Transforming a Telecom Giant* (May 24, 2021) https://www.informationweek.com/it-leadership/at-t-communications-cto-legg-on-transforming-a-telecom-giant (last accessed Apr. 25, 2024).

[8] John Miller, LINKEDIN https://www.linkedin.com/in/john-miller-109b505/ (last accessed Apr. 25, 2024).

defendant).

The breadth of the data breach also suggests that the majority of the affected victims were wireless customers, as the majority of AT&T's customer base are wireless customers.[9] And AT&T Mobility is the entity responsible for providing services to AT&T wireless customers.[10] *See In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*, No. MDL 3096, 2024 U.S. Dist. LEXIS 20083, at *5-6 (J.P.M.L. Jan. 30, 2024) (consolidating data breach lawsuits to forum in which the defendant with the most clients impacted by the data breach, nearly half of affected individuals, resided). Thus, the Northern District of Georgia is the most convenient forum for all parties.

Cost and inconvenience will also be minimal as the Northern District of Georgia, because it has the infrastructure to easily accommodate out-of-town lawyers, parties, and witnesses. *See Handspring, Inc. v. MLR, LLC (In re MLR, LLC, Patent Litig.),* 269 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003) ("prudent counsel will combine their forces . . . thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned"). Atlanta is centrally located to a multitude of hotels and convenient accommodations and will provide all parties with the most convenient and easily accessible location.

Furthermore, the Northern District of Georgia jurists are more familiar in handling complex MDL cases, <u>including data breach MDLs</u>,[11] as opposed to the Northern District of Texas. *See Kostka v. Dickey's Barbecue Rests., Inc.*, No. 3:20-cv-03424-K, 2022 U.S. Dist. LEXIS 188186, at *35 (N.D. Tex. Oct. 14, 2022) ("in the Fifth Circuit, there is little case law on the subject of data

---

[9] *AT&T 2023 Annual Report*, *supra*, n. 5. (241.5 million Mobility subscribers, only 15.2 million domestic broadband connections, 4.1 million network access lines, and 2.5 million VoIP connections).

[10] *Id., supra*, n. 5. (listing Mobility as the communications segment providing wireless services to customers).

[11] *See.g. IN RE: EQUIFAX, INC., Customer Data Security Breach Litigation* (1:17-md-02800) (complex consolidated data breach cases involving Equifax); *In Re: The Home Depot, Inc., Customer Data Security Breach,* (1:14-md-02583) (consolidated data breach involving Home Depot); *In Re: Overby-Seawell Company Customer Data Security Breach Litigation* (1:23-md-03056) (data breach class action involving Overby-Seawell)*.

breaches."). The docket conditions also favor the Northern District of Georgia.[12] *See e.g. In re H & R Mortg. Corp. Prescreening Litig.*, 435 F.Supp.2d 1347, 1349 (J.P.M.L. 2006) ("[T]he judge to whom we are assigning this litigation is an experienced jurist with favorable caseload conditions"); *In re PrimeVision Health, Inc. Cont. Litig.*, 206 F.Supp.2d 1369, 1370 (J.P.M.L. 2002) (assigning to "a judge with a favorable caseload"); *In re Air Crash Near Castellon, Spain on Oct. 10, 2001,* 296 F.Supp.2d 1372, 1373 (J.P.M.L. 2003) (assigning to a judge that "has a relatively favorable caseload for accepting [the] assignment.").

Judge Victoria Calvert, assigned to the first filed AT&T data breach in Georgia, is well familiar with data breach class actions, and is currently handling a data breach matter. Further, all the actions filed in Georgia are proceeding before Judge Calvert. *See, e.g., In re Acetaminophen – ASD/ADHD Prods. Liab. Litig.,* No. 3043, 637 F. Supp. 3d 1372, 1376 (J.P.M.L. Oct. 5, 2022) (transferring a pharmaceutical product liability matter to a specific judge partially because she has MDL experience and handled similar cases). Therefore, she is well-versed with the emerging complexities in data breach litigation and would steer this matter on an efficient and prudent course.

For all these reasons, the Panel should transfer the Related Actions to the Northern District of Georgia.

### III.    CONCLUSION

The Panel should consolidate the Related Actions pursuant to 28 U.S.C. § 1407 and transfer all current and future Related Actions to the United States District Court for the Northern District of Georgia, to proceed before the Hon. Victoria Calvert.

---

[12] For example, from 2022 to 2023 the Northern District of Georgia saw a 14.3% decrease in pending cases. During that same period, the Northern District of Texas only saw a 6.6% decrease in pending cases. Similarly, the Northern District of Georgia has a stronger track record of efficiently resolving cases – with 10.6% of cases pending for three years or more in Texas, as opposed to 7.1% of cases pending in the Northern District of Georgia. *See* Table C – U.S. District Courts – Civil Statistical Tables for the Federal Judiciary (December 31, 2023).

Date: April 25, 2024                    Respectfully submitted,

                                        **CLARKSON LAW FIRM, P.C.**

                                   By: */s/ Yana Hart*
                                        Ryan J. Clarkson, Esq.
                                        Yana Hart, Esq.
                                        22525 Pacific Coast Highway
                                        Malibu CA 90265
                                        Tel. (213) 788-4050
                                        Email: *rclarkson@clarksonlawfirm.com*
                                        Email: *yhart@clarksonlawfirm.com*

                                        *Counsel for Plaintiff Ryan Aquino*