## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: AT&T INC. CUSTOMER DATA SECURITY BREACH LITIGATION | MDL Docket No.: 3114 |

### (AMENDED) INTERESTED PARTIES HASSON, CHADDY AND CHERNIK'S RESPONSE IN OPPOSITION TO PLAINTIFF PETROSKI'S MOTION FOR TRANSER AND CENTRALIZATION OF RELATED ACTIONS IN THE NOTHERN DISTRICT OF TEXAS AND IN SUPPORT OF CENTRALIZATION AND TRANSFER TO THE NORTHERN DISTRICT OF GEORGIA PURSUANT TO 28 U.S.C. § 1407

I.      INTRODUCTION

Interested Parties Kenneth Hasson and Chad Graddy, Plaintiffs in *Hasson and Graddy, et al. v. AT&T Mobility, LLC and AT&T, Inc.*, Case No. 1:24-cv-01580 (N.D. Ga.), and Interested Party Zachary Chernik, the Plaintiff in *Chernik v. AT&T, Inc. and Directv*, Case No. 1:24-cv-03054 (N.D. Ill.) (collectively "Plaintiffs"), pursuant to 28 U.S.C. § 1407 and Panel Rule 6.1(d), through their undersigned counsel, hereby submit this partial Response in Opposition to the Motion to Transfer. ECF Nos. 1, 1-1. While Plaintiffs support consolidation and centralization, Plaintiffs respectfully submit that the MDL should be centralized and consolidated in the Northern District of Georgia, where AT&T Mobility, LLC is headquartered. AT&T Mobility, LLC is a wholly owned subsidiary of AT&T Inc. (collectively, "AT&T" or "Defendant") and provides the company's nationwide wireless service and equipment.[1]  Plaintiffs are informed and believe that AT&T Mobility's servers may house the data that was accessed and stolen. Moreover, in May 2023,

---

[1] https://otp.tools.investis.com/clients/us/atnt2/sec/sec-show.aspx?Type=page&FilingId=17303532-120176-154754&CIK=0000732717&Index=11100

AT&T, Inc., the parent company, consolidated its nationwide offices, and Atlanta is one of two major hubs for the telecommunications giant.[2]

## II.    BACKGROUND

Plaintiffs' actions, like all other actions in the Related Actions, stems from a data breach at AT&T for its failure to properly secure and safeguard highly valuable, protected, personally identifiable information including, inter alia, current and former customers' full names, email addresses, phone numbers, dates of birth, AT&T account numbers, Social Security Numbers, and AT&T account passcodes (collectively, "PII"), failure to comply with industry standards to protect information systems that contain PII, and failure to provide adequate notice to Plaintiffs and other members of the Class that their PII had been accessed and compromised. Nearly three years ago in 2021, a threat actor claimed to be selling the stolen personal information of approximately 73 million AT&T customers. At the time, AT&T denied that it suffered a data breach or that the data originated from AT&T.[3] In March 2024, threat actors began releasing the stolen personal information on the Dark Web, claiming that it was the same dataset previously advertised for sale in 2021.[4] However, after previously denying that the data belonged to AT&T customers, on March 30, 2024, Defendants confirmed that the data released on the dark web was that of AT&T customers.[5] The information included 7.6 million current and 64.4 million former customers' full

---

[2] *AT&T to consolidate offices into hubs across the U.S. Atlanta is one of them*, Atlanta Business Chronicle, https://www.bizjournals.com/atlanta/news/2023/05/24/att-national-consolidation.html.
[3] Lawrence Abrams, AT&T confirms data for 72 million customers leaked on hacker forum, BleepingComputer (Mar. 30, 2024), https://www.bleepingcomputer.com/news/security/atandt-confirms-data-for-73 million-customers-leaked-on-hacker-forum/#google_vignette.
[4] *Id.*
[5] AT&T Addresses Recent Data Set Released on the Dark Web, AT&T (Mar. 30, 2024), https://about.att.com/story/2024/addressing-data-set-released-on-dark web.html.

names, email addresses, phone numbers, dates of birth, AT&T account numbers, Social Security

Numbers, and AT&T account passcodes (the "Data Breach").[6]

All Plaintiffs in the related actions seek to hold AT&T responsible for the failure to protect

Plaintiffs and Class Members' PII. Plaintiffs in the related actions bring similar claims for

negligence, negligence per se, breach of implied contract, unjust enrichment, and declaratory

judgment, seeking damages and injunctive relief. Plaintiffs Hasson, Graddy and Chernik support

consolidation of all pending actions and request transfer of the MDL to the Northern District of

Georgia.

## III.    LEGAL STANDARD

"The purpose of Section 1407…is to eliminate the potential for conflicting

contemporaneous pretrial rulings by coordinat[ing] district and appellate courts in multidistrict

related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 490-92 (J.P.M.L. 1968).

Centralization is designed to "eliminate duplicative discovery, prevent inconsistent pretrial rulings

(especially with respect to class certification matters), and conserve the resources of the parties,

their counsel and the judiciary." *In re Methyl Methacrylate (MMA) Antitrust Litig.,* 435 F. Supp.

2d 1345, 1347 (J.P.M.L. 2006).

Actions containing allegations with common questions of fact may be transferred and

consolidated under § 1407 if transfer will be for the convenience of the parties and witnesses and

will promote the just and efficient conduct of the transferred cases. 28 U.S.C. § 1407. The Panel

typically considers the following four factors in deciding whether to transfer a case under § 1407:

---

[6] Khristopher J. Brooks, What customers should know about AT&T's massive data breach, CBS News (Apr. 2, 2024), https://www.cbsnews.com/news/att-data-breach 2024-cbs-news-explains/.

a. the elimination of duplication in discovery;

b. the avoidance of conflicting rules and schedules;

c. the reduction of litigation cost; and

d. the conservation of the time and effort of the parties, attorneys, witnesses, and courts.

*See* Manual for Complex Litigation (Fourth) § 31.131 (2004) (citing *In re Plumbing Fixture Cases,* 298 F. Supp. 484 (J.P.M.L. 1968)). Each of these factors favors transfer and consolidation of the cases filed against AT&T Mobility, LLC and AT&T Inc. and any other subsequently named defendants to the Northern District of Georgia.

## IV. ARGUMENT

### A.   The Litigation Satisfies the Requirements for Consolidation and Transfer Under 28 U.S.C. § 1407.

Pretrial transfer and consolidation under § 1407 are appropriate and necessary here. The cases filed against AT&T are numerous and involve the same allegations and legal standards. All the actions allege violations of state and federal statutes, as well as common law principles, against AT&T based on its policies, acts, and omissions. All the actions generally seek certification of a similar class of persons. Unless these cases are consolidated, the parties will incur excessive costs due to duplicative discovery and will face the risk of inconsistent rulings on a variety of matters.

### 1.   The Litigation Involves Common Question of Fact.

In assessing the appropriateness of consolidation under § 1407, the Panel looks to the pleadings to determine the extent to which common questions of fact are present. The complaints in Related Actions clearly present common questions of fact. Each complaint is based on allegations that AT&T Mobility and AT&T, Inc., through their wrongful actions, inaction, negligent security practices, and resulting data breach, exposed the personal information of hundreds of thousands of people. The complaints seek certification of similar, nationwide classes.

Each of the constituent Related Actions will require adjudication of whether Defendants violated state deceptive trade practice statutes and/or the common law through its alleged misconduct. Adjudicating these common issues in a single transferee district will benefit the parties and witnesses and promote judicial efficiency by allowing a single court to coordinate pretrial proceedings governing these common legal and factual issues. The JPML has routinely granted consolidation motions in similar data breaches. *See, e.g.*, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) ("The factual overlap among these actions is substantial, as they all arise from the same data breach, and they all allege that Marriott failed to put in to place reasonable data protections."); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016) (same); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1353 (J.P.M.L. 2018) (same); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 223 F. Supp. 3d 1353, 1354 (J.P.M.L. 2016) (same). The JPML should do the same here.

## 2. The Parties Face Duplicative Discovery Absent Transfer and Consolidation.

Because the factual and legal allegations in each of the Related Actions are essentially the same, the parties face duplicative discovery if the cases are not consolidated and transferred. This is an important consideration for the Panel in that transfer and consolidation "ensure that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *Resource Exploration Inc. Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980). The parties in these actions will necessarily engage in duplicative discovery. All plaintiffs will seek the same documentation from AT&T and will likely request to depose the same witnesses. In

response, AT&T will raise the same class certification objections and discovery objections, seek the same protective orders, and assert the same privileges in each case. However, if the Panel consolidates and transfers the cases, the parties will be able to coordinate their efforts and thus save all parties—and the courts—time and money.

### 3.   Transfer and Consolidation Will Prevent Inconsistent Pretrial Rulings.

The Panel considers the possibility of inconsistent rulings on pretrial issues because of the possible res judicata or collateral estoppel effects on other cases. *See In re Enron Securities Derivative & ERISA Litig.,* 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification). Because of the similarity of the allegations in the Related Actions, and the likelihood that future filed actions will contain the same or similar allegations, the possibility of inconsistent rulings on pretrial motions is substantially increased. *See In re Airline Baggage Fee Antitrust Litig.,* 655 F. Supp. 2d 1362, 1363 (J.P.M.L. 2009) ("In light of the very large number of individuals affected by the fees in question, the possibility of additional actions arising in other districts (with ensuing duplicative Section 1404(a) motion practice) looms.").  AT&T Mobility, LLC and AT&T, Inc. are likely to present the same pretrial motions in each action and assert the same discovery objections and privileges.

As an example, Plaintiffs anticipate that the AT&T defendants will file motions to dismiss and/or move for summary judgment raising issues of Article III standing. Inconsistent rulings on those dispositive motions would pose a serious problem, in that the putative Class is generally the same in each action. Additionally, because of the similarities in the allegations, AT&T will assert the same defenses in opposition to the various plaintiffs' claims, creating a real risk of inconsistent

pretrial rulings. In light of this risk, it would be in the best interests of all involved—the parties, the witnesses, and the Courts—to transfer and centralize these actions.

### 4. There Is Sufficient Numerosity to Support Transfer and Centralization.

To date, there are at least thirty-one Related Actions pending against AT&T arising out of the data breach. This is a high-profile case that has already received a great deal of pretrial publicity. New plaintiffs continue to file additional cases in a multitude of districts, making transfer and consolidation essential.

The Panel has routinely ordered transfer and consolidation of three or fewer cases. *See In re Wireless Telephone Replacement Protection Programs Litig.,* 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (granting transfer and centralization of three consumer protection cases and determining that pending motions can be presented to and decided by the transferee judge); *In re Philadelphia Life Ins. Co. Sales Practices Litig*., 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (granting transfer of two deceptive insurance sales cases and finding that such transfer would promote the just and efficient conduct of the litigation); *In re Amoxicillin Patent & Antitrust Litig.,* 449 F. Supp. 601, 603 (J.P.M.L. 1978) (granting transfer of three cases involving patent and antitrust issues); *In re Alodex Corp.*, 380 F. Supp. 790, 791 (J.P.M.L. 1974) (granting transfer of three securities actions). Given that there are at least thirty-one Related Actions, there is sufficient authority for the transfer and consolidation of the Related Actions against AT&T.

### B. Centralization in the Northern District of Georgia Is Appropriate.

There are numerous factors which the Panel typically takes into consideration in determining the most appropriate transferee forum, including (1) convenience of the parties; (2) location of witnesses and other evidence; (3) whether the district is in an accessible metropolitan location; (4) experience in management of class actions and complex litigation; (5) the caseload

of the transferee district; and (6) the number of cases pending in the jurisdiction. *See, e.g., In re Wheat Farmers Antitrust Class Action Litig.*, 366 F. Supp. 1087, 1088 (J.P.M.L.1973); *In re Preferential Drug Prod. Pricing Antitrust Litig.*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977); *In re Tri-State Crematory Litig.*, 206 F. Supp. 2d 1376, 1378 (J.P.M.L. 2002); *In re Gen. Motors Corp. Dex-Cool Prod. Liab. Litig.*, 293 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003); *In re Educ. Testing Serv. Prt 7-12 Test Scoring Litig.*, 350 F. Supp. 2d 1363, 1365 (J.P.M.L. 2004).

The first and second factors the Panel considers dictate the Northern District of Georgia should be the transferee district.  According to its parent company's SEC filing, AT&T Mobility is the entity that provides nationwide wireless service and equipment.[7] Many of the Related Actions have failed to note that the vital, indispensable, common-to-all cases Defendant, AT&T Mobility, LLC, is headquartered in the Northern District of Georgia, indicating that key documents and witnesses are likely to be found in that District. The existence of key witnesses and documents in a given district is one of the most important factors in deciding where an MDL should be located. *See In re Hill's Pet Nutrition, Inc.*, No. MDL No. 2887, 2019 U.S. Dist. LEXIS 93990, at *2 (J.P.M.L. June 4, 2019) (transferring to district because "Hill's is headquartered in that district, and it represents that its key evidence and witnesses are located there"); *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. Litig.*, 178 F. Supp. 3d 1377, 1379 (J.P.M.L. 2016) (finding that "key witnesses reside there, including employees and decision makers tasked with the development and execution of product labeling, marketing and advertising."); *In re FCA U.S LLC Monostable Elec. Gearshift Litig.*, 214 F. Supp. 3d 1354, 1356 (J.P.M.L. 2016) (noting "key witnesses and documents

---

[7] https://otp.tools.investis.com/clients/us/atnt2/sec-show.aspx?Type=html&FilingId=17468758&Cik=0000732717 (AT&T, Inc.'s 8-K); https://otp.tools.investis.com/clients/us/atnt2/sec-show.aspx?Type=page&FilingId=17303532-120176-154754&CIK=0000732717&Index=11100 (AT&T, Inc.'s 10-K).

are located there, including evidence from its . . . supplier . . . which has its U.S. regional headquarters in this district."); *In re Nissan N. Am., Inc.*, 542 F. Supp. 2d 1367, 1369 (J.P.M.L. 2008) ("Because the Middle District of Tennessee is the location of . . . headquarters, several parties anticipate that relevant discovery will be found there.")

Similarly, one of the two predominant business hubs for AT&T, Inc., the parent company of AT&T Mobility, is in the Northern District of Georgia with many of its executive officers possessing critical information related to the Data Breach being located in Atlanta.[8]  The other hub is in Dallas, Texas, the district which the movant has requested transfer and consolidation. Given that the Northern District of Georgia is both a primary business hub of AT&T, Inc. *and* the headquarters of AT&T Mobility, Plaintiffs respectfully submit that the Northern District of Georgia is the district best suited for transfer and consolidation.

The third factor—whether the transferee district is easily accessible to parties and witnesses—overwhelmingly favors the Northern District of Georgia. The District hosts the world's busiest airport (Hartsfield-Jackson Atlanta International Airport).[9] Importantly, Atlanta is within a two-hour flight of 80 percent of the United States population.[10] This factor thus favors the Northern District of Georgia or is also a wash as between the Atlanta and Dallas.

With respect to another crucial factor—whether the transferee court has the capacity to devote sufficient resources to complex consolidated proceedings—the Northern District of Georgia is best suited to handle these proceedings. The Northern District of Georgia has a stacked roster of Jurists who are well-versed in the statutory and common law governing data breach and

---

[8] *AT&T to consolidate offices into hubs across the U.S. Atlanta is one of them*, Atlanta Business Chronicle, https://www.bizjournals.com/atlanta/news/2023/05/24/att-national-consolidation.html. AT&T CEO and Key Executive Team | Craft.co
[9] World's busiest airports: There's a new No. 2 | CNN
[10] Atlanta Airport Facts & Figures (atlairport.net)

privacy. The Northern District is one of the more prolific districts with decisions analyzing Article III standing and criteria for surviving 12(b)(6) motions. *See e.g. Covington v. Gifted Nurses, LLC*, 2023 WL 5167366 (No. 1-22-cv-4000, July 19, 2023) (Judge Victoria M. Calvert); *Tracy v. Elekta*, 667 F. Supp. 1276 (N.D. Ga. 2023) (Judge Steven D. Grimberg); Baker v. ParkMobile, 2023 WL 6536191 (No. 1:21-cv-02182, Sept. 29, 2023)( Judge Steve C. Jones).  Moreover, the Eleventh Circuit has issued several recent opinions analyzing these standards and setting precedent nationwide *See e.g. Ramirez v. The Paradies Shops, LLC*, 69 F. 4th 1213 (11th Cir. 2023); *Sheffler v. Americold Realty Trust,* 2023 WL 3918491 (No. 22-11789, June 9, 2023).

Finally, as of December 2023, the median time to disposition of a case in the Northern District of Georgia was 6.8 months whereas the median time to disposition of a case in the Northern District of Texas was 6.1 months.[11] This factor is inconsequential as between the two venues.

Put simply, the Northern District of Georgia is the superior venue since all factors considered by the JPML favor this venue over the Northern District of Texas. Plaintiffs respectfully request the Panel transfer and consolidate the Related Actions in the Norther District of Georgia.

## IV.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully submit that the MDL should be centralized and consolidated in the Northern District of Georgia.

Dated:  April 26, 2024                      Respectfully submitted,


                                            */s/ MaryBeth V. Gibson*
                                            MaryBeth V. Gibson
                                            **Gibson Consumer Law Group, LLC**
                                            4729 Roswell Road
                                            Suite 208-108
                                            Atlanta, GA  30342

---

[11] fcms_na_distprofile1231.2023_0.pdf (uscourts.gov).  As of December 31, 2022, the median time to disposition of a case in the Northern District of Georgia was 10.8 months whereas the median time to disposition of a case in the Northern District of Texas was 55.1 months. *Id.*

Telephone: (678) 642-2503
marybeth@gibsonconsumerlawgroup.com

Gary F. Lynch
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
gary@lcllp.com

Jennifer M. French
**LYNCH CARPENTER, LLP**
1234 Camino Del Mar
Del Mar, CA 92014
Telephone: (619) 762-1910
jennf@lcllp.com

*Counsel for Hasson and Chaddy and the
Putative Class*

MaryBeth V. Gibson
**Gibson Consumer Law Group, LLC**
4729 Roswell Road
Suite 208-108
Atlanta, GA  30342
Telephone: (678) 642-2503
marybeth@gibsonconsumerlawgroup.com

Karen Hanson Riebel
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401
T: 612-339-6900
khriebel@locklaw.com

*Counsel for Chernik and the Proposed Class*