## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **In re: AT&T Inc. Customer Data Security Breach Litigation** | **MDL No. 3114** |

### Defendant AT&T Inc.'s Supplemental Response in Support of Transfer to and Centralization in the Northern District of Texas (Dallas)

A small group of plaintiffs (the "Georgia proponents") incorrectly assert that Georgia has a stronger connection to this dispute than Texas based on faulty assumptions that the consolidated actions before this Panel mainly concern AT&Ts wireless customers and AT&T Mobility (based in Georgia), and that key witnesses will be found in Georgia, not Texas. Not so.

**First**, the Georgia proponents' conjecture that AT&T Mobility customers comprise the majority of potentially impacted individuals is wrong. AT&T's family of companies offer both wireline and wireless telephony and broadband services to consumer, business, and government customers in the United States. (Declaration of Paula Phillips ("Phillips Decl.") ¶ 5.) Although AT&T's investigation remains ongoing, AT&T currently estimates that less than 5% of potentially impacted customer accounts are wireless. (Phillips Decl. ¶ 6.) It is not surprising, therefore, that only 6 of the 46 cases filed to date even name AT&T Mobility as a defendant.

**Second,** even if more of the potentially impacted customer accounts were wireless, the Northern District of Texas remains the most appropriate and convenient forum. Indeed, although AT&T Mobility is headquartered in Atlanta, it is merely part of AT&T, and AT&T's key leadership—including marketing, finance,

sales and distribution, the organization that builds the wireless network, and customer operations, which has certain incident response and breach remediation responsibilities—are all located in Dallas, not Atlanta. (Phillips Decl. ¶ 8.)

**Third**, AT&T's response to the security incident at issue is directed from AT&T's headquarters in Dallas, not Atlanta. (Phillips Decl. ¶ 7.)

**Fourth**, the Georgia proponents' speculation as to the location of likely witnesses is wrong. Although AT&T's Chief Technology Officer, Jeremy Legg, and AT&T's Chief Data Officer, Andy Markus, are based in Atlanta, they are both employees of AT&T Services, Inc.—a Delaware corporation with its principal place of business in Dallas—and both spend considerable time in AT&T's Dallas headquarters. Mr. Legg typically spends every other week at AT&T's Dallas headquarters where most of his direct reports sit. (Phillips Decl. ¶ 9.)  Mr. Markus also spends significant time at AT&T's Dallas headquarters and has twice as many employees in his organization working in Texas (approximately 37%), as compared to Georgia (approximately 19%), with another 19% in New Jersey and the remaining 25% spread across the country. (Phillips Decl. ¶ 10.) AT&T's Chief Information Security Officer is based in Dallas, and only about 16% of the CISO organization is based in Georgia, with the rest concentrated in Texas, New Jersey, and other cities across the country. (Phillips Decl. ¶ 11.)

The Georgia proponents further gild the Georgia fallacy by citing the results of their apparently targeted LinkedIn search, claiming "at least a dozen" AT&T "cybersecurity" employees are based in Atlanta. But AT&T has more than 1,200 employees located across the country who have internal cybersecurity

responsibilities. And the Georgia proponents fail to identify any connection between the 12 they hand-selected in Georgia and the incident. In fact, based on AT&T's investigation to date, none of these individuals were involved in the incident or the response to the incident. Moreover, based on the information provided in the Georgia proponents' brief, AT&T could not even identify 2 of the individuals as either current or former employees. (Phillips Decl. ¶¶ 12–13.)

**Fifth**, only 7 of the 63 named plaintiffs allege they reside in Georgia. Moreover, only 1 of these plaintiffs filed in Georgia—the other 6 sued in the Northern District of Texas. The remainder—much like the unnamed putative class members—are scattered throughout the United States. In such far-reaching (and growing) nationwide litigation, the Panel has found forums in the center of the country to be more appropriate and convenient for all parties than those on the coasts. *See, e.g.*, *In re Transit Co. Tire Antitrust Litig.*, 350 F. Supp. 1165, 1166 (J.P.M.L. 1972) ("At present, actions are pending in four widely-separated states— Florida, Pennsylvania, California and Missouri. Because of Kansas City's geographically central location, it is easily accessible from all parts of the country and provides a more convenient forum to *all* parties than either Los Angeles or Philadelphia.") (emphasis in original); *Vehimax Int'l, LLC v. Jui Li Enter. Co., Ltd.*, 2010 WL 11527371, at *6 (C.D. Cal. Mar. 16, 2010) (selecting Wisconsin as the transferee district in part because it was "likely more convenient for the unnamed class members" and "[g]iven that the class members are scattered throughout the United States, a forum in the center of the country is likely more convenient than one located on the coast").

For these reasons and those stated in AT&T's Response in Support of Transfer to and Centralization of Related Actions in the Northern District of Texas (Dallas) for Consolidated Pretrial Proceedings (ECF 66), the Northern District of Texas (Dallas) is the most appropriate transferee court.

Dated: May 2, 2024

Respectfully submitted,

*/s/Gilbert S. Keteltas*
Gilbert S. Keteltas
BAKER HOSTETLER LLP
1050 Connecticut Avenue, NW, Ste. 1100
Washington, D.C. 20036
Tel.: (202) 861.1530
Fax: (202) 861.1783
Email: gketeltas@bakerlaw.com

*Attorney for Defendant AT&T Inc.*