# EXHIBIT A

Query    Reports    Utilities    Help    Log Out

JURY

# U.S. District Court
## Northern District of Texas (Dallas)
## CIVIL DOCKET FOR CASE #: 3:24-cv-01085-E

Orejudos et al v. AT&T Inc
Assigned to: Judge Ada Brown
Cause: 28:1332 Diversity-Breach of Contract

Date Filed: 05/06/2024
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other Contract
Jurisdiction: Diversity

**Plaintiff**

**Rachel Lee Orejudos**
*Individually and on Behalf of All Others*
*Similarly Situated*

represented by **Joe Kendall**
Kendall Law Group
3811 Turtle Creek Boulevard, Suite 825
Dallas, TX 75219
214-744-3000
Fax: 214-744-3015
Email: jkendall@kendalllawgroup.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jean Felix**
*Individually and on Behalf of All Others*
*Similarly Situated*

represented by **Joe Kendall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**AT&T Inc**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/06/2024 | 1 | COMPLAINT WITH JURY DEMAND against AT&T, INC. filed by Rachel Lee Orejudos, Jean Felix. (Filing fee $405; Receipt number ATXNDC-14596262) Clerk to issue summons(es). In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 Exhibit(s) 1 - Notice Letter, # 2 Exhibit(s) 2 - Notice Letter Template, # 3 Cover Sheet) (Kendall, Joe) (Entered: 05/06/2024) |

| 05/06/2024 | 2 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Jean Felix, Rachel Lee Orejudos. (Clerk QC note: No affiliate entered in ECF). (Kendall, Joe) (Entered: 05/06/2024) |
| 05/06/2024 | 3 | New Case Notes: A filing fee has been paid. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (Judge Horan). Clerk to provide copy to plaintiff if not received electronically. (kcr) (Entered: 05/07/2024) |
| 05/07/2024 | 4 | Summons Issued as to AT&T Inc. (kcr) (Entered: 05/07/2024) |
| 05/07/2024 | 5 | Court Request for Recusal: Magistrate Judge David L. Horan recused pursuant to Special Order 3-249. Magistrate Judge Rebecca Rutherford assigned for matters that may be referred in this case. (cea) (Entered: 05/08/2024) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/20/2024 09:14:08 | | |
| **PACER Login:** | tpetre1982 | **Client Code:** | 009900.000074 |
| **Description:** | Docket Report | **Search Criteria:** | 3:24-cv-01085-E |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVSION**

| | |
|---|---|
| RACHEL LEE OREJUDOS and JEAN FELIX, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> AT&T, INC., <br><br> Defendant. | Case No. 3:24-cv-01085 <br><br><br><br><br><br> **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Upon personal knowledge as to their own acts, and based upon their investigation, the investigation of counsel, and information and belief as to all other matters, Plaintiff Rachel Lee Orejudos and Plaintiff Jean Felix (collectively, "Plaintiffs"), on behalf of herself and all others similarly situated, alleges as follows:

## SUMMARY OF THE ACTION

1.      Plaintiffs bring this class action against AT&T, Inc. ("Defendant" or "AT&T") for its failure to adequately secure and safeguard Plaintiffs' and approximately 73 million other individuals' personally identifying information ("PII"), including a person's full name, email address, mailing address, phone number, Social Security number, date of birth, and AT&T account number and password.

2.      AT&T is one of the largest telecommunications companies in the world and is the largest wireless carrier in the United States. It provides internet services and products, a mobile 5G network, and other telecommunications services and products to individuals and businesses

across the United States. To obtain AT&T services and products, customers are required to entrust AT&T with their PII and other private information, which AT&T uses to perform its regular business activities.

3.      Thus, AT&T maintains extensive files, servers, and networks containing its customers' PII, and owes these individuals an affirmative duty to adequately protect and safeguard this private information against theft, misuse, and unauthorized access and disclosure. Despite such duties created by statute, regulation, and common law, at all relevant times, AT&T utilized deficient data security practices thereby allowing tens of millions of persons' sensitive and private data to fall into the hands of strangers and criminals.

4.      Although AT&T's data systems were compromised at least as early as 2019,[1] it initially covered up the breach. Indeed, AT&T denied its systems had been breached or that customer data available on the dark web came from their systems in 2021, and did AT&T did not reveal the true scope of the data breach until April 2024

5.      The Data Breach was directly and proximately caused by AT&T's failure to implement basic, reasonable, and industry-standard data security practices necessary to protect their systems, software, and networks from a foreseeable and preventable cyberattack. Through this wrongful conduct, the sensitive PII of approximately 73 million individuals is now in the hands of cybercriminals, who target this sensitive data for its value to identity thieves. Plaintiffs and Class Members now must contend with the fallout from their PII and other private information being in the hands of unauthorized actors. They are now at a significantly increased and impending risk of fraud, identity theft, and similar forms of criminal mischief—risks which may last the rest

---

[1] https://www.nytimes.com/2024/03/30/business/att-passcodes-reset-data-breach.html      (last accessed 4/23/24)

of their lives. Indeed, because of AT&T's unreasonable delay in notifying Class Members of the breach, Class Members had no reason to take protective action between 2019 and April 2024. Consequently, Plaintiffs and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes. Moreover, Plaintiffs and Class Members have lost the inherent value of their private data.

6.      By aggregating information obtained from the Data Breach with other sources or other methods, criminals can assemble a full dossier of private information on an individual to facilitate a wide variety of frauds, thefts, and scams. Criminals can and do use victims' names and other personal information to open new financial accounts, incur credit charges, obtain government benefits and identifications, fabricate identities, and file fraudulent tax returns well before the person whose PII was stolen becomes aware of it. Any one of these instances of identity theft can have devastating consequences for the victim, causing years of often irreversible damage to their credit scores, financial stability, and personal security.

7.      Although Defendant has not yet disclosed how the 2019 Data Breach occurred, they should have been aware of the breach at least as early as 2021 when a credible threat actor claimed the theft of 73 million AT&T customer records. As proof, the hacker released a small sample of those records. Rather than take action to protect the 73 million customers who were now in danger, AT&T denied the breach happened and claimed that the data did not come from their systems.[2] Indeed, AT&T apparently claimed in 2021 that "we have no indications of a compromise of our systems. We determined in 2021 that the information offered on this online forum did not appear to have come from our systems."[3] In point of fact, it is exceedingly likely that the information first

---

[2] https://techcrunch.com/2024/03/30/att-reset-account-passcodes-customer-data/?guccounter=1
[3] https://techcrunch.com/2024/03/22/att-customers-data-leak-online/

exposed in 2021 came from AT&T systems and was indicative of the larger data breach. Defendant merely opted to ignore the severe and present threat.

8.      The data breach notice letter emails[4] subsequently issued by AT&T also obscure the true nature of the cyberattack and threat it posed—failing to adequately inform Plaintiffs and Class Members how many people were impacted, how the cybercriminals accessed AT&T's systems and the root cause of the Data Breach, whether all of the exfiltrated information was encrypted or anonymized, why it took so long for AT&T to determine PII had been compromised and then notify victims, whether AT&T or law enforcement have apprehended or even identified the hackers who accessed AT&T's systems, when the breach even first occurred, or what specific remedial steps AT&T has taken to safeguard PII within its systems and networks (or otherwise purge unnecessary information) and to prevent further cyberattacks going forward. Moreover, while the email does include a hyperlink to an AT&T webpage which indicates the compromised data was from 2019, it severely undersells the scale of the breach—only stating "We are reaching out to all 7.6M impacted customers"[5] without acknowledging that approximately 64 million *prior* customers were not impacted. It also fails to provide any more clarity on the type of data stolen or the other measures discussed above. Without these critical details, Plaintiffs and Class Members cannot meaningfully mitigate the resulting effects of the AT&T Data Breach.

9.      Plaintiffs Orejudos and Felix are both current or former AT&T customers and subscribers and are victims of the Data Breach.

10.     Plaintiffs, on behalf of themselves and all others similarly situated, herein allege claims for negligence, negligence *per se*, breach of contract, breach of implied contract, breach of

---

[4] Exhibit 1
[5] https://www.att.com/support/article/my-account/000101995

third-party beneficiary contract, unjust enrichment or quasi-contract, invasion of privacy, and declaratory and injunctive relief. Plaintiffs, on behalf of themselves and the Class, seek: (i) actual damages, economic damages, statutory damages, and nominal damages; (ii) punitive damages; (iii) fees and costs of litigation; (iv) injunctive relief, including the adoption of reasonably sufficient practices to safeguard PII in Defendant's custody, care, and control in order to prevent incidents like the Data Breach from recurring in the future and for AT&T to provide long-term identity theft protective services and credit monitoring to Plaintiffs and Class Members; and (v) such other relief as the Court deems just and proper.

## PARTIES

### A.   Plaintiffs

11.     Plaintiff Rachel Lee Orejudos is a resident and citizen of the State of Washington.

12.     Plaintiff Jean Felix is a resident and citizen of the State of New Jersey.

### B.   Defendant

13.     Defendant AT&T, Inc. is a telecommunications business organized and existing under the laws of the State of Delaware, with its principal place of business located at 208 S. Akard St., Dallas, Texas 75202. Defendant is a citizen of Texas. The registered agent for service of process is CT Corporation, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because at least one member of the putative Class, as defined below, is a citizen of a state other than that of Defendant, there are more than 100 putative Class Members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

15.     This Court has general personal jurisdiction over Defendant AT&T because it maintains its principal place of business in the Dallas Division of the Northern District of Texas and regularly conducts business in Texas, and has sufficient minimum contacts in Texas, such as to not offend traditional notions of fair play and substantial justice.

16.     Venue in the Dallas Division of the Northern District of Texas is proper under 28 U.S.C. § 1391(b) because Defendant AT&T resides in this District and a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, including AT&T collecting or storing the PII of Plaintiffs and the putative Class Members.

## FACTUAL BACKGROUND

### A.      Defendant AT&T Collects, Stores, and Maintains Huge Amounts of Sensitive Personally Identifiable Information

17.     AT&T is a major American telecommunications conglomerate. In connection with providing its telecommunications products and services, AT&T requires consumers to provide personal and private information, including, but not limited, to names, Social Security numbers, dates of birth, financial information, and security question answers. As a result, when consumers contract AT&T services, their highly sensitive PII is stored on AT&T's networks, servers, and systems. Moreover, AT&T continued to maintain and store this highly sensitive PII even long after a customer has ceased their business relationship with AT&T.

18.     AT&T understands that data cybersecurity is critical. It tells customers that "We take cybersecurity very seriously and privacy is a fundamental commitment at AT&T,"[6] AT&T goes on to explain that AT&T's separate Privacy 'Notice" claims that "We work hard to safeguard your information using technology controls and organizational controls. We protect our computer

---

[6] *See* https://www.att.com/support/article/my-account/000101995 (last accessed April 24, 2024)

storage and network equipment. We require employees to authenticate themselves to access sensitive data. We limit personal information to the people who need access for their jobs."[7]

19.     Despite these strong proclaimed proactive policies and approaches to data security and privacy for their customers and clients, AT&T failed to adequately secure, encrypt, and safeguard its systems, networks, servers, and software from a foreseeable and preventable cyberattack. This conduct proximately resulted in the Data Breach and significant harm to Plaintiffs and the Class.

**B.      Hackers Exploited AT&T's Vulnerabilities to Expose Valuable PII and Other Private Information in the Data Breach**

20.     AT&T collected and maintained Plaintiffs' and the Class's PII and other private information in their computer systems, servers, software, and networks. In accepting, collecting, and maintaining Plaintiffs' and the Class's PII, Defendant agreed that it would protect and safeguard that data by complying with state and federal laws and regulations and applicable industry standards. AT&T was in possession of Plaintiffs' and the Class's PII and other private information before, during, and after the Data Breach.

21.     At least as early as 2019, AT&T servers or those of AT&T partners had been breached and huge quantities of private information on AT&T customers was exfiltrated by hackers. This loss of sensitive private information on tens of millions of current and former customers was extreme and should never have been possible in a well-functioning security environment. Later, in 2021, AT&T was expressly warned that credible cyber-threat actors claimed to have data on more than 70 million AT&T customers and were offering to sell that data for high prices. The hackers even released a sample of the data. AT&T still continued to deny that its systems had been breached. It took until late March 2024, for AT&T to finally acknowledge

---

[7] https://about.att.com/privacy/privacy-notice.html (Last accessed April 24, 2024)

the major security breach of their systems and the exposure of the sensitive information for tens of millions of AT&T customers. This *five-year* lapse between breach and notification is unexplained and inexcusable.

22.     Despite Defendant's duties and commitments to safeguard sensitive and private information, AT&T failed to follow industry-standard practices in securing Plaintiffs' and the Class Members' PII and other private information, as evidenced by the Data Breach. Defendant has yet to announce how such a massive breach could occur undetected for so long, even in the face of years of warnings, but in any properly functioning security environment at the scale at which AT&T operates, such a breach, if it even occurred at all, should have been much smaller, limited in scope and scale, and detected far more quickly.

23.     In response to the Data Breach, AT&T required its customers to reset passwords and offered one year of credit monitoring services from Experian. AT&T has not disclosed what additional cybersecurity measures, if any, it has adopted in the wake of the Data Breach to prevent a similar event for occurring in the future. Additionally, although AT&T indicated that it notified federal law enforcement of the Data Breach, the Data Breach letters do not state whether the criminals responsible for the Data Breach have been identified or apprehended.

24.     As of April 10, 2024, AT&T reported to the Maine Attorney General's Office that the total number of persons affected by the Data Breach was 51,226,382.

25.     AT&T's Data Breach Letters reveal that a treasure trove of information from Plaintiffs and the Class was stolen in the cyberattack, including, at least: full names, email addresses, mailing addresses, phone numbers, Social Security numbers, dates of birth, AT&T account numbers, and AT&T passwords.

26.     Through its Data Breach notice letters to Plaintiffs and Class Members, AT&T also recognized the actual imminent harm and injury that flowed from the Data Breach by encouraging them to "remain vigilant by monitoring your personal accounts and credit reports for suspicious activity" incidents of fraud and identity theft by reviewing account statements and monitoring your credit reports."[8] Additionally, AT&T offered one year of credit monitoring and identity theft protection through Experian's IdentityWorks, further demonstrating they realized this breach puts AT&T customers, both current and former, at significant risk. However, the one year of protection is entirely insufficient as the fraudulent activity resulting from the Data Breach may not come to light for years. Thus, the risk of identity theft and unauthorized use of Plaintiffs' and Class Members' PII and other private information remains very high.

**C.**     **Telecommunications and Cloud Computing Companies Are Increasingly Susceptible to Data Breaches, Giving AT&T Ample Notice That It Was a Cyberattack Target**

27.     Large telecommunications and cloud computing companies like Defendant are well-aware of the numerous largescale data breaches that have occurred throughout the United States and internationally, and of their responsibility for safeguarding the PII and other private customer information in their possession. Such breaches have become frequent and widespread. Thus, at all relevant times, Defendant knew, or should have known, that the PII and other private information it was entrusted with was a target for malicious actors. In particular, Defendant knew the unique type and the significant volume of data on its networks, software, servers, and systems, comprising individuals' detailed and confidential personal information and, thus, the significant number of individuals who the exposure of the unencrypted data would harm. As custodian of Plaintiffs' and Class Members' PII, AT&T knew or should have known the importance of

---

[8] *See* Exhibit 2.

protecting their PII, and of the foreseeable consequences and harms to such persons if any data breach occurred.

28.    In 2023 alone, 3,205 data breaches occurred, resulting in over 353 million individuals' sensitive records in the United States being exposed.[9] The 3,205 reported data breaches are a sharp increase from 2022, when 1,802 data breaches occurred.[10] With the surging number of such attacks, AT&T should have known that they were at a high risk of a cyberattack and should have taken additional and stronger precautions and preemptive measures.

29.    Additionally, in light of recent high profile data breaches at other industry leading companies, including MOVEIt (90 million records, June 2023), LastPass/GoTo Technologies (30 million records, August 2022), Neopets (69 million records, July 2022), WhatsApp (500 million records, November 2022), Twitter (5.4 million records, July 2022), Cash App (8.2 million users, April 2022), LinkedIn (700 million records, April 2021), Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estée Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), Advanced Info Service (8.3 billion records, May 2020), and others, Defendant knew or should have known that the PII that they collected and maintained would also be specifically targeted by cybercriminals.

**D.    AT&T Breached Its Duties to Plaintiffs and the Class, and It Failed to Comply with Regulatory Requirements and Industry Best Practices**

30.    Because Defendant was entrusted with PII and other private information at all times herein relevant, AT&T owed to Plaintiffs and the Class a duty to exercise commercially reasonable

---

[9] Annual Number of Data Compromises and Individuals Impacted in the United States from 2005 to 2023, STATISTA, https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed/ (last visited Feb. 20, 2024).
[10] *See id.*

methods and care in handling, using, maintaining, storing, and safeguarding the PII in its care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that occurred, and to promptly detect and thwart attempts at unauthorized access to their networks and systems. Defendant also owed a duty to safeguard PII and other private information because it was on notice that it was handling highly valuable data and knew it was a significant risk it would be targeted by cybercriminals. Furthermore, AT&T knew of the extensive, foreseeable harm that would ensue for the victims of a data breach, and therefore also owed a duty to reasonably safeguard that information.

31.     Security standards commonly accepted among businesses like AT&T that store PII and other private information include, without limitation:

i.      Maintaining a secure firewall configuration;

ii.     Monitoring for suspicious or irregular traffic to servers or networks;

iii.    Monitoring for suspicious credentials used to access servers or networks;

iv.     Monitoring for suspicious or irregular activity by known users;

v.      Monitoring for suspicious or unknown users;

vi.     Monitoring for suspicious or irregular server requests;

vii.    Monitoring for server requests for PII or other private information;

viii.   Monitoring for server requests from VPNs; and

ix.     Monitoring for server requests for Tor exit nodes.

32.     The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity[11] and protection of PII which includes basic security standards applicable to all types of businesses.[12]

33.     The FTC recommends that businesses:

i.      Identify all connections to the computers where sensitive information is stored.

ii.     Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

iii.    Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

iv.     Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

v.      Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hacker attacks.

vi.     Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

---

[11] Start with Security: A Guide for Business, FTC (June 2015), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[12] Protecting Personal Information: A Guide for Business, FTC (Oct. 2016), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

vii.    Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

viii.   Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

ix.    Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business's network, the transmission should be investigated to make sure it is authorized.

34.    As described further below, Defendant owed a duty to safeguard PII and other private information under statute, including the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act"), to ensure that all information it received, maintained, and stored was secure. The FTC Act was enacted to protect Plaintiffs and the Class Members from the type of conduct in which Defendant engaged, and the resulting harms Defendant proximately caused Plaintiffs and the Class Members.

35.    Under the FTC Act, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII of Plaintiffs and Class Members.

13

36.     Defendant breached its duty to exercise reasonable care in protecting Plaintiffs' and Class Members' PII by failing to implement and maintain adequate data security measures to safeguard Plaintiffs' and Class Members' sensitive personal information, failing to encrypt or anonymize PII within their systems and networks, failing to monitor their systems and networks to promptly identify and thwart suspicious activity, failing to delete and purge PII no longer necessary for their provision of telecommunications and software services to their clients and customers, failing to timely act upon data security warnings and alerts in a timely manner, allowing unmonitored and unrestricted access to unsecured PII, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiffs' and Class Member's confidential and private information. Additionally, Defendant breached its duty by utilizing outdated and ineffectual data security measures which deviated from standard industry best practices at the time of the Data Breach. Industry best practices certainly at minimum should have detected the breach, or even prevented it altogether. AT&T further breached its duties to Plaintiffs and Class Members by failing to adequately investigate credible and, as it turns out, accurate reports that vast quantities of AT&T customer data was compromised as early as 2021. The delay in notification and reasonable follow up is inexcusable and directly harmed current and former customers.  Through these actions, AT&T also violated their duties under the FTC Act.

37.     Defendant failed to prevent the Data Breach. Had AT&T properly maintained and adequately protected their software, systems, servers, and networks, the Data Breach would not have occurred.

38.     Additionally, the law imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of PII to Plaintiffs and Class Members so that they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future

misuses of their private information. AT&T further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and Class Members. In so doing, Defendant actually and proximately caused and exacerbated the harm from the Data Breach and the injuries-in-fact of Plaintiffs and Class Members.

39.     At all relevant times, Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII.

E.     **The Experiences of Plaintiffs Orejudos and Felix**

40.     In the course of using AT&T's services, Plaintiffs Orejudos and Felix were required to provide their PII and other private information to Defendant, including their names, Social Security numbers, dates of birth, contact information, account creation details, and financial information. Plaintiffs Orejudos and Felix are Data Breach victims. Their PII and other private information was among the data accessed by unauthorized third parties in the Data Breach.

41.     Following the Data Breach, Orejudos and Felix have already experienced suspicious activity on their various accounts and instances of fraud.

42.     For at least the past year Plaintiff Orejudos has experienced a major influx of spam emails, which prompted her to take several sercurity measures including changing her passwords. On April 1, 2024, Orejudos was alerted by her existing identity protection services through Experian that her email address and her full social security number were both present on the dark web. The identity protection service also informed her that the cause of the compromised personal information was the AT&T data breach. Plaintiff Orejudos is unsure what other personal information may be in the hands of cyber-criminals or how long they may have had access to this highly sensitive information.

43.     Plaintiff Felix has received repeated notifications of people hacking her email and purchasing services on her behalf. She also is aware that several people have apparently applied for loans in her name. As a result, she recently obtained a credit freeze from all three credit bureaus recently.

44.     Orejudos has and is experiencing stress, fear, and must remain on high alert for future data security incidents, as a consequence of her private information being compromised in the Data Breach. Her anxiety noticeably increased after the breach, she regularly thinks about the risk from her Social Security number being on the dark web, and she routinely calls and checks her information now out of fear her information may be used against her. Likewise, Felix has and is experiencing anxiety, stress, and frustration because her sensitive information was stolen in the Data Breach and in dealing with resulting increase in spam and fraud attempts. This goes beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that the law contemplates and addresses.

45.     Orejudos and Felix suffered actual injuries in the form of damages to and diminution in the value of their PII—a form of intangible property was entrusted to AT&T, which was compromised in and as a proximate result of the Data Breach.

46.     Orejudos and Felix have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse proximately resulting from their PII and other private information being obtained by unauthorized third parties and possibly cybercriminals.

47.     Orejudos and Felix have a continuing interest in ensuring that their PII and other private information, which remains within Defendant's possession and control, is protected and safeguarded against future data breaches and other cybersecurity risks.

48.     Defendant deprived Orejudos and Felix of the earliest opportunity to guard themselves against the Data Breach's harmful effects by failing to promptly notify them about it. Their data was breached at least as early as 2019, and AT&T was on notice that the information was appearing on the dark web at least as early as 2021. Instead, AT&T **denied** that the 2021 breached data actually came from them and waited **three more years** before informing customers their data was compromised. **Five years passed between the breach and disclosure of the breach**.

F.   **Plaintiffs Orejudos and Felix and the Class Suffered Actual and Impending Injuries Resulting from the Data Breach**

49.     As a proximate result of Defendant's completely unreasonable security practices, identity thieves now possess the sensitive PII of Orejudos, Felix, and the Class. Private information is valuable property. Once stolen, PII can be used in a number of different malicious ways. That information is extraordinarily valuable on the black market and incurs direct costs to Orejudos, Felix, and the Class. Indeed, the link between a data breach and risk of identity theft is simple, well-established, and strong. On the dark web—an underground Internet black market—criminals openly buy and sell stolen PII to create "identity kits" worth up to $2,000 each that can be used to create fake IDs, gain access to bank accounts, social media accounts, and credit cards, file false insurance claims or tax returns, or rack up other kinds of expenses.[13] And, "[t]he damage to affected [persons] may never be undone."[14]

50.     Unlike the simple credit-card breaches at retail merchants, these damages cannot be avoided by canceling and reissuing plastic cards or closing an account. Identity theft is far more

---

[13] Nick Culbertson, *Increased Cyberattacks on Healthcare Institutions Shows the Need for Greater Cybersecurity* (Jun. 7, 2021), FORBES, https://www.forbes.com/sites/forbestechcouncil/2021/06/07/    increased-cyberattacks-on-healthcare-institutions-shows-the-need-for-greater-cybersecurity/?sh= ca928c05650d.

[14] *Id.*

pernicious than credit card fraud. Criminals' ability to open entirely new accounts—not simply prey on existing ones—poses far more dangerous problems. Identity thieves can retain the stolen information for years until the controversy has receded because victims may become less vigilant in monitoring their accounts as time passes. Then, at any moment, the thief can take control of a victim's identity, resulting in thousands of dollars in losses and lost productivity. The U.S. Department of Justice has reported that in 2021, identity theft victims spent on average about four hours to resolve problems stemming therefrom and that the average financial loss experienced by an identity theft victim was $1,160 per person.[15] Additionally, about 80% of identity theft victims reported some form of emotional distress resulting from the incident.[16]

51.     Social Security numbers are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult to change. The Social Security Administration stresses that the loss of an individual's Social Security number can lead to identity theft and extensive financial fraud:

> Identity theft is one of the fastest growing crimes in America. A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, when they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought.
>
> Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[17]

---

[15] Erika Harrell and Alexandra Thompson, Victims of Identity Theft, 2021, U.S. DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, BUREAU OF STATISTICS (Oct. 2023), *available at* https://bjs.ojp.gov/document/vit21.pdf.

[16] *Id.*

[17] Identity Theft and Your Social Security Number, U.S. SOCIAL SECURITY ADMINISTRATION (July 2021), *available at* https://www.ssa.gov/pubs/EN-05-10064.pdf.

52.     Even when an injured person successfully goes through the cumbersome and time-consuming process of changing their Social Security number following identity theft, the Social Security Administration cautions individuals to "[k]eep in mind that a new number probably won't solve all your problems" and "can't guarantee you a fresh start."[18]

53.     Class Members' credit profiles can be destroyed before they even realize what happened, and they may be unable to legitimately borrow money, obtain credit, or open bank accounts. Class Members can be deprived of legitimate tax refunds or, worse yet, may face state or federal tax investigations due to fraud committed by an identity thief. And even the simple preventive step of adding oneself to a credit-fraud watch list to guard against these consequences substantially impairs Class Members' ability to obtain additional credit. In fact, many experts advise victims to place a freeze on all credit accounts, making it impossible to rent a car, get student loans, buy or rent big-ticket items, or complete a major new car or home purchase.

54.     Additionally, Class Members will spend significant amounts of time on a variety of prudent actions to remedy the harms they have or may experience as a result of the Data Breach and in navigating its effects.

55.     AT&T's data breach notices provide entirely inadequate compensation or relief to affected persons for its wrongful conduct and actions described herein. After a severe cybersecurity incident such as the one perpetrated here, the breached company typically offers years-long free identity protection services and credit monitoring to affected individuals. AT&T's belated offer of a single year of identity monitoring and protection services **at least five years after the breach first occurred** is too little, too late.

---

[18] *Id.*

## CLASS ACTION ALLEGATIONS

56.     Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiffs

seek certification of the following nationwide class (the "Nationwide Class" or the "Class"):

> All persons whose PII was compromised in the Data Breach announced by
> AT&T in March 2024, including all persons who were sent a notice of the
> Data Breach (and each person a "Class Member").

57.     Excluded from the Nationwide Class are governmental entities, Defendant, any

entity in which Defendant have a controlling interest, and Defendant's officers, directors, affiliates,

legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also

excluded from the Nationwide Class are any judges, justices, or judicial officers presiding over

this matter and the members of their immediate families and judicial staff.

58.     This action is brought and may be properly maintained as a class action pursuant to

Fed. R. Civ. P. 23(b)(2) and 23(b)(3), and satisfies the numerosity, commonality, typicality,

adequacy, predominance, and superiority requirements of these rules.

59.     *Numerosity Under Rule 23(a)(1)*. The Nationwide Class is so numerous that the

individual joinder of all members is impracticable, and the disposition of the claims of all members

of the Nationwide Class in a single action will provide substantial benefits to the parties and the

Court. Although the precise number of members of the Nationwide Class is unknown to Plaintiffs

at this time, on information and belief, the proposed Nationwide Class contains at least 51,226,382

individuals, as reported to the Maine Attorney General's Office on April 10, 2023. Discovery will

reveal, through AT&T's records, the number of members of the Nationwide Class.[19]

---

[19] Note that the 51 million number is likely a low estimate. Multiple media reports, including statements by AT&T itself, indicate approximately 73 million accounts were impacted. *See* https://techcrunch.com/2024/03/30/att-reset-account-passcodes-customer-data/?guccounter=1 (Last accessed April 24, 2024)

60.    _Commonality Under Rule 23(a)(2)_. Common legal and factual questions exist that predominate over any questions affecting only individual members of the Nationwide Class. These common questions, which do not vary among members of the Nationwide Class and which may be determined without reference to any Nationwide Class Member's individual circumstances, include, but are not limited to:

a.      Whether Defendant knew or should have known that their computer systems, software, servers, and networks were vulnerable to unauthorized third-party access or a cyberattack;

b.      Whether Defendant failed to utilize and maintain adequate and reasonable security and preventive measures to ensure that their computer systems, software, servers, and networks were protected;

c.      Whether Defendant failed to take reasonably available steps to prevent and stop the Data Breach from occurring;

d.      Whether Defendant acted negligently in failing to "patch" the vulnerability when they first received notice thereof or adequately addressed and fixed the vulnerabilities that caused the Data Breach;

e.      Whether Defendant owed a legal duty to Plaintiffs and Class Members to protect their PII and other private information;

f.      Whether Defendant breached any duty to protect the PII of Plaintiffs and Class Members by failing to exercise due care in protecting their sensitive and private information;

g.      Whether Defendant provided timely, accurate, and sufficient notice of the Data Breach to Plaintiffs and the Class Members;

h.      Whether Plaintiffs and Class Members have been damaged by the wrongs alleged and are entitled to actual, statutory, or other forms of damages and other monetary relief; and

i.      Whether Plaintiffs and Class Members are entitled to injunctive or equitable relief, including restitution.

61.     *Typicality Under Rule 23(a)(3)*. Plaintiffs' claims are typical of the claims of the Nationwide Class. Orejudos and Felix, like all proposed members of the Class, had their PII compromised in the Data Breach. Defendant's uniformly unlawful course of conduct injured Orejudos and Felix, and Class Members in the same wrongful acts and practices. Likewise, Orejudos and Felix, and other Class Members must prove the same facts in order to establish the same claims.

62.     *Adequacy of Representation Under Rule 23(a)(4)*. Orejudos and Felix are adequate representatives of the Nationwide Class because they are Nationwide Class Members and their interests do not conflict with the interests of the Nationwide Class. Orejudos and Felix have retained counsel competent and experienced in complex litigation and consumer protection class action matters such as this action, and Orejudos and Felix and their counsel intend to vigorously prosecute this action for the Nationwide Class's benefit and have the resources to do so. Orejudos and Felix and their counsel have no interests adverse to those of the other members of the Nationwide Class.

63.     *Predominance and Superiority*. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of each Nationwide Class Member's claim is impracticable. The damages, harm, and losses suffered by the individual members of the Nationwide Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful

conduct. Even if each Nationwide Class Member could afford individual litigation, the Court system could not. It would be unduly burdensome if tens of thousands of individual cases or more proceeded. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those individuals with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the Courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

64.     As a result of the foregoing, class treatment under Fed. R. Civ. P. 23(b)(2) and (b)(3) is appropriate.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Negligence
### *(On Behalf of Plaintiffs and the Nationwide Class Against Defendant AT&T)*

65.     Plaintiffs incorporate by reference and reallege paragraphs 1-64 as if fully set forth herein.

66.     In the course of providing telecommunications and cloud computing services to its clients and customers, Defendant solicited, gathered, and stored the PII of Plaintiffs and Class Members. Because Defendant was entrusted with such PII at all times herein relevant, AT&T owed to Plaintiffs and the Class a duty to exercise commercially reasonable methods and care in handling, using, maintaining, storing, and safeguarding the PII in its care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that occurred, and to promptly

detect and thwart attempts at unauthorized access to their networks and systems. This duty arose independently from any contract.

67.     Defendant knew, or should have known, of the risks inherent in collecting and storing massive amounts of PII, including the importance of adequate data security and the high frequency of cyberattacks and well-publicized data breaches. AT&T owed duties of care to Plaintiffs and Class Members because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that sensitive information. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and the Class's PII by failing to limit access to this information to unauthorized third parties and by not properly supervising both the way the PII was stored, used, and exchanged, and those in their employ responsible for such tasks.

68.     Moreover, Defendant acted with extraordinary negligence when it unreasonably delayed informing Plaintiffs and the Class of the data breach. The data breach occurred at least as early as 2019. In 2021 a well-known threat actor claimed to be selling an AT&T database containing the personal information on more than 70 million customers. Rather than respond to the serious threat posed by this data breach, AT&T denied that their systems had actually been compromised. It would take ***three more years*** for AT&T to acknowledge the scale and scope of the data breach and belatedly notify Plaintiffs and the Class of their exposure.

69.     Defendant owed to Plaintiffs and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. AT&T also owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and circumstances of the Data Breach. This duty is required and necessary for Plaintiffs and the Class to take appropriate

measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach. AT&T has yet to disclose the cause and nature of the data breach or remediation for the five-year delay in notification.

70.     Defendant also had a common law duty to prevent foreseeable harm to others. Defendant had full knowledge of the sensitivity and high value of the PII that it stored and the types of foreseeable harm and injury-in-fact that Plaintiffs and Class Members could and would suffer if that PII were wrongfully disclosed, leaked, accessed, or exfiltrated. Defendant's conduct created a foreseeable and unreasonable risk of harm to Plaintiffs and Class Members, who were the foreseeable victims of Defendant's inadequate data security practices.

71.     Defendant violated its duties to implement and maintain reasonable security procedures and practices, including failure to promptly implement sufficient security measures for its networks, servers, and files that held tens millions of individuals' PII or encrypt or anonymize such data. Defendant's duties included, among other things, designing, maintaining, and testing Defendant's information security controls to ensure that PII in their possession was adequately secured by, for example, encrypting or anonymizing sensitive personal information, installing intrusion detection and deterrent systems and monitoring mechanisms, and using access controls to limit access to sensitive data.

72.     Defendant's duties of care also arose by operation of statute. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII of Plaintiffs and Class Members.

73.     The FTC Act was enacted to protect Plaintiffs and the Class Members from the type of wrongful conduct in which Defendant engaged.

74.     Defendant breached their duties to exercise reasonable care in protecting Plaintiffs' and Class Members' PII by failing to implement and maintain adequate data security measures to safeguard Plaintiffs' and Class Members' sensitive personal information, failing to encrypt or anonymize PII within their systems and networks, failing to monitor its systems and networks to promptly identify and thwart suspicious activity, failing to delete and purge PII no longer necessary for the provision of telecommunications services to their clients and customers, allowing unmonitored and unrestricted access to unsecured PII, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiffs' and Class Member's confidential and private information. Additionally, Defendant breached its duties by utilizing outdated and ineffectual data security measures which deviated from standard industry best practices at the time of the Data Breach. Through these actions, Defendant also violated their duties under the FTC Act.

75.     The law imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of PII to Plaintiffs and Class Members so that they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuses of their private information. AT&T clearly breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and Class Members until five years after the breach itself and at least three years after cyber-criminals reported they had obtained, and began selling, the private information. In so doing, Defendant actually and proximately caused and exacerbated the harm from the Data Breach and the injuries-in-fact of Plaintiffs and Class Members. Timely disclosure was necessary so that Plaintiffs and Class Members could, among other things: (i) purchase identity theft protection, monitoring, and recovery services; (ii) flag asset, credit, and tax accounts for fraud; (iii) purchase or otherwise obtain credit reports; (iv) place or renew fraud alerts on a quarterly basis; (v) closely monitor loan data and public records; (vi)

change or update passwords on their various accounts; and (vii) take other meaningful steps to protect themselves and attempt to avoid or recover from identity theft and other harms.

76.     AT&T has a market cap of over $120 billion and earned over $122 billion in revenue in 2023. Accordingly, Defendant had the financial and personnel resources necessary to deploy robust cybersecurity protocols and controls, and to prevent the Data Breach. AT&T nevertheless failed to adopt reasonable data security measures, in breach of the duties they owed to Plaintiffs and Class Members. Moreover, AT&T's resources were even more significant at the time of the data breach in 2019. In 2019, AT&T had a market cap of approximately $283.5 billion and had consolidated revenues of approximately $181.2 billion. At all times, AT&T had more than sufficient resources to prevent and remediate the data breach.

77.     Plaintiffs and Class Members had no ability to protect their PII once it was in Defendant's possession and control. Defendant was in an exclusive position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

78.     But for Defendant's breach of their duties to adequately protect Class Members' PII, Class Members' PII would not have been stolen. As a result of Defendant's negligence, Plaintiffs and Class Members suffered and will continue to suffer the various types of damages alleged herein. There is a temporal and close causal connection between Defendant's failure to implement adequate data security measures, the Data Breach, and the harms suffered by Plaintiffs and Class Members.

79.     As a direct and traceable result of Defendant's negligence, Plaintiffs and the Class have suffered or will suffer an increased and impending risk of fraud, identity theft, damages, embarrassment, humiliation, frustration, emotional distress, and lost time and out-of-pocket costs to mitigate and remediate the effects of the Data Breach. These harms to Plaintiffs and the Class

include, without limitation: (i) loss of the opportunity to control how their personal information is used; (ii) diminution in the value and use of their personal information entrusted to Defendant; (iii) the compromise and theft of their personal information; (iv) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and unauthorized use of financial accounts; (v) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including increased costs to use credit, credit scores, credit reports, and assets; (vi) unauthorized use of compromised personal information to open new financial and other accounts; (vii) continued risk to their personal information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fail to undertake appropriate and adequate measures to protect the personal information in their possession; and (viii) future costs in the form of time, effort, and money they will expend to prevent, detect, contest, and repair the adverse effects of their personal information being stolen in the Data Breach.

80.    Defendant's negligence was gross, willful, wanton, and warrants the imposition of punitive damages given the clear foreseeability of a hacking incident, the extreme sensitivity of the private information under Defendant's care, and its failure to take adequate remedial steps, including prompt notification of the victims, following the Data Breach.

81.    Plaintiffs and Class Members are entitled to all forms of monetary compensation set forth herein, including monetary payments to provide adequate long-term identity protection services. Plaintiffs and Class Members are also entitled to the injunctive relief sought herein.

**SECOND CAUSE OF ACTION**
**Negligence *Per Se***
***(On Behalf of Plaintiffs and the Nationwide Class Against Defendant AT&T)***

82.    Plaintiffs incorporate by reference and reallege paragraphs 1-64 as if fully set forth herein.

83.     Pursuant to the FTC Act, 15 U.S.C. § 45, AT&T had a duty to maintain fair and adequate computer systems and data security practices to safeguard Plaintiffs' and the Class's PII.

84.     Section 5 of the FTC Act prohibits "unfair … practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duties to protect Plaintiffs' and the Class Members' PII.

85.     Defendant's duties to use reasonable care in protecting confidential and sensitive data arose not only as a result of the statutes and regulations described above, but also because Defendant are bound by industry standards to protect confidential PII.

86.     Defendant violated their duties under Section 5 of the FTC Act by failing to use reasonable or adequate data security practices and measures to protect Plaintiffs' and the Class's PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII that AT&T collected and stored and the foreseeable consequences of a cybersecurity data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

87.     The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

88.     But for Defendant's wrongful and negligent breach of the duties owed to Plaintiffs and Class Members, Plaintiffs and the Class Members would not have been injured.

89.     The injuries and harms suffered by Plaintiffs and the Class Members were the reasonably foreseeable result of Defendant's breach of their duties. AT&T knew or should have known that they were failing to meet their duties and that their breach would cause Plaintiffs and the Class Members to suffer the foreseeable harms associated with the exposure of their PII.

90.     Defendant's various violations and its failure to comply with the applicable laws and regulations referenced above constitutes negligence *per se*.

91.     As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII, entitling them to damages in an amount to be proven at trial.

92.     Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class Members have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as AT&T fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

### THIRD CAUSE OF ACTION
### Breach of Implied Contract
### *(On Behalf of Plaintiffs and the Nationwide Class Against Defendant AT&T)*

93.     Plaintiffs incorporate by reference and reallege paragraphs 1-64 as if fully set forth herein.

94.     Plaintiffs and Class Members were required to provide their PII and other private information to AT&T as a condition to receiving AT&T's services and products.

95.     As part of these transactions, AT&T agreed to safeguard and protect the PII and

other private information of Plaintiffs and Class Members. Implicit in these transactions between AT&T, Plaintiffs, and Class Members was the obligation that AT&T would use the PII and other private information only for approved business purposes and would not make unauthorized disclosures of the information or allow unauthorized access to the information.

96.     Additionally, AT&T implicitly promised to retain this PII and other private information only under conditions that kept such information secure and confidential and therefore had a duty to reasonably safeguard and protect the PII of Plaintiffs and Class Members from unauthorized disclosure or access.

97.     Plaintiffs and Class Members entered into implied contracts with the reasonable expectation that AT&T's data security practices and policies were reasonable and consistent with industry standards. Plaintiffs and Class Members believed that AT&T would use part of the monies paid to AT&T under the implied contracts to fund adequate and reasonable data security practices to protect their PII and other private information.

98.     Plaintiffs and Class Members would not have provided and entrusted their PII and other private information to AT&T or would have paid less for AT&T's services and products in the absence of the implied contract between them and AT&T. The safeguarding of Plaintiffs' and Class Members' PII and other private information was critical to realizing the intent of the parties.

99.     The nature of AT&T's implied promise itself—the subject matter of the contractual provision at issue—was to protect Plaintiffs' and Class Members' PII and other private information in order to prevent harm and prevent present and continuing increased risk.

100.     AT&T breached its implied contracts with Plaintiffs and Class Members by failing to reasonably safeguard and protect Plaintiffs' and Class Members' PII and other private information, which was compromised as a result of the Data Breach. AT&T further breached these

implied contracts by failing to provide Plaintiffs and Class Members with timely and accurate notice of the Data Breach.

101.    Plaintiffs and Class Members fully performed their obligations under their implied contracts with AT&T.

102.    As a direct and proximate result of AT&T's breaches, Plaintiffs and Class Members sustained actual losses and damages as alleged herein, including that they did not receive the benefits of the bargains for which they paid. Plaintiffs and Class Members alternatively seek an award of nominal damages.

**FIFTH CAUSE OF ACTION**
**Invasion of Privacy**
***(On Behalf of Plaintiffs and the Nationwide Class Against Defendant)***

103.    Plaintiffs incorporate by reference and reallege paragraphs 1-64 as if fully set forth herein.

104.    Plaintiffs and Class Members have a legally protected privacy interest in their PII, which is and was collected, stored, and maintained by Defendant, and they are entitled to the reasonable and adequate protection of their PII against foreseeable unauthorized access, as occurred with the Data Breach.

105.    Plaintiffs and Class Members reasonably expected that Defendant would protect and secure their PII from unauthorized parties and that their private information would not be accessed, exfiltrated, and disclosed to any unauthorized parties or for any improper purpose.

106.    AT&T unlawfully invaded the privacy rights of Plaintiffs and Class Members by engaging in the wrongful conduct described above, including by failing to protect their PII by permitting unauthorized third parties to access, exfiltrate, and view this private information. Likewise, AT&T further invaded the privacy rights of Plaintiffs and Class Members, and permitted cybercriminals to invade the privacy rights of Plaintiffs and Class Members, by unreasonably and

intentionally delaying disclosure of the Data Breach, including falsely denying the data breach had even occurred in the first place three years ago, and failing to properly identify what PII had been accessed, exfiltrated, and viewed by unauthorized third parties.

107.    This invasion of privacy resulted from Defendant's failure to properly secure and maintain Plaintiffs' and the Class Members' PII, leading to the foreseeable unauthorized access, exfiltration, and disclosure of this unguarded data.

108.    Plaintiffs' and the Class Members' PII is the type of sensitive, personal information that one normally expects will be protected from exposure by the very entity charged with safeguarding it. Further, the public has no legitimate concern in Plaintiffs' and the Class Members' PII, and such private information is otherwise protected from exposure to the public by various statutes, regulations, and other laws.

109.    The disclosure of Plaintiffs' and the Class Members' PII to unauthorized parties is substantial and unreasonable enough to be legally cognizable and is highly offensive to a reasonable person.

110.    Defendant's willful and reckless conduct which permitted unauthorized access, exfiltration and disclosure of Plaintiffs' and the Class Members' sensitive PII is such that it would cause serious mental injury, shame, embarrassment, or humiliation to people of ordinary sensibilities.

111.    The unauthorized access, exfiltration, and disclosure of Plaintiffs' and the Class Members' PII was without their consent, and in violation of various statutes, regulations, and other laws.

112.    As a result of the invasion of privacy caused by Defendant, Plaintiffs and the Class Members suffered and will continue to suffer damages and injuries as set forth herein.

113.    Plaintiffs and the Class Members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution, injunctive relief, reasonable attorneys' fees and costs, and any other relief that the Court deems just and proper.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment / Quasi-Contract
#### *(On Behalf of Plaintiffs and the Nationwide Class Against Defendant AT&T)*

114.    Plaintiffs incorporate by reference and reallege paragraphs 1-64 as if fully set forth herein.

115.    A monetary benefit was directly and indirectly conferred upon Defendant through their receipt of Plaintiffs' and Class Members' PII, which AT&T used to facilitate the provision of telecommunications services. Defendant appreciated or had knowledge of these benefits conferred upon them by Plaintiffs and the Class. Indeed, AT&T continued to utilize and store this information even long after certain members of the class had ceased to be AT&T customers.

116.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full monetary value of the benefits because AT&T failed to adequately protect Plaintiffs' and Class Members' PII.

117.    Plaintiffs and the Class Members have no adequate remedy at law. Defendant continues to retain their PII while exposing this sensitive and private information to a risk of future data breaches while in Defendant's possession. Defendant also continues to derive a financial benefit from using Plaintiffs' and Class Members' PII.

118.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs and the Class Members have suffered various types of damages alleged herein.

119.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class Members all unlawful or inequitable proceeds received by them because of their misconduct described herein and the Data Breach.

## SEVENTH CAUSE OF ACTION
### Injunctive / Declaratory Relief
### *(On Behalf of Plaintiffs and the Nationwide Class Against Defendant AT&T)*

120.    Plaintiffs incorporate by reference and reallege paragraphs 1-64 as if fully set forth herein.

121.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described herein.

122.    Defendant owes a duty of care to Plaintiffs and Class Members, which required AT&T to adequately monitor and safeguard Plaintiffs' and Class Members' PII.

123.    Defendant and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns still possess the PII belonging to Plaintiffs and Class Members.

124.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiffs' and Class Members' PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs and Class Members from further data breaches that may compromise their PII. Plaintiffs allege that Defendant's data security measures remain inadequate. Furthermore, Plaintiffs and the Class continue to suffer injury as a result of the compromise of their PII and the risk remains that further compromises of their private information will occur in the future.

125.    Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

　　　　a.     Defendant owes a legal duty to adequately secure the PII of Plaintiffs and the Class within their care, custody, and control under the common law and Section 5 of FTC Act;

b.      Defendant breached its duties to Plaintiffs and the Class by allowing the Data Breach to occur;

c.      Defendant's existing data monitoring measures do not comply with their obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect the PII of Plaintiffs and the Class within Defendant's custody, care, and control; and

d.      Defendant's ongoing breaches of said duties continue to cause harm to Plaintiffs and the Class.

126.    This Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with telecommunications and cloud computing industry standards to protect the PII of Plaintiffs and the Class within their custody, care, and control, including the following:

a.      Order Defendant to provide lifetime credit monitoring and identity theft insurance and protection services to Plaintiffs and Class Members; and

b.      Order that, to comply with Defendant's obligations and duties of care, AT&T must implement and maintain reasonable security and monitoring measures, including, but not limited to:

a.      Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems, networks, and servers on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

ii.     Encrypting and anonymizing the existing PII within their servers, networks, and systems to the extent practicable, and purging all such information which is no

longer reasonably necessary for Defendant to provide adequate telecommunications services to its clients and customers;

        iii.     Engaging third-party security auditors and internal personnel to run automated security monitoring;

        iv.     Auditing, testing, and training their security personnel regarding any new or modified procedures;

        v.     Segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems, networks, and servers;

        vi.     Conducting regular database scanning and security checks; and

        vii.     Routinely and continually conducting internal training and education to inform Defendant's internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

127.    If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach or cybersecurity incident. This risk is real, immediate, and substantial. If another AT&T data breach or cybersecurity incident occurs, Plaintiffs and the Class will not have an adequate remedy at law because monetary relief alone will not compensate Plaintiffs and the Class for the serious risks of future harm.

128.    The hardship to Plaintiffs and the Class if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Plaintiffs and the Class will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Defendant's compliance with an injunction requiring reasonable

prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

129.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent AT&T data breach or cybersecurity incident, thus preventing future injury to Plaintiffs and the Class and other persons whose PII would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class set forth herein, respectfully request the following relief:

A.    Certifying this action as a class action under Fed. R. Civ. P. 23 and appointing Plaintiffs and their counsel to represent the Class;

B.    Entering judgment for Plaintiffs and the Class;

C.    Granting permanent and appropriate injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein and directing Defendant to adequately safeguard the PII of Plaintiffs and the Class by implementing improved security controls;

D.    Awarding compensatory, consequential, and general damages, including nominal damages as appropriate, as allowed by law in an amount to be determined at trial;

E.    Award statutory or punitive damages and penalties as allowed by law in an amount to be determined at trial;

F.    Ordering disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendant as a result of Defendant's unlawful acts, omissions, and practices;

G.      Awarding to Plaintiffs and Class Members the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

H.      Awarding pre- and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper; and

I.      Granting such further and other relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

Dated:  May 6, 2024               Respectfully submitted,

*/s/ Joe Kendall*
JOE KENDALL
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
Telephone:  214/744-3000 / 214/744-3015 (fax)
jkendall@kendalllawgroup.com

Amber L. Schubert (*pro hac vice* forthcoming)
**SCHUBERT JONCKHEER & KOLBE LLP**
2011 Union St., Suite 200
San Francisco, CA 94123
Telephone:     (415) 788-4220
Facsimile:     (415) 788-0161
E-mail:        aschubert@sjk.law

***Attorneys for Plaintiffs and the Proposed Class***

# EXHIBIT 1

AT&T

View online

# AT&T Security Update

**Hello,**

We're contacting you regarding the security of your data. After a thorough assessment, AT&T has determined that some of your personal information was compromised. To the best of our knowledge, the compromised data does **not** include personal financial information or call history.

**What is AT&T doing to help?**

AT&T takes these issues very seriously. We are offering you one year of complimentary credit monitoring, identity theft detection and resolution services, provided by Experian's® IdentityWorks℠. To get started with IdentityWorks℠, please follow the instructions below and **enroll by August 30, 2024.**

**Where can you get more information?**

Visit att.com/accountsafety for more details.

We apologize this has happened.

AT&T

**Experian's® IdentityWorks℠**

AT&T is providing you with an IdentityWorks℠ membership at no charge. After you complete registration, you'll have increased visibility into potential fraudulent activity. You will also have an insurance policy of up to $1,000,000 in coverage should you experience identity theft and an Identity Restoration team to guide you through the recovery process.

To activate your membership and start monitoring your personal information, please follow the steps below:

• **Enroll** by August 30, 2024 (Your code will not work after this date.)

• **Go** to the Experian® IdentityWorks℠ website and select 'Get Started'

• **Enter** your activation code: **K9Y6B3Y9PM**

If you have questions about the product, need assistance with identity restoration or would like an alternative to enrolling in Experian® IdentityWorks℠ online, please contact Experian's customer care team at 833.931.4853 by **August 30, 2024**. Be prepared to provide this engagement number **(B119859)** as proof of eligibility for the identity restoration services provided by Experian.

---

My Account

---

Help Center

---

Terms of Use

---

Contact Us

To ensure the delivery of AT&T emails to your inbox, please add att@message.att-mail.com to your email address book or safe senders list.

View AT&T's Privacy Policy.

© **2024 AT&T Intellectual Property.** All rights reserved. AT&T, the AT&T logo, all other AT&T marks contained herein are trademarks of AT&T Intellectual Property and/or AT&T affiliated companies. All other marks are the property of their respective owners.

A2837837 | A000000030

AT&T

View online

# AT&T Security Update

**Hello,**

We're contacting you regarding the security of your data. After a thorough assessment, AT&T has determined that some of your personal information was compromised. To the best of our knowledge, the compromised data does **not** include personal financial information or call history.

**What is AT&T doing to help?**
AT&T takes these issues very seriously. We are offering you one year of complimentary credit monitoring, identity theft detection and resolution services, provided by Experian's® IdentityWorks℠. To get started with IdentityWorks℠, please follow the instructions below and **enroll by August 30, 2024.**

**Where can you get more information?**
Visit att.com/accountsafety for more details.

We apologize this has happened.

AT&T

**Experian's® IdentityWorks℠**

AT&T is providing you with an IdentityWorks℠ membership at no charge. After you complete registration, you'll have increased visibility into potential fraudulent activity. You will also have an insurance policy of up to $1,000,000 in coverage should you experience identity theft and an Identity Restoration team to guide you through the recovery process.

**Page 2 of 3**

To activate your membership and start monitoring your personal information, please follow the steps below:

- **Enroll** by August 30, 2024 (Your code will not work after this date.)
- **Go** to the Experian® IdentityWorks℠ website and select 'Get Started'
- **Enter** your activation code: **YG6ZD4SFWB**

If you have questions about the product, need assistance with identity restoration or would like an alternative to enrolling in Experian® IdentityWorks℠ online, please contact Experian's customer care team at 833.931.4853 by **August 30, 2024**. Be prepared to provide this engagement number **(B119859)** as proof of eligibility for the identity restoration services provided by Experian.

---

My Account  |  Help Center  |  Terms of Use  |  Contact Us

To ensure the delivery of AT&T emails to your inbox, please add att@message.att-mail.com to your email address book or safe senders list.

View AT&T's Privacy Policy.

© **2024 AT&T Intellectual Property.** All rights reserved. AT&T, the AT&T logo, all other AT&T marks contained herein are trademarks of AT&T Intellectual Property and/or AT&T affiliated companies. All other marks are the property of their respective owners.

A2837837 | A000000030

# EXHIBIT 2



[LETTERHEAD]
[ADDRESS]

**NOTICE OF DATA BREACH**

April XX, 2024

Dear [Name]:

At AT&T, we take the security of your data very seriously.  We're writing to inform you that AT&T has determined that some of your personal information was compromised.  To help protect your identity, we're offering you one year of complimentary credit monitoring, identity theft detection and resolution services provided by Experian's® IdentityWorks<sup>SM</sup>.  **While this service is free, you must follow the enclosed instructions to enroll.**

**What happened?**  On March 26, 2024, we determined that AT&T customer information was included in a dataset released on the dark web on March 17, 2024.

**What information was involved?**  The information varied by individual and account, but may have included full name, email address, mailing address, phone number, social security number, date of birth, AT&T account number and AT&T passcode.  To the best of our knowledge, personal financial information and call history were not included.  Based on our investigation to date, the data appears to be from June 2019 or earlier.

**What is AT&T doing to help?**  We're offering you the complementary credit monitoring, identity theft detection and resolution services described above.  If you have an active account that was impacted, we've taken precautionary measures and reset your passcode.  A passcode is a numerical PIN, usually four digits, used in addition to your password as an extra layer of protection for your account. Additionally, we launched a robust investigation supported by internal and external cybersecurity experts, and we are regularly reviewing and updating the measures we take to protect your information.

**What can you do?**
- **Stay vigilant.**  We recommend that you review the enclosed Information About Identity Theft Protection and encourage you to remain vigilant by monitoring your personal accounts and credit reports for any suspicious activity.  If you want to personalize your passcode we reset for you, you can do so online via myAT&T, MyAT&T app, or call customer care at 1-866-346-0416.
- **Watch out for suspicious calls or emails.**  We also recommend that you remain alert for unsolicited communications seeking your personal information.  You should be cautious about entering your username and password on links provided through emails, even if it looks like the company's website.  The safest route is to go directly to the company's website to log in.

We apologize this has happened.  We're committed to keeping your information secure.
Please do not hesitate to call us at 1-866-346-0416 Monday through Friday, 8 a.m. to 9 p.m. CST, or visit att.com/accountsafety if you have questions regarding this matter.

Sincerely,

AT&T

**Experian's® IdentityWorks<sup>SM</sup>**

AT&T is providing you with an IdentityWorks<sup>SM</sup> membership at no charge.  After you complete registration, you'll have increased visibility into any possible fraudulent activity.  You will also have an insurance policy of up to $1 million in coverage should you experience identity theft and an Identity Restoration team to guide you through the recovery process.

To activate your membership and start monitoring your personal information, please follow the steps below:

- **Enroll by August 30, 2024** (Your code will not work after this date.)
- **Go to** the Experian® IdentityWorks<sup>SM</sup> website and select 'Get Started'
- **Enter** your activation code: **ACTIVATION CODE**

If you have questions about the product, need assistance with identity restoration, or would like an alternative to enrolling in Experian's® IdentityWorks<sup>SM</sup> online, please contact Experian's customer care team at 1-833-931-4853 by **August 30, 2024**.  Be prepared to provide engagement number **[ENGAGE]** as proof of eligibility for the identity restoration services provided by Experian.

**IdentityWorks<sup>SM</sup> Includes:**

- **Experian Credit Report at Signup:**  See what information is associated with your credit file. Daily credit reports are available for online members only.
- **Credit Monitoring:**  Actively monitors Experian file for indicators of fraud.
- **Internet Surveillance:**  Technology searches the web, chat rooms, and bulletin boards 24/7 to identify trading or selling of your personal information on the dark web.
- **Identity Restoration:**  Identity Restoration specialists are immediately available to help you address credit and non-credit related fraud.
- **Credit Lock / Unlock:**  This key feature provides you the ability to lock / unlock your Experian credit file.
- **Experian IdentityWorks ExtendCARE<sup>TM</sup>:**  You receive the same high-level of Identity Restoration support even after your Experian® IdentityWorks<sup>SM</sup> membership has expired.
- **Up to $1 Million Identity Theft Insurance:**  Provides coverage for certain costs and unauthorized electronic fund transfers.

Please note that Identity Restoration support is available to you for one year from the date of this letter and does not require any action on your part at this time.  The Terms and Conditions for this offer are located at ExperianIDWorks.com/restoration.  You will also find self-help tips and information about identity protection at this site.

**Information About Identity Theft Protection**

**Monitor Your Accounts**

We recommend that you regularly review statements from your accounts and periodically obtain your credit report from one or more of the national credit reporting companies. You may obtain a free copy of your credit report online at www.annualcreditreport.com, by calling toll-free 1-877-322-8228, or by mailing an Annual Credit Report Request Form (available at www.annualcreditreport.com) to Annual Credit Report Request Service, P.O. Box 105281, Atlanta, GA, 30348-5281. You may also purchase a copy of your credit report by contacting one or more of the three national credit reporting agencies listed below.

| Equifax® | Experian® | TransUnion® |
|---|---|---|
| P.O. Box 740241 | P.O. Box 2002 | P.O. Box 1000 |
| Atlanta, GA 30374-0241 | Allen, TX 75013-9701 | Chester, PA 19016-1000 |
| 1-866-349-5191 | 1-866-200-6020 | 1-800-888-4213 |
| www.equifax.com | www.experian.com | www.transunion.com |

You should remain vigilant for incidents of fraud or identity theft by reviewing account statements and monitoring free credit reports. When you receive your credit reports, review them carefully. Look for accounts or creditor inquiries that you did not initiate or do not recognize. Look for information, such as home address and Social Security number, that is not accurate. If you see anything you do not understand, call the credit reporting agency at the telephone number on the report.

You have rights under the federal Fair Credit Reporting Act (FCRA), which governs the collection and use of information about you by consumer reporting agencies. For more information about your rights under the FCRA, please visit www.consumer.ftc.gov/articles/pdf-0096-fair-credit-reporting-act.pdf or www.ftc.gov.

**Credit Freeze**

You have the right to put a security freeze, also known as a credit freeze, on your credit file, so that no new credit can be opened in your name without the use of a Personal Identification Number (PIN) that is issued to you when you initiate a freeze. A credit freeze is designed to prevent potential credit grantors from accessing your credit report without your consent. If you place a credit freeze, potential creditors and other third parties will not be able to access your credit report unless you temporarily lift the freeze. Therefore, using a credit freeze may delay your ability to obtain credit. Pursuant to federal law, you cannot be charged to place or lift a credit freeze on your credit report. Should you wish to place a credit freeze, please contact all three major consumer reporting agencies listed below.

| Equifax® | Experian® | TransUnion® |
|---|---|---|
| P.O. Box 105788 | P.O. Box 9554 | P.O. Box 160 |
| Atlanta, GA 30348-5788 | Allen, TX 75013-9554 | Woodlyn, PA 19094 |
| 1-888-298-0045 | 1-888-397-3742 | 1-800-916-8800 |
| www.equifax.com/personal/credit-report-services | www.experian.com/ freeze/center.html | www.transunion.com/credit-freeze |

You must separately place a credit freeze on your credit file at each credit reporting agency. The following information should be included when requesting a credit freeze:

- Full name, with middle initial and any suffixes;
- Social Security number;
- Date of birth (month, day, and year);
- Current address and previous addresses for the past five (5) years;
- Proof of current address, such as a current utility bill or telephone bill;
- Other personal information as required by the applicable credit reporting agency.

If you request a credit freeze online or by phone, then the credit reporting agencies have one business day after receiving your request to place a credit freeze on your credit file report. If you request a lift of the credit freeze online or by phone, then the credit reporting agency must lift the freeze within one hour. If you request a credit freeze or lift of a credit freeze by mail, then the credit agency must place or lift the credit freeze no later than three business days after getting your request.

## Fraud Alerts

You also have the right to place an initial or extended fraud alert on your file at no cost. An initial fraud alert lasts one year and is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting seven years. Should you wish to place a fraud alert, please contact any one of the agencies listed below. The agency you contact will then contact the other two credit agencies.

| Equifax® | Experian® | TransUnion® |
|---|---|---|
| P.O. Box 105069 | P.O. Box 9554 | P.O. Box 2000 |
| Atlanta, GA 30348-5069 | Allen, TX 75013-9554 | Chester, PA 19016-2000 |
| 1-800-525-6285 | 1-888-397-3742 | 1-800-680-7289 |
| www.equifax.com/personal/credit-report-services/credit-fraud-alerts/ | www.experian.com/ fraud/center.html | www.transunion.com/fraud-alerts |

## Federal Trade Commission and State Attorneys General Offices

If you find suspicious activity on your credit reports or have reason to believe your information is being misused, call your local law enforcement agency or state Attorney General and file a police report; this notice was not delayed by law enforcement. Get a copy of the report; many creditors want the information it contains to alleviate you of the fraudulent debts. You also should file a complaint with the Federal Trade Commission (FTC) using the contact information below. Your complaint will be added to the FTC's Consumer Sentinel database, where it will be accessible to law enforcement for their investigations.

You may also contact the FTC at **Federal Trade Commission**, Consumer Response Center, 600 Pennsylvania Avenue, NW, Washington, DC 20580, www.ftc.gov/bcp/edu/microsites/idtheft/, 1-877-IDTHEFT (438-4338), to learn more about identity theft and the steps you can take to protect yourself and prevent such activity.

- Oregon residents are advised to report any suspected identity theft to law enforcement, including the FTC, and the Oregon Attorney General.
- North Carolina residents may also contact the North Carolina Office of the Attorney General, Consumer Protection Division, 9001 Mail Service Center, Raleigh, NC 27699-9001, www.ncdoj.gov, 1-877-566-7226.
- Iowa residents are advised to report any suspected identity theft to law enforcement or to the Iowa Attorney General.
- If you are a Maryland resident, you may contact the Maryland Office of the Attorney General at Consumer Protection Division Office, 44 North Potomac Street, Suite 104, Hagerstown, MD 21740, https://www.marylandattorneygeneral.gov/Pages/contactus.aspx, 1-888-743-0023, or 410-528-8662 (consumer).
- District of Columbia residents may contact the Office of the Attorney General for the District of Columbia, Office of Consumer Protection, 400 6th St. NW, Washington, D.C. 20001, https://oag.dc.gov/, (202) 442-9828 (consumer protection hotline).
- Rhode Island residents may contact the Office of the Attorney General, 150 South Main Street, Providence, RI 02930, (401) 274-4400.

## For New York Residents

New York residents can also consider placing a Security Freeze on their credit reports. A Security Freeze prevents most potential creditors from viewing your credit reports, further protecting against the opening of unauthorized accounts. Please note that credit reporting agencies may charge a fee to place a Security Freeze. For more information on placing a security freeze on your credit reports, please review the New York Department of State Division of Consumer Protection website at https://dos.nysits.acsitefactory.com/consumer-protection.

When you receive a credit report from a credit reporting agency, review the report carefully. Look for accounts you did not open, inquiries from creditors that you did not initiate, and confirm that your personal information, such as home address and Social Security number, is accurate. If you see anything that you do not understand or recognize, call the credit reporting agency at the telephone number on the report. You should also call your local police department and file a report of identity theft. Finally, you should make sure to keep a copy of the police report in case you need to provide it to creditors or credit reporting agencies when accessing or disputing inaccurate information.

Even if you do not find signs of fraud on your credit reports, we recommend that you remain vigilant in reviewing your credit reports from the three major credit reporting agencies. You may obtain a free copy of your credit report once every 12 months by visiting www.annualcreditreport.com, calling toll-free 877-322-8228 or by completing an Annual Credit Request Form at: www.ftc.gov/bcp/menus/consumer/credit/rights.shtm and mailing to:

Annual Credit Report Request Service
P.O. Box 1025281
Atlanta, GA 30348-5283

You may report any incidents of suspected identity theft to law enforcement, including the FTC, your state Attorney General's office, or local law enforcement. For more information on identity theft, you can visit the following websites:

- New York Department of State Division of Consumer Protection: https://dos.nysits.acsitefactory.com/consumer-protection; 1-800-697-1220
- NYS Attorney General at: https://ag.ny.gov/; 1-800-771-7755
- FTC at: www.ftc.gov/bcp/edu/microsites/idtheft/; https://www.identitytheft.gov/#/

JS 44 (Rev. 06/17)

Case MDL No. 3114   Document 133-3   Filed 05/22/24   Page 56 of 57
Case 3:24-cv-01085-E   Document 1-3   Filed 05/06/24   Page 1 of 2   PageID 53

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
RACHEL LEE OREJUDOS and JEAN FELIX, Individually and on Behalf of All Others Similarly Situated,

## DEFENDANTS
AT&T, INC.

**(b)**  County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Joe Kendall, Kendall Law Group, PLLC, 3811 Turtle Creek Blvd., Suite 825, Dallas, TX 75219, 214/744-3000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                        *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation -
Transfer

☐ 8  Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C.  § 1332(d)
Brief description of cause:
Data Breach

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE  Ada Brown

DOCKET NUMBER  3:24-cv-757-E

DATE
05/06/2024

SIGNATURE OF ATTORNEY OF RECORD
/s/ Joe Kendall

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

JS 44 Reverse (Rev. 06/17) - TXND (Rev. 06/17)

Case MDL No. 3114   Document 133-3   Filed 05/22/24   Page 57 of 57
Case 3:24-cv-01085-E   Document 1-3   Filed 05/06/24   Page 2 of 2   PageID 54

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is related to this filing if the case: 1) involves some or all of the same parties and is based on the same or similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.