# EXHIBIT B

Query    Reports    Utilities    Help    Log Out

JURY

# U.S. District Court
## Northern District of Texas (Dallas)
## CIVIL DOCKET FOR CASE #: 3:24-cv-01137-N

Ragland v. AT&T, Inc.
Assigned to: Chief District Judge David C Godbey
Case in other court: In Re AT&T Data Breach Litigation (ND
Tex.), 3:24-cv-00757
Cause: 15:0045 Federal Trade Commission Act

Date Filed: 05/13/2024
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other Contract
Jurisdiction: Federal Question

**Plaintiff**

**Vincent Ragland**                  represented by    **Warren T Burns**
Burns Charest LLP
900 Jackson Street, Suite 500
Dallas, TX 75202
469-504-4550
Fax: 469-444-5002
Email: wburns@burnscharest.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel H Charest**
Burns Charest LLP
900 Jackson Street
Suite 500
Dallas, TX 75202
469-504-4555
Fax: 469-444-5002
Email: dcharest@burnscharest.com
*ATTORNEY TO BE NOTICED*

**Hannah Marie Crowe**
Burns Charest LLP
900 Jackson Street
Suite 500
Dallas, TX 75202
214-934-6153
Email: hcrowe@burnscharest.com
*ATTORNEY TO BE NOTICED*

**Icee N Etheridge**
Spector Roseman & Kodroff PC
2001 Market Street
Suite 3420
Philadelphia, PA 19103
215-496-0300
Email: ietheridge@srkattorneys.com

ATTORNEY TO BE NOTICED

**Korey A Nelson**
Burns Charest LLP
365 Canal Street
Suite 1170
New Orleans, LA 70130
504-799-2845
Email: knelson@burnscharest.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William G Caldes**
Spector Roseman & Kodroff, P.C.
2001 Market Street
Suite 3420
Philadelphia, PA 19103
215-496-0300
Fax: 215-496-6611
Email: bcaldes@srkattorneys.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**AT&T, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/13/2024 | 1 | COMPLAINT WITH JURY DEMAND against AT&T, Inc. filed by Vincent Ragland. (Filing fee $405; Receipt number ATXNDC-14613023) Clerk to issue summons(es). In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 Civil Cover Sheet) (Burns, Warren) (Entered: 05/13/2024) |
| 05/13/2024 | 2 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Vincent Ragland. (Clerk QC note: No affiliate entered in ECF). (Burns, Warren) (Entered: 05/13/2024) |
| 05/13/2024 | 3 | New Case Notes: A filing fee has been paid. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (Judge Horan). Clerk to provide copy to plaintiff if not received electronically. (ndt) (Entered: 05/14/2024) |
| 05/14/2024 | 4 | Summons Issued as to AT&T, Inc. (ndt) (Entered: 05/14/2024) |
| 05/14/2024 | 5 | Court Request for Recusal: Pursuant to instruction in Special Order 3-249, the Clerk has reassigned the case to Magistrate Judge Rebecca Rutherford for matters that may be referred in this case. (cea) (Entered: 05/14/2024) |

| 05/16/2024 | 6 | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-14623462) filed by Vincent Ragland (Attachments: # 1 Proposed Order) (Caldes, William) (Entered: 05/16/2024) |
| 05/16/2024 | 7 | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-14623504) filed by Vincent Ragland (Attachments: # 1 Proposed Order)Attorney Icee N Etheridge added to party Vincent Ragland(pty:pla) (Etheridge, Icee) (Entered: 05/16/2024) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/20/2024 09:19:38 | | | |
| **PACER Login:** | tpetre1982 | **Client Code:** | 009900.000074 |
| **Description:** | Docket Report | **Search Criteria:** | 3:24-cv-01137-N |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| VINCENT RAGLAND individually, and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | |
| v. | |
| AT&T, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Vincent Ragland ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this action against AT&T, Inc. ("Defendant"). Plaintiff alleges the following based on personal knowledge as to his own acts and based upon the investigation conducted by his counsel as to all other allegations. Plaintiff seeks both injunctive and monetary relief on behalf of the proposed class ("Class"). Plaintiff believes that a reasonable opportunity for discovery will reveal substantial evidentiary support for the allegations set forth herein.

## INTRODUCTION

1.     This consumer Class action arises from one of the largest data breaches in history, ("Data Breach").  As a result of this Data Breach, roughly 73 million consumers' personal data in Defendant's custody was compromised. Plaintiff and the proposed Class suffered losses from this Data Breach in the form of the loss of the benefit of their bargain, out-of-pocket expenses, and the time lost when they were forced to mitigate the effects of the cyberattack.

2.      Defendant is one of the largest telecommunications companies in the world. In 2023, its total revenue amounted to roughly $122 billion.[1]  In the final quarter of 2023, Defendant provided telecommunication services to roughly 46.9% of the United States' market.[2]

3.      Defendant announced the Data Breach on March 30, 2024, stating that the information included in the compromised data set could include sensitive information including social security numbers, full names, email and mailing addresses, phone numbers, and dates of birth—as well as AT&T account numbers and passcodes ("Personally Identifying Information" or "PII").[3]

4.      Defendant sent out notice letters ("Notice") to customers affected by the Data Breach, including Plaintiff, starting on or about March 30, 2024, informing them that their personally identifying information had been compromised.

5.      On its website, Defendant confirmed that much of this highly confidential PII was "contained in a data set released on the dark web."[4]

6.      During the time that passed between the Data Breach and Defendant's Notice, the vast majority of affected account holders were unaware that their PII had been compromised. Indeed, news organizations reached out to a number of Defendant's stores on March 30, 2024, and even Defendant's own sales representatives said, in all cases, that they were yet unaware of the Data Breach.[5]

---

[1] AT&T Inc., Market Watch (https://www.marketwatch.com/investing/stock/t/financials) (April 3, 2024).

[2] Statista, *Wireless subscriptions market share by carrier in the U.S. from 1st quarter 2011 to 3rd quarter 2023*, (https://www.statista.com/statistics/199359/market-share-of-wireless-carriers-in-the-us-by-subscriptions/).

[3] Chloe Veltman, *Millions of customers' data found on dark web in latest AT&T data breach*, NPR (https://www.npr.org/2024/03/30/1241863710/att-data-breach-dark-web) ((Mar. 30, 2024).

[4]     *Keeping Your Account Secure*, https://www.att.com/support/article/myaccount/000101995?bypasscache=1 (last visited April 3, 2024).

[5] Chloe Veltman, *Millions of customers' data found on dark web in latest AT&T data breach*, NPR (https://www.npr.org/2024/03/30/1241863710/att-data-breach-dark-web) ((Mar. 30, 2024).

Plaintiff and the Class were and are therefore at serious risk of being victims of identity theft and accompanying personal and financial harm.

7.      This is not the first time Defendant has failed to ensure that account holders' PII is securely stored. In 2021, Defendant suffered a similar breach compromising its customers' data. However, Defendant never acknowledged this prior cyberattack.[6]

8.      Entities that gather and retain sensitive PII owe a duty to the individuals to whom that data relates. This duty arises because it is foreseeable that the exposure of consumers' PII to unauthorized persons—especially hackers with nefarious intentions—will cause harm to such individuals. This is especially true where entities, such as Defendant, have suffered breaches in the past.

9.      The harm resulting from a breach of private data manifests in a number of ways, including identity theft and financial fraud. The exposure of a person's PII through a data breach ensures that such person will be at a substantially increased and certainly impending risk of identity theft crimes compared to the rest of the population, potentially for the rest of their lives. Mitigating that risk—to the extent it is even possible to do so—requires individuals to devote significant time and money to closely monitor their credit, financial accounts, health records, and email accounts, as well as other prophylactic measures.

10.      As alleged in more detail below, Defendant breached its duty to protect the sensitive PII entrusted to it, failed to abide by its own privacy policy, and failed to provide sufficiently prompt notice after learning of the Data Breach. As such, Plaintiff brings this Class action on behalf of himself

---

[6] Wyatte Grantham, *AT&T found over 70 million users' Social Security numbers on the dark web". Here's how to know if you're affected"*, Fortune (https://fortune.com/2024/04/01/att-70-million-users-social-security-numbers-dark-web-you-affected/) (Apr. 1, 2024).

and the approximately 73 million other Class members whose PII was accessed and exposed to unauthorized third parties.

11.     As a direct and proximate result of Defendant's inadequate data security and breach of its duty to handle PII with reasonable care, Plaintiff's PII has been accessed by hackers and likely posted on the dark web and exposed to an untold number of unauthorized individuals.

12.     Plaintiff is now at a significantly increased and certainly impending risk of fraud, identity theft, and similar forms of criminal mischief—risk which may last for the rest of his life. Consequently, Plaintiff must devote substantially more time, money, and energy to protect himself, to the extent possible, from these crimes.

13.     Plaintiff, on behalf of himself and others similarly situated, bring claims for negligence, negligence per se, breach of fiduciary duty, breach of confidences, breach of an implied contract, unjust enrichment, and declaratory judgment, seeking actual and punitive damages, with attorneys' fees, costs, and expenses, and appropriate injunctive and declaratory relief.

14.     To recover from Defendant for his sustained, ongoing, and future harms, Plaintiff seeks damages in an amount to be determined at trial, declaratory judgment, and injunctive relief requiring Defendant to: 1) disclose, expeditiously, the full nature of the Data Breach and the types of PII accessed, obtained, or exposed by the hackers; 2) implement improved data security practices to reasonably guard against future breaches of PII possessed by Defendant; and 3) provide, at its own expense, all impacted victims with lifetime identity theft protection services.

## PARTIES

15.     Plaintiff Ragland is an adult who at all relevant times was a citizen of Illinois and currently resides in Cook County, Illinois.  At all relevant times Plaintiff had several accounts with Defendant, including for mobile, home internet and phone, and business service. Plaintiff's PII was

stored and handled by Defendant on its systems. On or around May 2, 2024, Plaintiff received a Notice from Defendant informing him of the Data Breach and the impact to his PII.

16.     As a result of Defendant's conduct, Plaintiff suffered actual damages including, without limitation, time related to monitoring his financial accounts for fraudulent activity, facing an increased and imminent risk of fraud and identity theft, the lost value of his personal information, and other economic and non-economic harm. Plaintiff and Class members will now be forced to expend additional time, efforts, and potentially expenses to review their credit reports, monitor their financial accounts, and monitor for fraud or identify theft—particularly since the compromised information may include Social Security numbers.

17.     Defendant AT&T, Inc. is a Texas corporation with its principal place of business located at 208 South Akard Street, Dallas, Texas. Defendant is a citizen of Texas and has a registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas, 75201.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d). The amount in controversy in this Class action exceeds $5,000,000, exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendant's states of citizenship. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) because all claims form the same case or controversy.

19.     This Court has personal jurisdiction over Defendant in this case because Defendant has its principal place of business in this District. Defendant conducts substantial business and has minimum contacts with the State of Texas.

20.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant and/or its parents or affiliates are headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

### I.      Defendant and the Services it Provides

21.     Defendant is one of the largest telecommunications companies in the world, offering wireless communications, internet services, telephone services, and television.[7]  Defendant provides these services to millions of customers nationwide, including Plaintiff and the Class.

22.     While administering its services, Defendant receives and handles PII, which includes, inter alia, social security numbers, first and last names, dates of birth, zip codes, states of residence, full mailing addresses, account information, location data, biometric information including fingerprints and face scans.[8]

23.     Defendant provides its account holders a Privacy Notice in which it promises to "safeguard [account holders'] information using technology controls and organizational controls." Defendant assured Plaintiff and the class that Defendant was protecting their PII and storing it effectively and securely in accordance with statutory requirements.[9]

24.     Defendant's Privacy Notice warrants, in part, that:

> We keep your information as long as we need it for business, tax or legal purposes. We set our retention periods based on things like what type of personal information it is, how long it's needed to operate the business or provide our products and services, and whether it's subject to contractual or legal obligations. These obligations might be ongoing litigation, mandatory data retention laws or government orders to preserve data for an investigation. After that, we destroy it by making it unreadable or indecipherable. We work hard to safeguard your information using technology controls and organizational controls. We protect our computer storage and network equipment. We require employees to authenticate themselves to access sensitive data. We limit access to personal information to the people who need access for their jobs.

---

[7]     Nathan Reiff, *10 Biggest Telecommunications (Telecom) Companies*, Investopedia (https://www.investopedia.com/articles/markets/030216/worlds-top-10-telecommunications-companies.asp).

[8] AT&T Privacy Notice (https://about.att.com/privacy/privacy-notice.html).

[9] *Id.*

And we require callers and online users to authenticate themselves before we provide account information."[10]

25.     In order to receive services from Defendant, Plaintiff and Class members are required to entrust their highly sensitive PII to Defendant. Plaintiff entrusted this information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

26.     By obtaining, collecting, and storing Plaintiff's and the Class's PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and the Class's PII from unauthorized disclosure.

27.     Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments made by or on behalf of Plaintiff and Class members.

## II.   Defendant Knew the Risks of Storing Valuable PII and the Foreseeable Harm to its Consumers.

28.     At all relevant times, Defendant knew it was storing sensitive PII and that, as a result, its systems would be an attractive target for cybercriminals.

29.     Defendant also knew that a breach of its systems and exposure of the information stored therein would result in the increased risk of identity theft and fraud against the individuals whose PII was compromised.

30.     These risks are not theoretical. Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so that they are aware of, and prepared for, a potential attack.

---

[10] *Id.*

31.     In tandem with the increase in data breaches, the rate of identity theft complaints has also increased over the past few years. For instance, in 2017, 2.9 million people reported some form of identity fraud compared to 5.7 million people in 2021.[11]

32.     The type and breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Defendant's consumers especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud, and more.

33.     PII is a valuable property right.[12]  The value of PII as a commodity is measurable. "Firms[13] are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[14] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[15]  It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

34.     As a result of their real value and the recent large-scale data breaches, identity thieves and cyber criminals have openly posted credit card numbers, Social Security numbers, PII, and other

---

[11] *Insurance Information Institute, Facts + Statistics: Identity theft and cybercrime*, Insurance Information Institute, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and cybercrime#Identity%20Theft%20And%20Fraud%20Reports,%202015-2019%20 (last visited Apr. 17, 2023).

[12] *See* Marc Van Lieshout, *The Value of Personal Data*, 457 IFIP ADVANCES IN INFORMATION & COMMUNICATION TECHNOLOGY 26 (May 2015), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…").

[13] Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (Apr. 28, 2014), http://www.medscape.com/viewarticle./824192.

[14] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD 4 (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[15] *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERTISING BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report.

sensitive information directly on various Internet websites, making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be aggregated, and becomes more valuable to thieves and more damaging to victims.

35.    According to the U.S. Government Accountability Office, which conducted a study regarding data breaches: "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data has been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm." [16]

36.    Even if stolen PII does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear phishing. In these forms of attack, the criminal uses the previously obtained PII about the individual, such as name, address, email address, and affiliations, to gain trust and increase the likelihood that a victim will be deceived into providing the criminal with additional information.

37.    Consumers place a high value on the privacy of that data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[17]

---

[16] United States Government Accountability Office, Report to Congressional Requesters, Personal Information, June 2007: https://www.gao.gov/new.items/d07737.pdf (last visited Apr. 17, 2023).

[17] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study*, 22(2)Information Systems    Research 254   (June    2011), https://www.guanotronic.com/~serge/papers/weis07.pdf.

38.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has deprived that consumer of the full monetary value of the consumer's transaction with the company.

39.     Based on the value of its consumers' PII to cybercriminals and the growing rate of data breaches, Defendant certainly knew the foreseeable risk of failing to implement adequate cybersecurity measures.

**III. Defendant Breached its Duty to Protect its Account-Holders' PII**.

40.     On or about March 30, 2024—weeks after learning of the Data Breach—Defendant sent Notice to potentially affected individuals that it had experienced the Data Breach and that Plaintiff's and the Class members' PII had been compromised.

41.     As noted above, the PII compromised in the Data Breach includes account-holders' names, dates of birth, Social Security Numbers, and full mailing addresses.

42.     Like Plaintiff, other potential Class members received the Notice informing them that their PII was exposed in the Data Breach.

43.     In all, more than 73 million individuals with information stored on Defendant's system had their PII breached.

44.     The Data Breach occurred as a direct result of Defendant's failure to implement and follow basic security procedures necessary to protect its consumers' PII.

**IV.     FTC Guidelines Prohibit Defendant from Engaging in Unfair or Deceptive Acts or Practices.**

45.     Defendant is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

46.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[18]

47.     The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no longer needed, encrypt information stored on networks, understand their network's vulnerabilities, and implement policies to correct any security problems.[19]

48.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[20]

49.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

50.     Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PII constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

**V.     Cyberattacks and Data Breaches Cause Disruption and Put Consumers at an Increased Risk of Fraud and Identity Theft.**

---

[18] *Start with Security – A Guide for Business*, United States Federal Trade Comm'n (2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[19] *Protecting Personal Information: A Guide for Business*, United States Federal Trade Comm'n, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personalinformation.pdf.

[20] *Id.*

51.     Cyberattacks and data breaches at companies like Defendant's are especially problematic because they can negatively impact the overall daily lives of individuals affected by the attack.

52.     The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[21]

53.     That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal personally identifiable information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims, and to take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

---

[21] *See* U.S. Gov. Accounting Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (2007), https://www.gao.gov/new.items/d07737.pdf.

54.     Theft of PII is serious. The FTC warns consumers that identity thieves use PII to exhaust financial accounts, receive medical treatment, open new utility accounts, and incur charges and credit in a person's name.

55.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (and consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing freezes on their credit, and correcting their credit reports.[22]

56.     Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud. According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan, change a billing address so the victim no longer receives bills, open new utilities, obtain a mobile phone, open a bank account and write bad checks, use a debit card number to withdraw funds, obtain a new driver's license or ID, and/or use the victim's information in the event of arrest or court action.

57.     Identity thieves can also use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, and/or rent a house or receive medical services in the victim's name.

---

[22] *See IdentityTheft.gov*, Federal Trade Commission, https://www.identitytheft.gov/Steps (last accessed Feb. 24, 2023).

58.     Moreover, theft of PII is also gravely serious because PII is an extremely valuable property right.[23]

59.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States. For example, with the PII stolen in the Data Breach, which includes Social Security numbers, identity thieves can open financial accounts, commit medical fraud, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft. These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class members.

60.     As discussed above, PII is a valuable commodity to identity thieves, and once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

61.     Social security numbers are particularly sensitive pieces of personal information. As the Consumer Federation of America explains:

> Social security number: This is the most dangerous type of personal information in the hands of identity thieves because it can open the gate to serious fraud, from obtaining credit in your name to impersonating you to get medical services, government benefits, your tax refund, employment—even using your identity in bankruptcy and other legal matters. It's hard to change your Social Security number and it's not a good idea because it is connected to your life in so many ways.[24]

---

[23] *See, e.g.*, John T. Soma, et al., *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets." (citations omitted)).

[24] *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number* (Nov. 2, 2017), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/ (emphasis added).

62.    For instance, with a stolen Social Security number, which is only one subset of the PII compromised in the Data Breach, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[25]

63.    The Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines.[26] Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[27] Each of these fraudulent activities is difficult to detect. An individual may not know that their Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected because one was already filed on their behalf.

64.    An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number.[28]"

65.    This was a financially motivated Data Breach, as the only reason the cybercriminals go through the trouble of running a targeted cyberattack against companies like Defendant is to get information that they can monetize by selling on the black market for use in the kinds of criminal activity described herein. This data commands a much higher price on the black market. Martin Walter,

---

[25] *Id.*
[26] *Id.*
[27] *Id.* at 4.
[28] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft.

senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."

66.     Indeed, a Social Security number, date of birth, and full name can sell for $60 to $80 on the digital black market.[29]  "[I]f there is reason to believe that your personal information has been stolen, you should assume that it can end up for sale on the dark web."[30]

67.     These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to PII, they *will use it.* [31]

68.     There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. Fraud and identity theft resulting from the Data Breach may go undetected until debt collection calls commence months, or even years, later. As with income tax returns, an individual may not know that their Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud.

69.     For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, and it takes some individuals up to three years to learn that information. [32]

70.     Cybercriminals can post stolen PII on the cyber black-market for years following a data breach, thereby making such information publicly available.

---

[29] Michael Kan, *Here's How Much Your Identity Goes for on the Dark Web*, (Nov. 15, 2017), https://www.pcmag.com/news/heres-how-much-your-identity-goes-for-on-the-dark-web.
[30] *Dark Web Monitoring: What You Should Know*, Consumer Federation of America (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.
[31] *Id.*
[32] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 JOURNAL OF SYSTEMICS,CYBERNETICS AND INFORMATICS 9    (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

71.     Approximately 21% of victims do not realize their identity has been compromised until more than two years after it has happened.[33]   This gives thieves ample time to seek multiple treatments under the victim's name.

72.     Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.[34]

73.     It is within this context that Plaintiff must now live with the knowledge that their PII is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black market.

74.     A study by the Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information.



_____

[33] *See* Medical ID Theft Checklist, https://www.identityforce.com/blog/medical-id-theft-checklist-2 (last visited Apr. 17, 2023).
[34] *Guide for Assisting Identity Theft Victims*, FED. TRADE COMM'N, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

75.     Victims of the Data Breach, like Plaintiff, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their privacy and credit because of the Data Breach.[35]

76.     As a direct and proximate result of the Data Breach, Plaintiff has had his PII exposed, has suffered harm and has been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft. Plaintiff must now take the time and effort (and spend the money) to mitigate the actual and potential impact of the Data Breach on his everyday life, including purchasing identity theft and credit monitoring services every year for the rest of his life, placing "freezes" and "alerts" with credit reporting agencies, contacting his financial institutions and healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

77.     Moreover, Plaintiff and Class members have an interest in ensuring that their PII, which remains in the possession of Defendant, is protected from further public disclosure by the implementation of better employee training and industry standard and statutorily compliant security measures and safeguards. Defendant has shown itself to be wholly incapable of protecting Plaintiff's PII.

78.     Plaintiff and Class members also have an interest in ensuring that their personal information that was provided to Defendant is removed from Defendant's unencrypted files.

79.     Because of the value of its collected and stored data, Defendant knew or should have known about these dangers and strengthened its data security accordingly. Defendant was put on

---

[35] *Id.*

notice of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.

**VI.     Plaintiff Suffered Damages.**

80.     Defendant received Plaintiff and class members' PII in connection with providing telecommunication services to them. In requesting and maintaining Plaintiff's PII for business purposes, Defendant expressly and impliedly promised, and undertook a duty, to act reasonably in its handling of Plaintiff and Class members' PII. Defendant did not, however, take proper care of Plaintiff and Class members' PII, leading to its exposure to and exfiltration by cybercriminals as a direct result of Defendant's inadequate security measures.

81.     For the reasons mentioned above, Defendant's conduct, which allowed the Data Breach to occur, caused Plaintiff and Class members significant injuries and harm in several ways. Plaintiff and Class members must immediately devote time, energy, and money to: 1) closely monitor their medical statements, bills, records, and credit and financial accounts; 2) change login and password information on any sensitive account even more frequently than they already do; 3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and 4) search for suitable identity theft protection and credit monitoring services, and pay to procure them. Plaintiff and Class members have taken or will be forced to take these measures in order to mitigate their potential damages as a result of the Data Breach.

82.     Once PII is exposed, there is little that can be done to ensure that the exposed information has been fully recovered or obtained against future misuse. For this reason, Plaintiff and Class members will need to maintain these heightened measures for years, and possibly their entire lives, as a result of Defendant's conduct.

83.     Further, the value of Plaintiff and Class members' PII has been diminished by its exposure in the Data Breach. Plaintiff and Class members did not receive the full benefit of their bargain when paying for telecommunication services, and instead received services that were of a diminished value to those described in their agreements with Defendant for the benefit and protection of Plaintiff and their respective PII. Plaintiff and Class members were damaged in an amount at least equal to the difference in the value between the services they thought they paid for (which would have included adequate data security protection) and the services they actually received.

84.     Plaintiff and Class members would not have obtained services from Defendant, nor paid the amount they did to receive such services, had they known that Defendant would negligently fail to protect their PII. Indeed, Plaintiff and Class members paid for services with the expectation that Defendant would keep their PII secure and inaccessible from unauthorized parties. Plaintiff and Class members would not have obtained services from Defendant had they known that Defendant failed to properly train its employees, lacked safety controls over its computer network, and did not have proper data security practices to safeguard their PII from criminal theft and misuse.

85.     As a result of Defendant's failures, Plaintiff and Class members are also at substantial and certainly impending increased risk of suffering identity theft and fraud or other misuse of their PII.

86.     Further, because Defendant delayed sending Notice of the Data Breach for a number of weeks, Plaintiff and Class members were unable to take affirmative steps during that time period to attempt to mitigate any harm or take prophylactic steps to protect against injury.

87.     From a recent study, 28% of consumers affected by a data breach become victims of identity fraud—this is a significant increase from a 2012 study that found only 9.5% of those affected by a breach would be subject to identity fraud. Without a data breach, the likelihood of identify fraud is only about 3%.

88.     Plaintiff is also at a continued risk because his information remains in Defendant's computer systems, which have already been shown to be susceptible to compromise and attack and is subject to further attack so long as Defendant fails to undertake the necessary and appropriate security and training measures to protect its consumers' PII.

89.     In addition, Plaintiff and Class members have suffered emotional distress as a result of the Data Breach, the increased risk of identity theft and financial fraud, and the unauthorized exposure of their private information to strangers.

## CLASS ALLEGATIONS

90.     Plaintiff brings all counts, as set forth below, individually and as a Class action, pursuant to the provisions of the Fed. R. Civ. P. 23, on behalf of a class defined as:

> All persons in the United States who had their Private Identifying Information submitted to Defendant or Defendant's affiliates and/or whose Private Identifying Information was compromised as a result of Defendant's Data Breach(es) announced on March 30, 2024.

91.     Excluded from the Class are Defendant, its subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

92.     This proposed Class definition is based on the information available to Plaintiff at this time. Plaintiff may modify the Class definition in an amended pleading or when he moves for Class certification, as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

93.     **Numerosity** – Fed. R. Civ. P. 23(a)(1): Plaintiff is informed and believes, and thereon alleges, that there are at minimum, hundreds of thousands of members of the Class described above. The exact size of the Class and the identities of the individual members are identifiable through

Defendant's records, including but not limited to the files implicated in the Data Breach, but based on public information, the Class includes approximately 73 million individuals.

94.     **Commonality** – Fed. R. Civ. P. 23(a)(2): This action involves questions of law and fact common to the Class. Such common questions include, but are not limited to:

a.     Whether Defendant failed to timely notify Plaintiff of the Data Breach;

b.     Whether Defendant had a duty to protect the PII of Plaintiff and Class members;

c.     Whether Defendant was negligent in collecting and storing Plaintiff and Class members' PII, and breached its duties thereby;

d.     Whether Defendant breached its fiduciary duty to Plaintiff and the Class;

e.     Whether Defendant breached its duty of confidence to Plaintiff and the Class;

f.     Whether Defendant violated its own privacy policy;

g.     Whether Defendant entered a contract implied in fact with Plaintiff and the Class;

h.     Whether Defendant breached that contract by failing to adequately safeguard Plaintiff and Class members' PII;

i.     Whether Defendant was unjustly enriched;

j.     Whether Plaintiff and Class members are entitled to damages as a result of Defendant's wrongful conduct; and

k.     Whether Plaintiff and Class members are entitled to restitution as a result of Defendant's wrongful conduct.

95.     **Typicality** – Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct. Plaintiff and members of the Class all had information stored in Defendant's system, each having their PII exposed and/or accessed by an unauthorized third party.

96.     **Adequacy of Representation** – Fed. R. Civ. P. 23(a)(3): Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class

members Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex Class action litigation; Plaintiff intends to prosecute this action vigorously; and Plaintiff's counsel have adequate financial means to vigorously pursue this action and ensure the interests of the Class will not be harmed. Furthermore, the interests of the Class members will be fairly and adequately protected and represented by Plaintiff and Plaintiff's counsel.

97.     **Injunctive Relief**, Fed. R. Civ. P. 23(b)(2): Defendant has acted and/or refused to act on grounds that apply generally to the Class therefore making injunctive and/or declaratory relief appropriate with respect to the Class under 23(b)(2).

98.     **Superiority**, Fed. R. Civ. P. 23(b)(3): A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation.  Absent a Class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

99.     Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

100.    Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.     Whether Defendant failed to timely and adequately notify the public of the Data Breach;

b.      Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

c.      Whether Defendant's security measures to protect its data systems were reasonable in light of best practices recommended by data security experts;

d.      Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

e.      Whether Defendant failed to take commercially reasonable steps to safeguard consumer PII; and

f.      Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

101.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class members' names and addresses affected by the Data Breach. Defendant has already preliminarily identified Class members for the purpose of sending Notice of the Data Breach.

## FIRST CAUSE OF ACTION
### NEGLIGENCE
**(Plaintiff on behalf of the Class)**

102.    Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

103.    Plaintiff brings this claim individually and on behalf of the Class.

104.    Defendant owed a duty to Plaintiff and the Class members to exercise reasonable care in safeguarding and protecting their PII in its possession, custody, and control.

105.    Defendant's duty to use reasonable care arose from several sources, including but not limited to those described below.

106.    Defendant had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class members were the foreseeable and probable victims of any inadequate security practices on the part of the Defendant. By collecting and storing valuable PII that is routinely targeted by criminals for unauthorized access, Defendant was obligated to act with reasonable care to protect against these foreseeable threats.

24

107.     Defendant's duty also arose from the fact that it holds itself out as a trusted provider of telecommunication services, and thereby assumes a duty to reasonably protect consumers' information.

108.     Defendant breached the duties it owed to Plaintiff and Class members and thus was negligent. As a result of a successful attack directed towards Defendant that compromised Plaintiff and Class members' PII, Defendant breached its duties through some combination of the following errors and omissions that allowed the data compromise to occur:

(a)     mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII;

(b)     mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks;

(c)     failing to design and implement information safeguards to control these risks;

(d)     failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures;

(e)     failing to evaluate and adjust its information security program in light of the circumstances alleged herein;

(f)     failing to detect the breach at the time it began or within a reasonable time thereafter;

(g)     failing to follow its own privacy policies and practices published to its consumers; and

(h)     failing to adequately train and supervise employees and third-party vendors with access or credentials to systems and databases containing sensitive PII.

109.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class members, their PII would not have been compromised.

110.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered injuries, including, but not limited to:

a.     Theft of their PII;

25

b.   Costs associated with the detection and prevention of identity theft and unauthorized use of their PII;

c.   Costs associated with purchasing credit monitoring and identity theft protection services;

d.   Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.   Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.   The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g.   Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff and Class members' data against theft and not allow access and misuse of their data by others;

h.   Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff and Class members' data; and

i.   Emotional distress from the unauthorized disclosure of PII to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class members.

111.   As a direct and proximate result of Defendant's negligence, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### NEGLIGENCE PER SE
**(Plaintiff on behalf of the Class)**

112.   Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

113.   Plaintiff brings this claim individually and on behalf of the Class.

114.    Section 5 of the FTC Act prohibits "unfair…practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by entities such as Defendant for failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Defendant's duty.

115.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with the industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of a data breach involving PII of its consumers.

116.    Plaintiff and members of the Class are consumers within the Class of persons Section 5 of the FTC Act was intended to protect.

117.    Defendant's violation of Section 5 of the FTC Act constitutes negligence per se.

118.    The harm that has occurred as a result of Defendant's conduct is the type of harm that the FTC Act was intended to guard against.

119.    As a direct and proximate result of Defendant's negligence, Plaintiff has been injured as described herein, and is entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(Plaintiff on behalf of the Class)**

120.    Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

121.    Plaintiff and Class members have an interest, both equitable and legal, in the PII about them that was conveyed to, collected by, and maintained by Defendant and that was ultimately accessed or compromised in the Data Breach.

122.    As a provider of telecommunication services and a recipient of consumers' PII, Defendant has a fiduciary relationship to its consumers, including Plaintiff and Class members.

123.     Because of that fiduciary relationship, Defendant was provided with and stored private and valuable PII related to Plaintiff and the Class. Plaintiff and the Class were entitled to expect their information would remain confidential while in Defendant's possession.

124.     Defendant owed a fiduciary duty under common law to Plaintiff and Class members to exercise the utmost care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

125.     As a result of the parties' fiduciary relationship, Defendant had an obligation to maintain the confidentiality of the information within Plaintiff's and Class members' PII.

126.     Defendant's consumers, including Plaintiff and Class members, have a privacy interest in personal financial matters, and Defendant had a fiduciary duty not to such personal data of its consumers.

127.     As a result of the parties' relationship, Defendant had possession and knowledge of confidential PII of Plaintiff and Class members, information not generally known.

128.     Plaintiff and Class members did not consent to nor authorize Defendant to release or disclose their PII to unknown criminal actors.

129.     Defendant breached its fiduciary duties owed to Plaintiff and Class members by, among other things:

    a.    mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII;

    b.    mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks;

    c.    failing to design and implement information safeguards to control these risks;

    d.    failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures;

e.     failing to evaluate and adjust its information security program in light of the circumstances alleged herein;

f.     failing to detect the breach at the time it began or within a reasonable time hereafter;

g.     failing to follow its own privacy policies and practices published to its consumers; and

h.     failing to adequately train and supervise employees and third-party vendors with access or credentials to systems and databases containing sensitive PII.

130.    But for Defendant's wrongful breach of its fiduciary duties owed to Plaintiff and Class members, their PII would not have been compromised.

131.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered injuries, including:

a.     Theft of their PII;

b.     Costs associated with the detection and prevention of identity theft and unauthorized use of their PII;

c.     Costs associated with purchasing credit monitoring and identity theft protection services;

d.     Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.     Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.     The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g.     Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's data against theft and not allow access and misuse of their data by others; and

h.     Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's data; and Emotional distress from the unauthorized disclosure of PII to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff.

## FOURTH CAUSE OF ACTION
## BREACH OF CONFIDENCE
### (Plaintiff on behalf of the Class)

132.    Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

133.    Plaintiff and Class members have an interest, both equitable and legal, in the PII about them that was conveyed to, collected by, and maintained by Defendant and that was ultimately accessed or compromised in the Data Breach.

134.    As a provider of telecommunication services and a recipient of consumers' PII, Defendant has a fiduciary relationship to its consumers, including Plaintiff and Class members.

135.    Plaintiff provided Defendant with their personal and confidential PII under both the express and/or implied agreement of Defendant to limit the use and disclosure of such PII.

136.    Defendant owed a duty to Plaintiff to exercise the utmost care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII in its possession from being compromised, lost, stolen, accessed by, misused by, or disclosed to unauthorized persons.

137.    As a result of the parties' relationship, Defendant had possession and knowledge of confidential PII of Plaintiff.

138.    Plaintiff's PII is not generally known to the public and is confidential in nature.

139.    Plaintiff did not consent to nor authorize Defendant to release or disclose his PII to an unknown criminal actor.

140.    Defendant breached the duties of confidence it owed to Plaintiff when Plaintiff's PII was disclosed to unknown criminal hackers.

141.    Defendant breached its duties of confidence by failing to safeguard Plaintiff's PII, including by, among other things:

a.    mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII;

b.     mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks;

c.     ailing to design and implement information safeguards to control these risks;

d.     failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures;

e.     failing to evaluate and adjust its information security program in light of the circumstances alleged herein;

f.     failing to detect the breach at the time it began or within a reasonable time thereafter;

g.     failing to follow its own privacy policies and practices published to its consumers;

h.     storing PII in an unencrypted and vulnerable manner, allowing its disclosure to hackers; and

i.     making an unauthorized and unjustified disclosure and release of Plaintiff's PII to a criminal third party.

142.    But for Defendant's wrongful breach of its duty of confidences owed to Plaintiff, their privacy, confidences, and PII would not have been compromised.

143.    As a direct and proximate result of Defendant's breach of Plaintiff's confidences, Plaintiff have suffered injuries, including:

a.     Theft of their PII;

b.     Costs associated with the detection and prevention of identity theft and unauthorized use of their PII;

c.     Costs associated with purchasing credit monitoring and identity theft protection services;

d.     Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.     Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.   The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g.   Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's data against theft and not allow access and misuse of their data by others;

h.   Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's data; and

i.   Loss of personal time spent carefully reviewing statements from health insurers and providers to check for charges for services not received.

144.   Additionally, Defendant received payments from Plaintiff for services with the understanding that Defendant would uphold its responsibilities to maintain the confidences of Plaintiff's PII.

145.   Defendant breached the confidence of Plaintiff when it made an unauthorized release and disclosure of his PII and, accordingly, it would be inequitable for Defendant to retain the benefit at Plaintiff's expense.

146. As a direct and proximate result of Defendant's breach of its duty of confidences, Plaintiff is entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
### INTRUSION UPON SECLUSION/INVASION OF PRIVACY
**(Plaintiff on behalf of the Class)**

147.   Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

148.   Plaintiff had a reasonable expectation of privacy in the PII Defendant mishandled.

149.   Defendant's conduct as alleged above intruded upon Plaintiff and Class members' seclusion under common law.

150. By intentionally failing to keep Plaintiff's PII safe, and by intentionally misusing and/or disclosing said information to unauthorized parties for unauthorized use, Defendant intentionally invaded Plaintiff and Class members' privacy by:

    a.    Intentionally and substantially intruding into Plaintiff and Class members' private affairs in a manner that identifies Plaintiff and Class members and that would be highly offensive and objectionable to an ordinary person;

    b.    Intentionally publicizing private facts about Plaintiff and Class members, which is highly offensive and objectionable to an ordinary person; and

    c.    Intentionally causing anguish or suffering to Plaintiff and Class members

151. Defendant knew that an ordinary person in Plaintiff or Class members' position would consider Defendant's intentional actions highly offensive and objectionable.

152. Defendant invaded Plaintiff and Class members' right to privacy and intruded into Plaintiff and Class members' private affairs by intentionally misusing and/or disclosing their PII without their informed, voluntary, affirmative, and clear consent.

153. Defendant intentionally concealed from and delayed reporting to Plaintiff and Class members a security incident that misused and/or disclosed their PII without their informed, voluntary, affirmative, and clear consent.

154. The conduct described above was directed at Plaintiff and Class members.

155. As a proximate result of such intentional misuse and disclosures, Plaintiff and Class members' reasonable expectations of privacy in their PII was unduly frustrated and thwarted. Defendant's conduct amounted to a substantial and serious invasion of Plaintiff and Class members' protected privacy interests causing anguish and suffering such that an ordinary person would consider Defendant's intentional actions or inaction highly offensive and objectionable.

156. In failing to protect Plaintiff and Class members' PII, and in intentionally misusing and/or disclosing their PII, Defendant acted with intentional malice and oppression and in conscious

33

disregard of Plaintiff and Class members' rights to have such information kept confidential and private. Plaintiff, therefore, seeks an award of damages on behalf himself and the Class.

157.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED CONTRACT
### (Plaintiff on behalf of the Class)

158.    Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

159.    Plaintiff brings this claim individually and on behalf of the Class.

160.    When Plaintiff and Class members provided their PII to Defendant in exchange for telecommunications services, they entered into implied contracts with Defendant, under which Defendant agreed to take reasonable steps to protect Plaintiff and Class members' PII, comply with statutory and common law duties to protect their PII, and to timely notify them in the event of a data breach.

161.    Defendant solicited and invited Plaintiff and Class members to provide their PII as part of Defendant's provision of services. Plaintiff and Class members accepted Defendant's offers and provided their PII to Defendant.

162.    When entering into implied contracts, Plaintiff and Class members reasonably believed and expected that Defendant's data security practices complied with its statutory and common law duties to adequately protect Plaintiff's PII and to timely notify them in the event of a data breach.

163.    Defendant's implied promise to safeguard consumers' PII is evidenced by, e.g., the representations in Defendant's Privacy Notice set forth above.

164.    Plaintiff and Class members paid money to Defendant in order to receive services. Plaintiff and Class members reasonably believed and expected that Defendant would use part of those funds to obtain adequate data security. Defendant failed to do so.

165.    Plaintiff and Class members would not have provided their PII to Defendant had they known that Defendant would not safeguard their PII, as promised, or provide timely notice of a data breach.

166.    Plaintiff and Class members fully performed their obligations under their implied contracts with Defendant.

167.    Defendant breached its implied contracts with Plaintiff and Class members by failing to safeguard Plaintiff and Class members' PII and by failing to provide them with timely and accurate notice of the Data Breach.

168.    The losses and damages Plaintiff and Class members sustained include, but are not limited to:

a.    Theft of their PII;

b.    Costs associated with purchasing credit monitoring and identity theft protection services;

c.    Costs associated with the detection and prevention of identity theft and unauthorized use of their PII;

d.    Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.    Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.    The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g.    Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff and Class members' data against theft and not allow access and misuse of their data by others;

h.    Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff and Class members' data; and

i.    Emotional distress from the unauthorized disclosure of PII to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class members.

169.    As a direct and proximate result of Defendant's breach of contract, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (Plaintiff on behalf of the Class)

170.    Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

171.    Plaintiff brings this claim individually and on behalf of the Class in the alternative to Plaintiff's implied contract claim.

172.    Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments made by or on behalf of Plaintiff and Class members.

173.    As such, a portion of the payments made by or on behalf of Plaintiff and Class members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

174.    Plaintiff and Class members conferred a monetary benefit on Defendant. Specifically, they purchased services from Defendant and/or its agents and in so doing provided Defendant with their PII. In exchange, Plaintiff and Class members should have received from Defendant the services that were the subject of the transaction and have their PII protected with adequate data security.

175.     Defendant knew that Plaintiff and Class members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII of Plaintiff and Class members for business purposes.

176.     In particular, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff and Class members' PII. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profits at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security.

177.     Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class members, because Defendant failed to implement appropriate data management and security measures that are mandated by its common law and statutory duties.

178.     Defendant failed to secure Plaintiff and Class members' PII and, therefore, did not provide full compensation for the benefit Plaintiff and Class members provided.

179.     Defendant acquired the PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

180.     If Plaintiff and Class members knew that Defendant had not reasonably secured their PII, they would not have agreed to provide their PII to Defendant.

181.     Plaintiff and Class members have no adequate remedy at law.

182.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have suffered injuries, including, but not limited to:

a.     Theft of their PII;

b.     Costs associated with purchasing credit monitoring and identity theft protection services;

c.    Costs associated with the detection and prevention of identity theft and unauthorized use of their PII;

d.    Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.    Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.    The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g.    Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff and Class members' data against theft and not allow access and misuse of their data by others;

h.    Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff and Class members' data; and

i.    Emotional distress from the unauthorized disclosure of PII to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class members.

183.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm.

184.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class members overpaid for Defendant's services.

## EIGHTH CAUSE OF ACTION
## DECLARATORY JUDGMENT
### (Plaintiff on behalf of the Class)

185.     Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

186.     Plaintiff brings this claim individually and on behalf of the Class.

187.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and granting further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal statutes described in this Complaint.

188.     An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and other duties to reasonably safeguard Plaintiff and Class members' PII, and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class members from future data breaches that compromise their PII. Plaintiff and the Class remain at imminent risk of further compromises of their PII will occur in the future.

189.     The Court should also issue prospective injunctive relief requiring Defendant to employ adequate security practices consistent with law and industry standards to protect consumers' PII.

190.     Defendant still possesses the PII of Plaintiff and the Class.

191.     To Plaintiff's knowledge, Defendant has made no announcement or notification that it has remedied the vulnerabilities and negligent data security practices that led to the Data Breach.

192.     If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial.

193.     The hardship to Plaintiff and Class members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if another data breach occurs

at Defendant, Plaintiff and Class members will likely continue to be subjected to a heightened, substantial, imminent risk of fraud, identify theft, and other harms described herein. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

194.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and Class members, along with other consumers whose PII would be further compromised.

195.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Defendant implement and maintain reasonable security measures, including but not limited to the following:

    a.    Engaging third-party security auditors/penetration testers, as well as internal security personnel, to conduct testing that includes simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

    b.    Engaging third-party security auditors and internal personnel to run automated security monitoring;

    c.    Auditing, testing, and training its security personnel regarding any new or modified procedures;

    d.    Purging, deleting, and destroying PII not necessary for its provisions of services in a reasonably secure manner;

    e.    Conducting regular database scans and security checks; and

    f.    Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief as follows:

a.   For an Order certifying this action as a Class action and appointing Plaintiff as Class Representative and his counsel as Class Counsel;

b.   For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff and Class members' PII, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class members;

c.   For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Personal Identifying Information compromised during the Data Breach;

d.   For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

e.   Ordering Defendant to pay for not less than three years of credit monitoring services for Plaintiff and the Class;

f.   For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g.   For an award of punitive damages, as allowable by law;

h.   For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i.   Pre- and post-judgment interest on any amounts awarded; and,

j.   Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED

A jury trial is demanded by Plaintiff on all claims so triable.

Dated: May 13, 2024                    Respectfully Submitted,

*/s/ Warren T. Burns*

Warren T. Burns (TX Bar No. 24053119)
Daniel H. Charest (TX Bar No. 24057803)
Hannah M. Crowe (TX Bar No. 24131156)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
wburns@burnscharest.com
dcharest@burnscharest.com
hcrowe@burnscharest.com

Korey A. Nelson *(to be admitted pro hac vice)*
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, Louisiana 70130
Telephone: (504) 799-2845
knelson@burnscharest.com

William G. Caldes *(to be admitted pro hac vice)*
Jeffrey L. Spector *(to be admitted pro hac vice)*
Icee N. Etheridge *(to be admitted pro hac vice)*
**SPECTOR ROSEMAN & KODROFF P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (212) 496-0300
bcaldes@srkattorneys.com
jspector@srkattorneys.com
ietheridge@srkattorneys.com

JS 44   (Rev. 04/21) (TXND 4/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

VINCENT RAGLAND individually, and on behalf of all others similarly situated

**DEFENDANTS**

AT&T, INC.,

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Burns Charest, LLP, 900 Jackson St., Ste. 500, Dallas, TX 75202

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [x] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Federal Trade Commission Act, 15 U.S.C. § 45

Brief description of cause:
Violation for Federal Trade Commission Act, Negligence, Negligence Per Se, Breach of Fiduciary Duty, Breach of Confidence, Invasion of Privacy,

## VII. REQUESTED IN COMPLAINT:

- [x] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Judge Ada Brown

DOCKET NUMBER   3:24-cv-00757-E

DATE
5/13/2024

SIGNATURE OF ATTORNEY OF RECORD
/s/ Warren T. Burns

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44**

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is related to this filing if the case: 1) involves some or all of the same parties and is based on the same or similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.