BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: AT&T INC. CUSTOMER DATA SECURITY BREACH LITIGATION | MDL NO. 3114 |

**INTERESTED PARTY RESPONSE OF PLAINTIFFS KELLY MCGREEVY AND STEVE SENTI IN SUPPORT OF MOTION FOR TRANSFER AND CENTRALIZATION BUT IN OPPOSITION TO THE NORTHERN DISTRICT OF TEXAS, AND IN FAVOR OF THE NORTHERN DISTRICT OF ILLINOIS**

Pursuant to Rule 6.2(e) of the Rules of Procedure for the United States Judicial Panel of Multidistrict Litigation (the "Panel"), Interested Parties Kelly McGreevy and Steve Senti ("Interested Parties") hereby submit this response to Plaintiff Alex Petroski's ("Movant") Motion for Transfer and Centralization of Related Actions to the Northern District of Texas ("Motion") (Dkt. No. 1).

## INTRODUCTION

While the Interested Parties support centralization, the Interested Parties respectfully submit that the MDL should be centralized and consolidated in the Northern District of Illinois. To date, more than fifty actions have been filed in at least nine different federal courts against AT&T, Inc. and various corporate affiliates. All of these actions arise from the massive data breach that compromised the personal information of more than 73 million individuals nationwide whose information AT&T and its affiliates warehoused ("Related Actions").

AT&T is one of the largest telecommunications companies in the United States, providing nationwide wireless voice, messaging, and data services. In providing its services, AT&T created, collected, and maintained its customers' personally identifiable information ("PII")—including full names, email addresses, phone numbers, dates of birth, Social Security numbers, AT&T account numbers, and AT&T account passcodes. On or about March 30, 2024, AT&T publicly

1

announced that the details of 73 million former and current AT&T customer accounts, including its customers' PII and AT&T account numbers and passcodes, were leaked online (the "Data Breach"). AT&T has provided scant details about the Data Breach, but has suggested the hackers obtained the AT&T data was from one of its vendors. Regardless of what entity was the immediate source of the data, AT&T was obligated to ensure the PII was secured from unauthorized disclosures by contract, industry standards, common law, and its representations to its customers. Plaintiffs and class members' injuries all stem from AT&T's failure to ensure that the data it collected was securely handled. AT&T customers across the country entrusted their PII to AT&T under the expectation that AT&T and any associated business partners to whom AT&T might disclose this PII would adhere to their obligations to maintain the confidentiality and security of such information, safeguarding it against unauthorized disclosures.

Each of the Related Actions share a common set of factual allegations—namely, AT&T's failure to take reasonable, timely, and appropriate measures to protect against the foreseeable risk of unauthorized disclosure of PII belonging to 73 million of its current and former customers. The Panel has consistently centralized similar large-scale data breach cases and should do the same here.

In deciding where to centralize these cases, the Panel should be conscious of the nationwide scope of this litigation and opt for a jurisdiction equipped with both the availability and capability to manage proceedings involving tens of millions of potential class members who are distributed across the country. Consequently, the Panel should prioritize selecting a forum characterized by a light, manageable civil docket presided over by a transferee judge possessing the requisite expertise, proficiency, and capacity to effectively oversee such complex matters.

The Interested Parties believe that the Northern District of Illinois (where the Interested Parties filed their case, and where two other Related Actions have been filed) is the most suitable forum for this litigation. The Northern District of Illinois will provide a forum that will minimize the cost and inconvenience to all parties by ensuring a judicious and efficient adjudication process, mitigating potential delays, and facilitating prompt resolution or trial.

## ARGUMENT

### I.     The Related Actions Should Be Centralized.

Under 28 U.S.C. 1407(a), transfer and coordination are appropriate if civil actions pending in different districts involve "one or more common questions of fact" and if transfer furthers "the convenience of [the] parties and witnesses and will promote the just and efficient conduct of such actions." *Id*. The Panel routinely centralizes data breach cases, recognizing that such cases are "expected to share common and complex factual questions" about the who, what, where, when, and why of how the breach occurred. See, e.g., *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. MDL 3090, 2024 WL 436478, at *1 (J.P.M.L. Feb. 5, 2024); *In re: MOVEit Customer Data Sec. Breach Litig.*, 2023 WL 6456749, at *2 (J.P.M.L. Oct. 4, 2023); *In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, No. MDL 3073, 2023 WL 3829244, at *1 (J.P.M.L. June 2, 2023) *In re: Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322, 1324 (J.P.M.L. 2017); *In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 223 F. Supp. 3d 1353, 1354 (J.P.M.L. 2016); *In re: Anthem, Inc., Customer Data Sec. Breach Litig.*, 109 F. Supp. 3d 1364, 1365 (J.P.M.L. 2015); *In re: Home Depot, Inc., Customer Data Sec. Breach Litig.*, 65 F. Supp. 3d 1398, 1399 (J.P.M.L. 2014). This case is no exception. Here, as in other data breach cases, "[c]entralization offers substantial opportunities to streamline pretrial proceedings; reduce duplicative discovery and conflicting pretrial obligations; prevent inconsistent rulings on common

evidentiary challenges and summary judgment motions; and conserve the resources of the parties, their counsel, and the judiciary." *In re Fortra*, 2024 WL 436478, at *1.

Absent centralization, the Related Actions would proceed in at least nine districts and could result in inconsistent rulings about whether AT&T owed a legal duty to Plaintiffs, whether Defendants breached their duty to the Plaintiffs, and whether class certification is appropriate, among other issues. Accordingly, centralization will avoid duplicative discovery, inconsistent rulings, and conserve judicial and party resources.

## II. Centralization in the Northern District of Illinois Is Appropriate Under 28 U.S.C. § 1407.

This Panel is tasked with transferring actions sharing common questions of fact to a single district for coordinated or consolidated pretrial proceedings. 28 U.S.C. § 1407. The Panel considers pragmatic factors in determining the most appropriate transferee forum, including (1) convenience of the parties; (2) location of witnesses and other evidence; (3) whether the district is in an accessible metropolitan location; (4) experience in management of class actions and complex litigation; (5) the caseload of the transferee district; and (6) the number of cases pending in the jurisdiction. *See, e.g., In re Wheat Farmers Antitrust Class Action Litig.*, 366 F. Supp. 1087, 1088 (J.P.M.L.1973); *In re Preferential Drug Prod. Pricing Antitrust Litig.*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977); *In re Tri-State Crematory Litig.*, 206 F. Supp. 2d 1376, 1378 (J.P.M.L. 2002); *In re Gen. Motors Corp. Dex-Cool Prod. Liab. Litig.*, 293 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003); *In re Educ. Testing Serv. Prt 7-12 Test Scoring Litig.*, 350 F. Supp. 2d 1363, 1365 (J.P.M.L. 2004).

The Northern District of Illinois would be a convenient and efficient forum for this litigation, given its well-managed docket and available resources, its proven experience with complex MDL cases, and its central location, which will be a particularly important factor in this MDL.

"Experience in management of class actions and complex litigation" is a factor that weighs most heavily in favor of the Northern District of Illinois, a district with which this Panel has demonstrated trust and which has a history of resolving a large number of MDL cases. The district has proven to this panel its capacity, resources, and experience in managing complex and large-scale MDLs efficiently and in a manner convenient for parties and witnesses spread across the country.

Moreover, when controlled for duplicative individual cases within MDL cases, the docket conditions in the Northern District of Illinois are comparable to those in the Northern District of Texas. Excluding overlapping mass tort cases, the Northern District of Illinois has 512 cases per judgeship, compared to 471 cases per judge in the Northern District of Texas.[12] As to case management, the Northern District of Illinois has a faster median time from filing to disposition compared to the Northern District of Texas.[3] Additionally, with 22 Article III judgeships, the Northern District of Illinois has greater capacity than the other districts under consideration.

The convenience and accessibility factors are particularly important in this matter—and they weigh heavily in favor of the Northern District of Illinois. A central location is particularly appropriate in this matter because AT&T has not yet disclosed the true nexus for this litigation.

---

[1] *See* https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf (reporting the relative number of cases per judgeship between N.D. Ill. and N.D. Tex. as 965 and 473, respectively); *and see* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-1-2024.pdf (showing that 9970 of the N.D. Ill. cases come from 16 MDL cases).

[2] After excluding overlapping mass tort cases, the Northern District of Georgia has 278 cases per District Court Judge.

[3] https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf  (last viewed 5/23/2024)

AT&T has stated that it was actually a third-party vendor whose system was breached[4]—a vendor whose personnel are the key witnesses in the case and whose computer systems contain the key records. And yet AT&T still has not disclosed the identity or location of this vendor. Similarly, AT&T argues that its breach response was coordinated from Dallas. But because AT&T claims that its systems were not breached, there will be very little discovery needed from them. Instead, most of the decisions that AT&T made from Dallas—such as whether and how to notify class members—would be subject to privilege assertions anyway. Nor was the consumer data collected directly by AT&T, Inc. That data came from AT&T's current and former subsidiaries like AT&T Wireless in Georgia and DirecTV in California. Under the circumstances, the Court should not reward AT&T's attempts to inject its own unsubstantiated information disclosures to steer this litigation to its home court in Texas.[5]

Lacking a known nexus for this litigation, and with 73 million victims across the United States, a central location is appropriate. The Northern District of Illinois is ideally situated, with its two airports offering hundreds of daily direct flights to major metropolitan areas including Dallas, Atlanta, and Los Angeles, which are the headquarters for Defendants AT&T, AT&T Mobility, and DirecTV.  A central location with numerous direct flight options will ensure ease of access for all parties and witnesses. Even if a few relevant individuals are in Dallas, on any given

---

[4] Ionut Arghire, *Millions of AT&T Customers Notified of Data Breach at Third-Party Vendor* SECURITYWEEK (Mar. 10, 2024), https://www.securityweek.com/millions-of-att-customers-notified-of-data-breach-at-third-party-vendor/

[5] *See, e.g.*, Interested Party Response of Plaintiffs Mildred and James Kinchen (ECF No. 131 at 2-3); *see also* Interested Party Response and Supplemental Response of Plaintiffs Ryan Unruh and Christopher Isbel (ECF Nos. 71, 128, 128-1).

day, there are between 24 to 32 direct flights from Dallas to Chicago.[6] Additionally, there are between 21 to 30 direct flights from Atlanta to Chicago each day.[7]

## CONCLUSION

For the foregoing reasons, Interested Parties Kelly McGreevy and Steve Senti request that the Panel consolidate the related actions in the Northern District of Illinois.

Dated: May 23, 2024                             Respectfully submitted,

                                                 /s/ David M. Berger
                                                David M. Berger
                                                **GIBBS LAW GROUP LLP**
                                                1111 Broadway, Ste. 2100
                                                Oakland, CA 94607
                                                Tel: 510-350-9700
                                                dmb@classlawgroup.com

                                                *Counsel for Plaintiffs*
                                                *Kelly McGreevy and Steve Senti*

---

[6] *Direct (non-stop) flights from Dallas (DFW) to Chicago (ORD)*, FLIGHTSFROM.COM, https://www.flightsfrom.com/DFW-ORD (last visited May 22, 2024) (showing 16-18 direct flights daily); *Direct (non-stop) flights from Dallas (DFW) to Chicago (MDW)*, FLIGHTSFROM.COM, https://www.flightsfrom.com/DFW-MDW (last visited May 22, 2024) (showing 2 direct flights daily); *Direct (non-stop) flights from Dallas (DAL) to Chicago (MDW)*, FLIGHTSFROM.COM, https://www.flightsfrom.com/DAL-MDW (last visited May 22, 2024) (showing 4-7 direct flights daily); *Direct (non-stop) flights from Dallas (DAL) to Chicago (ORD)*, FLIGHTSFROM.COM, https://www.flightsfrom.com/DAL-ORD (last visited May 22, 2024) (showing 2-5 direct flights daily).

[7] *Direct (non-stop) flights from Atlanta (ATL) to Chicago (ORD)*, FLIGHTSFROM.COM, https://www.flightsfrom.com/ATL-ORD (last visited May 22, 2024) (showing 14-17 direct flights daily); *Direct (non-stop) flights from Atlanta (ATL) to Chicago (MDW)*, FLIGHTSFROM.COM, https://www.flightsfrom.com/ATL-MDW (last visited May 22, 2024) (showing 7-13 direct flights daily).